# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Senator RICHARD BLUMENTHAL,<br>Representative JERROLD NADLER, *et al.*,<br><br>           Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, in his official capacity as<br>President of the United States of America,<br><br>          Defendant. | Civil Action No. 17-1154 (EGS) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
CERTIFICATION OF THE COURT'S SEPTEMBER 28, 2018
<u>ORDER PURSUANT TO 28 U.S.C. § 1292(B)</u>**

Elizabeth B. Wydra (DC Bar No. 483298)
Brianne J. Gorod (DC Bar No. 982075)
Brian R. Frazelle (DC Bar No. 1014116)
CONSTITUTIONAL ACCOUNTABILITY
   CENTER
1200 18th Street, N.W., Suite 501
Washington, D.C. 20036
(202) 296-6889
elizabeth@theusconstitution.org
brianne@theusconstitution.org

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT ....................................................................................................................... 6

    A.    An Immediate Appeal Would Not Advance the Ultimate Termination of this Litigation but Rather Would Delay It. ................................................................... 6

    B.    The President Has Not Demonstrated that the Other Requirements for Allowing an Interlocutory Appeal Are Satisfied. ................................................. 11

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Al Maqaleh v. Gates*,
620 F. Supp. 2d 51 (D.D.C. 2009) ............................................................... 9

*Am. Council of the Blind v. Paulson*,
525 F.3d 1256 (D.C. Cir. 2008) ................................................................... 10

*APCC Servs., Inc. v. Sprint Comms. Co.*,
297 F. Supp. 2d 90 (D.D.C. 2003) ..................................................... 5, 7, 9, 10

*Baylor v. Mitchell Rubenstein & Assocs.*,
2014 WL 12644263 (D.D.C. July 30, 2014) ............................................... 11

*Brown v. Pro Football, Inc.*,
812 F. Supp. 237 (D.D.C. 1992) ................................................................... 8

*Cohen v. Bd. of Trs. of the Univ. of the District of Columbia*,
819 F.3d 476 (D.C. Cir. 2016) ..................................................................... 11

*Dig. Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) ..................................................................................... 4

*District of Columbia v. Trump*,
291 F. Supp. 3d 725 (D. Md. 2018) ............................................................. 2

*Educ. Assistance Found. v. United States*,
2014 WL 12780253 (D.D.C. Nov. 21, 2014) ........................................... 7, 11

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981) ..................................................................................... 4

*First Am. Corp. v. Al-Nahyan*,
948 F. Supp. 1107 (D.D.C. 1996) ........................................................... 12, 13

*Graham v. Mukasey*,
608 F. Supp. 2d 56 (D.D.C. 2009) ............................................................... 5

*GTE New Media Servs. Inc. v. Ameritech Corp.*,
44 F. Supp. 2d 313 (D.D.C. 1999) ............................................................... 6

*Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*,
840 F. Supp. 2d 52 (D.D.C. 2012) ............................................................... 10

*In re Kellogg Brown & Root, Inc.*,
756 F.3d 754 (D.C. Cir. 2014) ..................................................................... 6

**TABLE OF AUTHORITIES – cont'd**

Page(s)

*In re Vitamins Antitrust Litig.*,
2000 WL 673936 (D.D.C. Jan. 27, 2000) ..................................................... 5, 6, 8

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
233 F. Supp. 2d 16 (D.D.C. 2002) .............................................. 5, 9, 11, 12

*Kennedy v. District of Columbia*,
145 F. Supp. 3d 46 (D.D.C. 2015) ............................................................ 5

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) ................................................................................. 1, 4

*Nat'l Cmty. Reinvestment Coal. v. Accredited Home Lenders Holding Co.*,
597 F. Supp. 2d 120 (D.D.C. 2009) ..................................................... 1, 5, 6, 12, 13

*Palmieri v. United States*,
2015 WL 13679956 (D.D.C. Feb. 12, 2015)................................................ 11

*PDK Labs. Inc. v. DEA*,
362 F.3d 786 (D.C. Cir. 2004) ................................................................. 11

*Philipp v. Fed. Republic of Germany*,
253 F. Supp. 3d 84 (D.D.C. 2017) ............................................................ 5

*Sai v. Dep't of Homeland Sec.*,
99 F. Supp. 3d 50 (D.D.C. 2015) .............................................................. 5

*Singh v. George Washington Univ.*,
383 F. Supp. 2d 99, (D.D.C. 2005) ........................................................... 8

*Swint v. Chambers Cty. Comm'n*,
514 U.S. 35 (1995) ................................................................................... 4, 5

