**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Senator RICHARD BLUMENTHAL, *et al.*,

              *Plaintiffs*,

      v.

DONALD J. TRUMP, in his official capacity as President of the United States,

             *Defendant*.

No. 17-cv-1154-EGS

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR CERTIFICATION OF THE COURT'S SEPTEMBER 28, 2018 ORDER PURSUANT TO 28 U.S.C. § 1292(b)**

## INTRODUCTION

Plaintiffs' opposition to the President's motion for interlocutory appeal attempts to characterize this suit as garden-variety litigation. That is plainly wrong. Plaintiffs cannot dispute that the Court's finding of their standing to sue the President of the United States is extraordinary. Since the Supreme Court's decision in *Raines v. Byrd*, 521 U.S. 811 (1997), no court has held that individual Members of Congress have standing to sue the Executive to redress Congress's institutional interests. Such assertions of standing have been rejected by the D.C. Circuit, *see Chenoweth v. Clinton*, 181 F.3d 112, 115 (D.C. Cir. 1999); *Campbell v. Clinton*, 203 F.3d 19, 23 (D.C. Cir. 2000), and by other judges of this Court, *see Kucinich v. Bush*, 236 F. Supp. 2d 1, 11 (D.D.C. 2002); *Cummings v. Murphy*, 321 F. Supp. 3d 92, 105 (D.D.C. 2018), *appeal pending*, No. 18-5305 (D.C. Cir Oct. 16, 2018). Although this Court attempts to distinguish these authorities, the President's motion for interlocutory appeal establishes that there is at least substantial ground for a difference of opinion as to the controlling, jurisdictional issue of legislative standing. *See* 28 U.S.C. § 1292(b). The constitutional import of the issue also warrants immediate appeal. Even before *Raines*, the D.C. Circuit required the District Court to refrain from hearing disputes between the political branches because of the separation-of-powers problems that such suits create. *See Moore v. U.S. House of Representatives*, 733 F.2d 946, 959 (D.C. Cir. 1984). This case clearly calls for judicial restraint, despite the Court's belief in the correctness of its ruling.

Plaintiffs' only response is that the pendency of the President's Rule 12(b)(6) motion precludes a finding that immediate appeal of the Court's standing order "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The statute, however, imposes no such mechanical bar. To be sure, if the Court were to grant the President's Rule 12(b)(6) motion, the case would terminate sooner than resolution of an interlocutory appeal favorable to the President. But certifying the standing issue for interlocutory appeal would not delay this litigation because if the Court proceeded to grant the President's Rule 12(b)(6) motion, that would simply moot the interlocutory appeal. Moreover, an interlocutory appeal may materially

advance the termination of the suit here because if the case is not dismissed on other grounds, it

will still be at the earliest stages of litigation, with discovery still to commence.  Interlocutory

appeal thus could terminate the suit long before the time it would take to reach final judgment in

the normal course.  By contrast, the cases Plaintiffs cite in which certification was denied were

either at a late stage and thus certain to conclude sooner than any interlocutory appeal, or

involved a challenged order the reversal of which would have little to no effect in advancing the

litigation's termination.  The President's request for an interlocutory appeal on the standing issue

is materially different and well within the bounds of § 1292(b).

Equally unavailing is Plaintiffs' reliance on the President's notice to the court in *District

of Columbia, et al. v. Trump*, No. 17-1596, ECF No. 113 (D. Md. May 2, 2018), that he would

seek interlocutory appeal of the standing ruling in that case once the court had ruled on his Rule

12(b)(6) motion.  The question of standing at issue in that case is in no way comparable to the

Court's finding of standing for Members of Congress to sue the President—a finding that goes to

the heart of our constitutional scheme of separation of powers and concerns the Judiciary's

proper role in our system of government.  The Court's standing ruling is of "special

consequence," and this Court "should not hesitate to certify [it for] an interlocutory appeal."

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009).

## ARGUMENT

I.      **AN IMMEDIATE APPEAL MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS SUIT.**

The President's opening brief fully demonstrated that this Court's September 28 Order on

Plaintiffs' standing as Members of Congress presents "[1] a controlling question of law [2] as to

which there is substantial ground for difference of opinion and [3] that an immediate appeal from

the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b).