*Tolson v. United States*,
732 F.2d 998 (D.C. Cir. 1984) ................................................................. 5

*Trout v. Garrett*,
891 F.2d 332 (D.C. Cir. 1989) ................................................................. 4

*United States v. 803 Capitol St.*,
2007 WL 1232188 (D.D.C. Apr. 26, 2007) ............................................... 3

*United States v. Nixon*,
418 U.S. 683 (1974) ................................................................................ 1, 4, 5

*United States v. Philip Morris USA Inc.*,
2004 WL 1514215 (D.D.C. June 25, 2004) ............................................... 7

**TABLE OF AUTHORITIES – cont'd**

**Page(s)**

*United States ex rel. Barko v. Halliburton Co.*,
    4 F. Supp. 3d 162 (D.D.C. 2014) ................................................................. 9

*United States ex rel. Hollander v. Clay*,
    420 F. Supp. 853 (D.D.C. 1976) ................................................................. 12

*U.S. House of Representatives v. Burwell*,
    2015 WL 13699275 (D.D.C. Oct. 19, 2015) ............................................ 6, 8, 9

*Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*,
    324 F. Supp. 3d 128 (D.D.C. 2018) .......................................................... 8, 9


Legislative Materials

28 U.S.C. § 1291 ............................................................................................. 4

28 U.S.C. § 1292(b) ...................................................................................... *passim*


Books, Articles, and Other Authorities

Bernard Condon et al., '*I Love the Saudis': Trump Business Ties to Kingdom Run*
    *Deep*, AP News (Oct. 12, 2018) ................................................................. 15

David A. Fahrenthold & Jonathan O'Connell, *'I Like Them Very Much:' Trump Has*
    *Long-Standing Business Ties with Saudis, Who Have Boosted His Hotels Since He*
    *Took Office*, Wash. Post (Oct. 11, 2018) ...................................................... 15

16 Charles A. Wright et al., *Federal Practice and Procedure* § 3930 (3d ed.) ............... 10, 11

# INTRODUCTION

President Donald Trump seeks permission to pursue an interlocutory appeal of this Court's September 28, 2018 Order, which denied in part and deferred in part his motion to dismiss. *See* Docket No. 60, at 1. This request is—quite obviously—premature. The baseline rule in litigation is that a party must await final judgment before appealing a court's non-final orders, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009), because such a rule "promotes judicial efficiency and hastens the ultimate termination of litigation," *United States v. Nixon*, 418 U.S. 683, 690 (1974). Interlocutory appeals under 28 U.S.C. § 1292(b) are a "rarely allowed" departure from that rule. *Nat'l Cmty. Reinvestment Coal. v. Accredited Home Lenders Holding Co.*, 597 F. Supp. 2d 120, 122 (D.D.C. 2009). And what the President seeks here is even more radical: an interlocutory appeal before this Court has resolved his pending motion to dismiss—a motion that, if granted, would end this case. Despite that glaring oddity, the President makes no effort to justify this twofold deviation from the norms of litigation. Misguided at best, a delaying tactic at worst, his motion should be denied.

This Court's September 28 Order held that Plaintiffs have standing to challenge President Trump's alleged violations of the Foreign Emoluments Clause. The Order did not resolve the other question raised by the President's motion to dismiss—whether Plaintiffs have stated a claim for relief under Federal Rule of Civil Procedure 12(b)(6).

The President now moves for certification of the September 28 Order so that he may pursue an interlocutory appeal. But to understand why his motion is premature, one need look no further than the President's own position in a similar case challenging his violations of the Foreign Emoluments Clause. In *District of Columbia v. Trump*, just as here, the President filed a two-part motion to dismiss arguing that the plaintiffs lacked standing and that their allegations failed to

state a claim. In that case, just as here, the court first held a hearing on standing. And in that case, just as here, the court later issued a decision concluding that the plaintiffs had standing, denying in part and deferring in part the President's motion to dismiss. *See District of Columbia v. Trump*, 291 F. Supp. 3d 725, 733-34 (D. Md. 2018).

The President subsequently notified that court "that, at this time, he is not moving for a certification of interlocutory appeal under 28 U.S.C. § 1292(b), without prejudice to his ability to do so if this Court later denies the remainder of his motion to dismiss." Notice to the Court at 1, *District of Columbia v. Trump*, No. 17-1596 (D. Md. May 2, 2018) (attached as Exhibit A). He then explained why:

> The President submits that it is premature at this time to seek interlocutory appeal of the denial of his motion-to-dismiss arguments that Plaintiffs lack standing and a cause of action, because his arguments that Plaintiffs fail to state a claim on the merits remain pending, are set for oral argument on June 11, 2018, and would, if accepted, result in a favorable final judgment.