*See* Def.'s Mem. in Supp. of § 1292(b) Mot. at 8–18, ECF No. 60–1 [Def.'s Mot.].  The

President also amply established that this case presents the type of extraordinary circumstances

that warrant interlocutory appeal.  *Id*. at 5–8.  In opposition, Plaintiffs devote all of their

substantive response to the third prong of the statutory requirement, arguing that the pendency of the President's Rule 12(b)(6) motion automatically disqualifies the standing order from being certified for interlocutory appeal.  Plaintiffs' argument has no merit.

The standard at issue is whether an immediate appeal of the Court's threshold finding of legislative standing "*may* materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b) (emphasis added).  That standard certainly is met here because the appellate court may reverse this Court's threshold standing ruling, terminating the case.  *See* 16 Charles A. Wright et al., Federal Practice and Procedure § 3931 (3d ed.) ("Among the categories of ruling that may be obviously suited for interlocutory appeal within the general criteria of the statute are those rejecting . . . challenges to subject-matter jurisdiction.").  While it is possible that this Court may grant the President's pending Rule 12(b)(6) motion, which would terminate this case sooner than any interlocutory appellate review, that possibility is only one of the factors to be weighed by the Court.  The Court may choose to stay its consideration of the President's Rule 12(b)(6) motion, or it may deny the motion.  As Plaintiffs acknowledge, the question whether to grant § 1292(b) certification involves balancing multiple factors; the "advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens on the parties by a wrong ruling."  Pls.' Opp'n at 10, ECF No. 61 (quoting 16 Fed. Prac. & Proc. Juris. § 3930).

Although Plaintiffs insist to the contrary, the probability of prompt reversal is not insubstantial; there are only a handful of relevant Supreme Court and D.C. Circuit decisions in the single-issue interlocutory appeal, and the Court of Appeals should be able to render a decision quickly.  *Cf. Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000) (§ 1292(b) reflects the idea that where a "case turn[s] on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court [of appeals] should be enabled to do so without having to wait till the end of the case").  Interlocutory appeal of the standing ruling would not cause any delay because if this

3

Court proceeded to grant the President's motion to dismiss, the interlocutory appeal would simply be moot.[1]  And if this Court denied the pending Rule 12(b)(6) motion, an interlocutory appeal now of the standing ruling could avoid significant litigation burden as well as "occasion[s] for constitutional confrontation between [] two branches [of the Government]." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 389 (2004) (citations omitted).

The cases cited by Plaintiffs confirm that certification is appropriate here.  In almost all of them, the court denied § 1292(b) certification because the case was at a late stage and thus certain to conclude in relatively short order through a resolution of summary judgment motions or a brief trial.  For example, in *United States House of Representatives v. Burwell*, Civil Action No. 14-1967, 2015 WL 13699275 (D.D.C. Oct. 19, 2015), the court denied § 1292(b) certification because the case was poised for cross-motions for summary judgment.  As the court reasoned, "[u]nlike typical civil litigation, where the denial of a motion to dismiss would be followed by months or even years of discovery, this case is presently suited for summary disposition," which could be decided "in a matter of months."  *Id.* at *1.  A court similarly denied interlocutory appeal in *United States ex rel. Barko v. Halliburton Co.*, 4 F. Supp. 3d 162, 167 (D.D.C. 2014), because the case was "close to the end of discovery" and "near the deadline for summary judgment"; in *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 105 (D.D.C. 2005), because "discovery [was] complete" and the case was "poised for a relatively short, limited trial"; in *Washington Tennis & Educ. Foundation, Inc. v. Clark Nexsen, Inc.*, 324 F. Supp. 3d 128, 146 (D.D.C. 2018), because the case was headed to trial and "[o]nce calendared, trial on Defendant's counterclaim can be accomplished in less than a week," at which point both the court's interlocutory order and the results of the trial could be appealed; and in *Brown v. Pro Football, Inc.*, 812 F. Supp. 237, 239 (D.D.C. 1992), because the court had already adjudicated

---

[1] To the extent the interlocutory appeal creates two tracks of litigation, § 1292(b) itself contemplates that some litigation possibly may proceed in district court even if certification is granted.  It provides that certification of interlocutory appeal does not by itself stay proceedings in the district court unless ordered by the district court or the court of appeals.  28 U.S.C. § 1292(b).

the issue of liability and "the trial on damages [was] imminent."  Here, in contrast, if this Court

denied the President's Rule 12(b)(6) motion, the case would still be at its earliest stages, and

given the breadth of Plaintiffs' allegations, discovery alone (and the attendant litigation) could

take years.