*Id*.; *see id*. (reiterating that "such a motion would be premature at this time").

The President was right—and the same reasoning applies here.[1] Remarkably, the President does not even acknowledge the discrepancy between his position in that case and his position here, much less attempt to justify that discrepancy. Instead, after spending seventeen pages largely rehashing arguments against Plaintiffs' standing that this Court has already rightly rejected, the President devotes a single, cursory paragraph at the end of his motion to the critical question of whether allowing an immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). That meager paragraph, as shown below, comes nowhere close

---

[1] Indeed, the only difference between the two cases is that this Court has not set a hearing date on the remainder of the President's motion to dismiss. But this Court has indicated that it will not necessarily need to hold such a hearing: "The Court will schedule a motion hearing should it determine one to be necessary to resolve the remaining issues." Docket No. 58, at 1.

to demonstrating that this requirement is satisfied at this point in the case.

Indeed, the President's statements in *District of Columbia v. Trump* make clear why that requirement is *not* satisfied. If the President prevails on the remaining portion of his motion to dismiss—which can be resolved without significant delay because it is already fully briefed—then this Court's September 28 Order will have no effect, and the case will be over. An interlocutory appeal would preempt that possibility, instead requiring a lengthy new round of briefing, argument, and decision on standing before the D.C. Circuit—and then potentially another round before the Supreme Court. Even if the President were to prevail before the Circuit (and for the reasons stated in this Court's September 28 Opinion, there are many reasons to think he would not), this process would—inarguably—demand more time, more expenditure of the parties' energies, and more use of judicial resources than this Court's resolution of the already briefed motion to dismiss. "Such reversal would not," therefore, "produce earlier termination of the litigation." *United States v. 803 Capitol St.*, No. 06-1710, 2007 WL 1232188, at *1 (D.D.C. Apr. 26, 2007).

Moreover, if instead Plaintiffs were to prevail on appeal with regard to standing, and if this Court were later to deny the merits portion of the motion to dismiss, the President would surely seek interlocutory appeal of that order too. *See* Motion for Certification, *District of Columbia v. Trump*, No. 17-1596 (D. Md. Aug. 17, 2018) (Dkt. No. 127) (moving for § 1292(b) certification of the district court's orders denying the President's motion to dismiss for failure to state a claim and for lack of standing). This would prompt another cycle of briefing, argument, and decision before the D.C. Circuit (and potentially the Supreme Court) before the case could proceed. And presumably if the President were to lose on the merits, these earlier rounds of appellate review would not satisfy him—he would want yet another round of appeals after final judgment.

Section 1292(b) is not meant to facilitate this kind of ping-pong trajectory back and forth

between the district and appellate courts. Sending the case down such a meandering path might serve President Trump's interests, by running out the clock on his presidency and allowing his unconstitutional enrichment from foreign governments to go unchecked. But it would not serve the interests of the American people. Fortunately for them, the law does not allow it.[2]

## LEGAL STANDARD

The ability to seek interlocutory appeal under § 1292(b) is an "exception to the firm final judgment rule governing federal courts." *Trout v. Garrett*, 891 F.2d 332, 335 (D.C. Cir. 1989) (citing 28 U.S.C. § 1291). That firm rule "embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *Nixon*, 418 U.S. at 690; *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 45 (1995) (the rule "is designed to prevent parties from interrupting litigation by pursuing piecemeal appeals"). Therefore the use of interlocutory appeals under § 1292(b), like other exceptions to this rule, must "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk Indus.*, 558 U.S. at 106 (quoting *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)). "Permitting piecemeal, prejudgment appeals," the Supreme Court has admonished, "undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Id.* (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449

---

[2] Notably, the district court in *District of Columbia v. Trump* recently denied the President's motion for certification of that court's orders denying his motion to dismiss—even though the certification motion there was filed *after* the President's motion to dismiss was rejected in its entirety. *See* Memorandum Opinion, *District of Columbia v. Trump*, No. 17-1596 (D. Md. Nov. 2, 2018) (Dkt. No. 135). In the course of its opinion, the district court noted that "there is genuine concern on the part of Plaintiffs, indeed the Court shares it, that if the President is permitted to appeal the Court's decisions in piecemeal fashion, ultimate resolution of the case could be delayed significantly, perhaps for years, since it is quite likely the President would seek to appeal an adverse decision from the Fourth Circuit to the U.S. Supreme Court." *Id.* at 15.