The remaining cases cited by Plaintiffs are even further afield from this case.  It is

unremarkable, for example, that a request for interlocutory appeal was denied where the court

had not actually resolved the question the movant sought to raise on appeal.  *See In re Vitamins*

*Antitrust Litig.*, No. 99-197 (TFH), 2000 WL 673936, at *2–*3 (D.D.C. Jan. 27, 2000) (denying

certification of court's preliminary approval of class action settlement where the court was still to

make a "conclusive determination" as to the issue that movant sought to appeal and would still

consider "all objections to this settlement agreement" at the fairness hearing).  Nor is it

significant that a *plaintiff* was denied interlocutory appeal of the partial dismissal of his claims

because reversal on interlocutory appeal would only prolong the litigation by causing dismissed

claims to spring back to life.  *See Palmieri v. United States*, Civil Action No. 12-1403 (JDB),

2015 WL 13679956 (D.D.C. Feb. 12, 2015).  And it was reasonable for a court to conclude that

an order staying proceedings for six months was not fit for interlocutory review when its reversal

would have no effect on the issues in the case but would simply cause the matter to "revert to its

original position." *See U.S. v. 803 Capitol St.*, Civil Action NO. 06-1710 (GK), 2007 WL

1232188, at *1 (D.D.C. Apr. 26, 2007).  These cases do not come close to rebutting the fact that

interlocutory appeal of this Court's order finding subject matter jurisdiction may materially

advance the termination of this litigation.

Similarly inapposite is the President's decision in *District of Columbia, et al. v. Trump*,

No. 17-1596 (D. Md. May 2, 2018), not to immediately seek interlocutory appeal of that court's

standing ruling while the President's Rule 12(b)(6) motion was pending.  As an initial matter,

any comparison between these cases should have little bearing on the consideration of the motion

here because § 1292(b) is meant to be applied flexibly on a case-by-case basis, taking into

account "[t]he difficulty and general importance of the question presented, the probability of

reversal, the significance of the gains from reversal, and the hardship on the parties in their particular circumstances." *See* 16 Fed. Prac. & Proc. Juris. § 3930; *see also id.* ("Ideally, § 1292(b) could be used to allow interlocutory appeals whenever the district court and court of appeals agree that immediate review is a good gamble."); *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1263 (7th Cir. 1980) (Section 1292(b) is "a flexible tool for interlocutory review"); *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961) (same).  The pendency of a motion to dismiss is by no means an automatic bar to interlocutory appeal.  *See, e.g.*, *Garner v. Wolfinbarger*, 430 F.2d 1093, 1096–97 (5th Cir. 1970) (approving interlocutory appeal under §1292(b) of an order denying assertion of attorney-client privilege while motion to dismiss was pending because the issue "may affect the disposition of the pending motions to dismiss").  Indeed, "§ 1292(b) [] has been used to secure review of [] orders entered in virtually every conceivable procedural posture." 16 Fed. Prac. & Proc. Juris. § 3931.

Moreover, the circumstances of the President's § 1292(b) motion in *District of Columbia* were considerably different from this case.  The court had already scheduled a hearing on the President's Rule 12(b)(6) motion in that case, and in any event, the standing ruling in *District of Columbia* concerned alleged injuries stemming from business competition with the Trump International Hotel in Washington, D.C.  A finding of standing based on alleged economic injuries pales in comparison to the extraordinary constitutional significance of this Court's determination of legislative standing.  As noted, since *Raines v. Byrd*, no federal court has injected itself into a dispute between the political branches by allowing individual Members of Congress to sue the President to redress the institutional interests of the Congress.  Article III's standing requirement is "built on separation-of-powers principles" and "serves to prevent the judicial process from being used to usurp the powers of the political branches."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  Thus, even before *Raines*, the D.C. Circuit had held that separation-of-powers concerns such as those implicated here, would require the court to "exercise judicial self-restraint" and dismiss the suit to avoid "intrud[ing] on a coordinate branch of government."  *Moore*, 733 F.2d at 951 (dismissing case by Members of Congress on equitable

discretion grounds despite "the nullification of [the plaintiffs'] right to originate, by debate and vote, a bill for raising revenue prior to legislative action by the Senate"); *see also Chenoweth*, 181 F.3d at 115–16 (D.C. Cir. 1999) (observing that "[w]hatever *Moore* gives the [Members] under the rubric of standing, it takes away as a matter of equitable discretion" because of "the separation of powers problems it created").