U.S. 368, 374 (1981)).

Accordingly, a "party seeking certification pursuant to § 1292(b) must meet a high standard to overcome the 'strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals.'" *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) (quoting *Nixon*, 418 U.S. at 690). "Although courts have discretion to certify an issue for interlocutory appeal, interlocutory appeals are rarely allowed," and "the movant bears the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Nat'l Cmty. Reinvestment Coal.*, 597 F. Supp. 2d at 122 (quoting *Judicial Watch*, 233 F. Supp. 2d at 20); *see Tolson v. United States*, 732 F.2d 998, 1002 (D.C. Cir. 1984) ("Section 1292(b) is meant to be applied in relatively few situations and should not be read as a significant incursion on the traditional federal policy against piecemeal appeals." (quotation marks omitted)); *Philipp v. Fed. Republic of Germany*, 253 F. Supp. 3d 84, 87 (D.D.C. 2017) ("Because certification runs counter to the general policy against piecemeal appeals, this process is to be used sparingly." (quoting *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 59 (D.D.C. 2015))); *Kennedy v. District of Columbia*, 145 F. Supp. 3d 46, 51 (D.D.C. 2015) ("Interlocutory appeals are 'infrequently allowed,' for the movant must demonstrate 'exceptional circumstances' justifying piecemeal appeal." (quoting *Graham v. Mukasey*, 608 F. Supp. 2d 56, 57 (D.D.C. 2009))). "The 'law is clear that certification under § 1292(b) is reserved for truly exceptional cases.'" *Judicial Watch*, 233 F. Supp. 2d at 20 (quoting *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 673936, at *2 (D.D.C. Jan. 27, 2000)).

"Whether to allow an interlocutory appeal of a non-final order is left to the discretion of the district court." *APCC Servs., Inc. v. Sprint Comms. Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003)

(citing *Swint*, 514 U.S. at 47); *Philipp*, 253 F. Supp. 3d at 87 (same). Therefore a district court's decision to deny certification is final. *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014).

Section 1292(b) permits a non-final order to be certified only when a district judge "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Thus, three conditions must be met: "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion concerning the ruling exists, and (3) an immediate appeal would materially advance the disposition of the litigation." *GTE New Media Servs. Inc. v. Ameritech Corp.*, 44 F. Supp. 2d 313, 316 (D.D.C. 1999). "The moving party bears the burden of establishing all three elements." *U.S. House of Representatives v. Burwell*, No. 14-1967, 2015 WL 13699275, at *1 (D.D.C. Oct. 19, 2015) (citing *Nat'l Cmty. Reinvestment Coal.*, 597 F. Supp. 2d at 121).

## ARGUMENT

### A. An Immediate Appeal Would Not Advance the Ultimate Termination of this Litigation but Rather Would Delay It.

The President devotes nearly his entire memorandum to the first two elements required by 28 U.S.C. § 1292(b). But "*[e]ach element* of the section 1292(b) test must be met before certification may be granted." *Vitamins Antitrust Litig.*, 2000 WL 673936, at *2 n.3 (emphasis added). Regardless of whether the President can satisfy the first two elements, he cannot succeed without demonstrating that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Despite that burden, the President devotes only a single paragraph to this critical requirement. The sum total of his argument is this: "Reversal of the Court's September 28 Order

would terminate this litigation for lack of jurisdiction, conserving the parties and the Court's judicial resources." Def. Mem. 18. If that were enough to meet the standard, every denial of a defendant's dispositive motion would merit an interlocutory appeal. *See Educ. Assistance Found. v. United States*, No. 11-1573, 2014 WL 12780253, at \*3 (D.D.C. Nov. 21, 2014) ("Any immediate appeal under an interlocutory order *could* affect the future conduct of the litigation and avoid unnecessary litigation."). Instead, courts have explained, "[t]he key factors are whether an appeal would *likely* and materially advance the ultimate determination." *Id.*; *see United States v. Philip Morris USA Inc.*, No. 99-2496, 2004 WL 1514215, at \*3 (D.D.C. June 25, 2004) (the third prong of 1292(b) "turns on whether '[a]n immediate appeal would conserve judicial resources and spare the parties from possibly needless expense'" (quoting *APCC Servs.*, 297 F. Supp. 2d at 100)).