In sum, the pendency of the President's Rule 12(b)(6) motion does not bar interlocutory appeal of the Court's standing ruling; to the contrary, the circumstances of the case decidedly counsel in favor of immediate appellate review of the standing ruling.

## II.     THE PRESIDENT HAS SATISIFED THE REMAINING REQUIREMENTS FOR INTERLOCUTORY APPEAL.

Plaintiffs offer minimal response to the President's showing that he has satisfied the other two prongs of the § 1292(b) standard.  Their only substantive response is a footnote disputing that "'there is a split within this district on this issue [of legislative standing].'"  Pls.' Opp'n at 13 n.5 (quoting *Nat'l Cmty. Reinvestment Coal v. Accredited Home Lenders Holding Co.*, 597 F. Supp. 2d 120, 122 (D.D.C. 2009)).  Plaintiffs note that this Court has already distinguished the only contrary district court decision on the issue—*Kucinich v. Bush*, 236 F. Supp. 2d 1, 11 (D.D.C. 2002).  *Id.*  But reasonable jurists could differ as to the validity of the Court's distinction of *Kucinich* on the grounds that the case "did not discuss whether the plaintiffs' votes had been nullified" and that the *Kucinich* plaintiffs had "raised a nonjusticiable political question."  Sept. 28 Op. at 29 n.7, ECF No. 59.

First, like Plaintiffs here, the *Kucinich* plaintiffs alleged that "they have been divested of their constitutional role" to participate in certain legislative process before Executive action— there, the Executive's termination of a treaty.  *Kucinich*, 236 F. Supp. 2d at 9.  The Court in *Kucinich* found the plaintiffs' claim of standing barred by *Raines*, *Chenoweth*, and *Campbell*.  In so holding, the *Kucinich* Court clearly considered the applicability of the vote nullification exception set forth in *Coleman v. Miller*, 307 U.S. 433 (1939), and discussed extensively in each of the three cases on which it relied, *see Raines*, 521 U.S. at 821–26, *Chenoweth*, 181 F.3d at

116–17, and *Campbell*, 203 F.3d at 21–23.  Second, although the *Kucinich* Court found that the

plaintiffs there raised a nonjusticiable political question, that aspect of the decision came after

the Court had already held that the plaintiffs' alleged injuries were "no different from the

institutional injuries alleged in *Chenoweth*, *Campbell*, and *Raines*."  236 F. Supp. 2d at 9.  It is of

no moment, therefore, that the court went on to address the political question doctrine in an

alternative holding.

Moreover, *Kucinich* is not the only contrary decision within this District Court.  The

Court in *Cummings*, 321 F. Supp. 3d at 105, similarly found that individual Members lacked

standing to sue the Executive Branch in light of *Raines*, *Chenoweth*, and *Campbell*, because

again, the plaintiffs asserted only "institutional" injuries, and "[i]ndividual Members of Congress

generally do not have standing to vindicate the institutional interests of the house in which they

serve."  *Id.*  And for all of the reasons discussed in the President's motion, reasonable jurists

could conclude that the Court's decision is not only in conflict with *Kucinich* and *Cummings*, but

a significant departure from the binding Supreme Court and D.C. Circuit precedent of *Raines*,

*Chenoweth*, and *Campbell*.  *See* Def.'s Mot. at 9 (second prong of the statute met where "a

court's challenged decision conflicts with decisions of several other courts") (citation omitted).

The order warrants immediate appellate review.

## CONCLUSION

For the foregoing reasons and the reasons stated in the President's opening brief, the

President respectfully requests the Court certify its September 28, 2018 Order for interlocutory

appeal pursuant to 28 U.S.C. § 1292(b).


Dated:  November 9, 2018                           Respectfully submitted,

                                                  JOSEPH H. HUNT
                                                  Assistant Attorney General

                                                  BRETT A. SHUMATE
                                                  Deputy Assistant Attorney General

8

JENNIFER D. RICKETTS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

/s/ *Jean Lin*
JEAN LIN
Special Counsel
JAMES R. POWERS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC  20005
Phone: (202) 514-3716
Fax: (202) 616-8202
Email: jean.lin@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2018, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Jean Lin*
JEAN LIN