Here, denying an immediate appeal is just as likely to "conserve judicial resources and spare the parties from possibly needless expense," *id.*, because this Court could end up dismissing the case on the President's pending motion. After all, "his arguments that Plaintiffs fail to state a claim on the merits . . . would, if accepted, result in a favorable final judgment." Ex. A, at 1. Those arguments have been fully briefed by the parties and by *amici* on both sides of the dispute. All that remains is the issuance of this Court's decision, preceded at most by another motions hearing. If the President's dismissal motion is granted, this case will be over, notwithstanding the Court's standing Order. Thus "it is premature at this time to seek interlocutory appeal." *Id.*

Indeed, judges in this district have repeatedly recognized that where dispositive questions are pending before the district court, and those questions can be resolved faster than the appellate court would resolve the question that a party seeks to appeal, Section 1292(b)'s third requirement is not satisfied. As explained in one such case:

> The relevant question is whether immediate appeal would *materially* advance the
> ultimate termination of the litigation. In this case, it would not. Unlike typical civil

> litigation, where the denial of a motion to dismiss would be followed by months or even years of discovery, this case is presently suited for summary disposition: the facts are not in dispute. Dispositive motions can be briefed and decided in a matter of months—likely before an interlocutory appeal could even be decided. At that point, both standing and the merits may be appealed. Having considered the issue carefully, the Court is confident that the D.C. Circuit will be best served by reviewing a complete record on standing and the merits.

*Burwell*, 2015 WL 13699275, at *1. That reasoning applies here with even greater force. This Court does not have to wait for dispositive motions to be briefed; such a motion is fully briefed already. The Court can decide this motion well before briefing on the standing question would even be completed in the D.C. Circuit, and certainly before the Circuit would be able to hold oral argument and issue its decision.

Faced with certification motions in comparable situations, other judges have similarly found Section 1292(b)'s third condition lacking. One recent decision put it thus:

> According to WTEF, if the court certifies its Order for interlocutory appeal, and the D.C. Circuit reverses the court's rulings, this court will have avoided conducting a second trial to address WTEF's claims. But "[t]he relevant question is whether immediate appeal would *materially* advance the ultimate termination of the litigation." *U.S. House of Representatives v. Burwell*, No. 14-cv-1967, 2015 WL 13699275, at *1 (D.D.C. Oct. 19, 2015). Here, waiting for the resolution of an interlocutory appeal would not do so. Once calendared, trial on Defendant's counterclaim can be accomplished in less than a week. At that point, both this court's Order and the results of the trial could be appealed.

*Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 324 F. Supp. 3d 128, 146 (D.D.C. 2018).

Other decisions are in accord. *See Brown v. Pro Football, Inc.*, 812 F. Supp. 237, 239 (D.D.C. 1992) ("Given that the trial on damages is imminent, it is evident that it would not expedite the ultimate termination of this litigation to delay the proceedings for an interlocutory appeal."); *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 105 (D.D.C. 2005) ("With this litigation poised for a relatively short, limited trial, it would not materially advance the termination of the litigation to authorize a piecemeal appeal."); *Vitamins Antitrust Litig.*, 2000 WL 673936, at *2-3

("an immediate interlocutory appeal will prolong and substantially delay this litigation," because "there has been no conclusive determination of the validity of the [disputed] clause" and "the Court expressly held in its [earlier] opinion that it reserved the discretion to ultimately consider and rule upon the proper scope and duration of [that] clause" in an upcoming proceeding); *United States ex rel. Barko v. Halliburton Co.*, 4 F. Supp. 3d 162, 167 (D.D.C. 2014) ("To pause litigation so close to the end of discovery and so near the deadline for summary judgment briefing would waste judicial resources."). Given the pending motion to dismiss, here too "granting an interlocutory appeal would more likely impede—rather than materially advance—the progress of this litigation." *Wash. Tennis & Educ. Found.*, 324 F. Supp. 3d at 146.

Although it is President Trump's burden to show why an immediate appeal would materially advance the termination of this litigation, he makes only the most cursory stab at doing so. The space he allots for this point—less than half a page—cites two decisions and merely states the obvious: reversal of this Court's standing Order would end the litigation for lack of jurisdiction. Def. Mem. 18. The inadequacy of that rationale has already been explained. *See supra* at 6-7; *see also Judicial Watch*, 233 F. Supp. 2d at 28 ("Defendants' contention that certification of this Court's Orders for interlocutory appeal will materially advance this litigation necessarily assumes that they will prevail on appeal."); *Burwell*, 2015 WL 13699275, at *1 ("To be sure, the case would be over more quickly if Defendants were able to appeal—and if they prevailed—now. But that is true every time a defendant's motion to dismiss is denied."). And in both of the decisions cited by the President, the court already had denied the defendant's motion to dismiss when it certified an order for interlocutory appeal. *See Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 53 (D.D.C. 2009); *APCC Servs.*, 297 F. Supp. 2d at 94. Because their procedural postures were entirely different,

those decisions do not help the President.[3]

Notably, President Trump offers no examples anywhere in his memorandum of a district court authorizing interlocutory review instead of resolving a fully briefed motion to dismiss. And the cases he does cite only manage to highlight the weakness of his position by comparison. *See, e.g.*, *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1265 (D.C. Cir. 2008) ("the district court has ruled on all issues of section 504 liability and future proceedings in the district court are aimed at determining only what injunctive relief is appropriate"); *Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 840 F. Supp. 2d 52, 57 (D.D.C. 2012) ("If the Court's dismissal of Howard's termination claim were reversed after a final judgment, the Court and the parties would be required to undertake another round of discovery, more dispositive motions, and potentially another trial.").

After all, as treatise writers have noted, the "advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling." 16 Charles A. Wright et al., *Federal Practice and Procedure* § 3930 (3d ed.). But here, there is no probability of a prompt reversal—a D.C. Circuit decision on standing, whatever the outcome, will take far longer to issue than this Court's decision on the pending motion to dismiss. Likewise, the length of the district court proceedings potentially saved by reversal is minimal,

---

[3] *See, e.g.*, *APCC Servs.*, 297 F. Supp. 2d at 99-100 ("[T]he docket in the AT&T case contains more than 110 entries, representing a course of protracted litigation that is currently bogged down in discovery and will no doubt consume a significant amount of the parties' resources in the months and years to come. . . . AT&T claims that because of the sheer volume of information involved, neither plaintiffs nor the carriers have any rational basis upon which to evaluate possible settlement—more than four years after the filing of the suit. An immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed.").

given that the motion to dismiss is already fully briefed and the President may request certification "after his motion to dismiss is fully resolved." Ex. A, at 2. Finally, there is no burden—zero—imposed on the parties by this Court's September 28 Order, so long as the Court still has under advisement the remainder of the motion to dismiss.

On the flip side, the "disadvantages of immediate appeal increase with the probabilities that lengthy appellate consideration will be required, that the order will be affirmed, [and] that continued district-court proceedings without appeal might moot the issue." *Id*. All are possibilities here. Indeed, the fact that the President's pending motion to dismiss may moot the issue entirely—soon, and without further briefing—is virtually dispositive. The President himself acknowledged this in *District of Columbia v. Trump* before inexplicably changing positions here. *See* Ex. A, at 1.

In sum, the President has not carried his "burden of demonstrating that interlocutory appeal of this question at this point in time would materially advance the litigation as a whole." *Judicial Watch*, 233 F. Supp. 2d at 29. "Allowing immediate appeal would result in piecemeal review of this Court's decision and would not materially advance the ultimate termination of the entire litigation." *Palmieri v. United States*, No. 12-1403, 2015 WL 13679956, at *2 (D.D.C. Feb. 12, 2015).

### B.  The President Has Not Demonstrated that the Other Requirements for Allowing an Interlocutory Appeal Are Satisfied.

Because one of the mandatory conditions of Section 1292(b) is lacking, this Court need not determine whether the other two conditions are satisfied. *Educ. Assistance Found.*, 2014 WL 12780253, at *3; *Baylor v. Mitchell Rubenstein & Assocs.*, No. 13-1995, 2014 WL 12644263, at *2 (D.D.C. July 30, 2014). Indeed, this Court should not do so. *Cohen v. Bd. of Trs. of the Univ. of the District of Columbia*, 819 F.3d 476, 485 (D.C. Cir. 2016) ("if it is not necessary to decide more, it is necessary not to decide more" (quoting *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir.

2004) (Roberts, J., concurring in part and concurring in the judgment))). And because the President's motion so clearly fails the third prong of the statutory test, Plaintiffs will not take up the Court's time with extended argument on the first two prongs—*i.e.*, on whether the September 28 Order "involves a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b).[4] Instead, Plaintiffs simply offer the following points.

"The threshold for establishing the 'substantial ground for difference of opinion' with respect to a 'controlling question of law' required for certification pursuant to § 1292(b) is a high one." *Judicial Watch*, 233 F. Supp. 2d at 19. The statute "was not intended merely to provide review of difficult rulings in hard cases." *Id*. at 24 (quoting *United States ex rel. Hollander v. Clay*, 420 F. Supp. 853, 859 (D.D.C. 1976)). Predictably, however, most of the President's discussion amounts to a reiteration of his arguments against Plaintiffs' standing. *See* Def. Mem. 10-14. "Mere disagreement, even if vehement, with a court's ruling does not establish a substantial ground for difference of opinion sufficient to satisfy the statutory requirements for an interlocutory appeal." *Nat'l Cmty. Reinvestment Coal.*, 597 F. Supp. 2d at 122 (quoting *Judicial Watch*, 233 F. Supp. 2d at 20); *see First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1117 (D.D.C. 1996) ("The mere claim that a decision has been wrongly decided is not enough to justify an interlocutory appeal.").

To avoid the appearance of simply relitigating his failed arguments, the President reframes them superficially—insisting not that this Court's Order was wrong, but rather that it "interpreted and extended Supreme Court and D.C. Circuit precedent in a novel way." Def. Mem. 9. But that, of course, can be said every time a district court resolves a question of law for which no precedent is 100% on point. When district court judges encounter such situations—as they do all the time—

---

[4] Plaintiffs certainly do not concede that this standard is satisfied and can provide additional briefing on the matter should the Court desire it.

they interpret the most relevant precedent and apply it to the unique circumstances at hand. If this alone were grounds for certification under § 1292(b), then interlocutory appeals would be the norm instead of the rare exception. *See Hollander*, 420 F. Supp. at 859 ("The fact that there are no cases interpreting the provisions of 2 U.S.C. § 95, as applicable to this case, does not necessarily create substantial grounds for difference of opinion."); *First Am. Corp.*, 948 F. Supp. at 1117 ("Nor does the mere lack of authority on a disputed issue . . . necessarily establish [a] substantial ground for a difference of opinion under the statute. . . . [N]either unusual facts nor legal issues of first impression require . . . certification of an interlocutory appeal." (quotation marks omitted)); Memorandum Opinion at 9, *District of Columbia v. Trump*, No. 17-1596 (D. Md. Nov. 2, 2018) ("mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion" (citation omitted)).[5]

To the extent the President offers anything beyond a recapitulation of his earlier arguments, he emphasizes that this is "a suit by Members of the Legislative Branch against the sitting President of the United States for alleged violations of the Constitution," and that the "practical and political consequences of such a suit are readily apparent." Def. Mem. 1, 5; *see id.* at 5 ("the separation-of-powers concerns implicated by such inter-branch confrontations alone warrant immediate appellate review"). But "even if the circumstances were truly extraordinary . . . that would favor certification only if all the criteria required by § 1292(b) are otherwise met." Memorandum Opinion at 26, *District of Columbia v. Trump*, No. 17-1596 (D. Md. Nov. 2, 2018). And the President's claims about inter-branch ramifications only highlight the basic flaw in his request for

---

[5] Moreover, the President's arguments "have not demonstrated that there is a split within this district on this issue," *Nat'l Cmty. Reinvestment Coal.*, 597 F. Supp. 2d at 122, as this Court's Memorandum Opinion already has distinguished, as inapposite, the one supposedly contrary district court opinion the President cites. *See* Docket No. 59, at 29 n.7.

an immediate appeal—this Court has before it a fully briefed motion to dismiss that could dispose of the entire lawsuit. Until this Court fully resolves that motion, the "practical and political consequences" of this suit are precisely nil. Because of that, the President's bromides about the need to avoid confrontation between the branches of government are beside the point. "Certifying this Court's threshold ruling for interlocutory review could avoid such confrontation," Def. Mem. 2, but so could ruling on the remainder of the President's motion to dismiss. And the latter could happen much faster.

* * * * *

Plaintiffs do agree—strenuously—with one aspect of the President's stated position in his motion: it is critical for this litigation to advance promptly toward its ultimate termination. While Plaintiffs have not sought preliminary relief in this case, the harms flowing from the President's violations of the Foreign Emoluments Clause are nevertheless real and urgent. Every day, vital foreign policy decisions are being made by the White House that will have lasting effects on the American people, some of them irreparable. Yet there is a troubling prospect that President Trump's entire tenure in office could pass before his unconstitutional foreign business dealings are halted.

Recent weeks have provided fresh evidence of this matter's urgency. Questions have arisen, for instance, about the President's response to the death of U.S. resident Jamal Khashoggi. How much of the President's reaction has been dictated by deliberation about what is best for the United States, and how much has been influenced, unconsciously or not, by the manifold ways in which the Saudi Arabian government is lining the President's pockets?[6]

---

[6] *See, e.g.*, Am. Compl. ¶ 61 (tens of thousands of dollars paid annually in common charges to Trump World Tower in New York City); *id.* ¶ 56(a) (hundreds of thousands of dollars paid to Trump International Hotel in Washington, D.C., between late 2016 and early 2017). Since the

These are questions the Framers believed the American people should never have to ask—which is why they adopted the Foreign Emoluments Clause. The President's new motion should be denied, so that this Court can proceed without further delay to resolve the remainder of his motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendant's motion for certification of the Court's September 28, 2018 Order pursuant to 28 U.S.C. § 1292(b) should be denied.

Respectfully submitted,

Dated:  November 2, 2018

/s/ Brianne J. Gorod
Brianne J. Gorod

Elizabeth B. Wydra (DC Bar No. 483298)
Brianne J. Gorod (DC Bar No. 982075)
Brian R. Frazelle (DC Bar No. 1014116)
CONSTITUTIONAL ACCOUNTABILITY CENTER
1200 18th Street, N.W., Suite 501
Washington, D.C. 20036
(202) 296-6889
elizabeth@theusconstitution.org
brianne@theusconstitution.org

*Counsel for Plaintiffs*

---

Amended Complaint was filed in August 2017, more evidence has emerged of President Trump's deep financial entanglement with the Saudi government. *See, e.g.*, David A. Fahrenthold & Jonathan O'Connell, *'I Like Them Very Much:' Trump Has Long-Standing Business Ties with Saudis, Who Have Boosted His Hotels Since He Took Office*, Wash. Post (Oct. 11, 2018), https://www.washingtonpost.com/politics/i-like-them-very-much-trump-has-long-standing-business-ties-with-saudis-who-have-boosted-his-hotels-since-he-took-office/2018/10/11/0870df24-cd67-11e8-a360-85875bac0b1f_story.html?utm_term=.72b523837da7; Bernard Condon et al., *'I Love the Saudis': Trump Business Ties to Kingdom Run Deep*, AP News (Oct. 12, 2018), https://www.washingtonpost.com/national/i-love-the-saudis-trump-business-ties-to-kingdom-run-deep/2018/10/12/bcc0eda4-ce78-11e8-ad0a-0e01efba3cc1_story.html.

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2018, the foregoing document was filed with the Clerk

of the Court, using the CM/ECF system, causing it to be served on all counsel of record.

Dated: November 2, 2018

/s/ Brianne J. Gorod
Brianne J. Gorod

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| THE DISTRICT OF COLUMBIA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States and in his individual capacity, <br><br> *Defendants*. | No. 8:17-cv-1596-PJM |

## <u>NOTICE TO THE COURT</u>

On March 28, 2018, this Court issued a Memorandum Opinion and Order denying in part the motion to dismiss filed by Defendant Donald J. Trump in his official capacity as President of the United States.  ECF Nos. 101, 102; *see also* ECF No. 21.  The President, in his official capacity, hereby notifies this Court that, at this time, he is not moving for a certification of interlocutory appeal under 28 U.S.C. § 1292(b), without prejudice to his ability to do so if this Court later denies the remainder of his motion to dismiss.

The President submits that it is premature at this time to seek interlocutory appeal of the denial of his motion-to-dismiss arguments that Plaintiffs lack standing and a cause of action, because his arguments that Plaintiffs fail to state a claim on the merits remain pending, are set for oral argument on June 11, 2018, and would, if accepted, result in a favorable final judgment.  By contrast, if this Court were also to deny the merits arguments in the motion to dismiss, the Solicitor General at that point would consider seeking § 1292(b) certification for an interlocutory appeal of the orders denying the motion.  Although there is no express statutory deadline for filing a § 1292(b) motion and such a motion would be premature at this time, some courts have recognized an implied timeliness requirement.  Thus, the President files this notice now out of an

abundance of caution in order to preempt any possible timeliness objections to any certification motion that might be filed after his motion to dismiss is fully resolved.  If, however, this Court is of the view that a motion to certify its March 28 Order must be filed before resolution of the rest of the motion to dismiss, the President respectfully requests that the Court either treat this notice as a conditional motion to certify if the remainder of the motion to dismiss is denied (and hold it in abeyance pending resolution of the motion to dismiss and full briefing on the certification issue) or inform the President that a formal motion to certify must be filed beforehand.

Dated:  May 2, 2018

Respectfully Submitted:

CHAD A. READLER
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

/s/ *Jean Lin*
JEAN LIN
Special Counsel
JAMES R. POWERS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Phone: (202) 514-3716
Fax: (202) 616-8202
Email: jean.lin@usdoj.gov

*Counsel for the President of the United States*
*in his official capacity*

**CERTIFICATE OF SERVICE**

I hereby certify that May 2, 2018, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Jean Lin*
JEAN LIN