APPEAL,TYPE−L

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:17−cv−01154−EGS</u>

BLUMENTHAL et al v. TRUMP

Assigned to: Judge Emmet G. Sullivan

Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 06/14/2017

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: U.S. Government Defendant

**Plaintiff**

**RICHARD BLUMENTHAL**

represented by **Brian Rene Frazelle**
CONSTITUTIONAL
ACCOUNTABILITY CENTER
1200 18th Street, NW
Suite 501
Washington, DC 20036
(202) 296−6889 ext. 308
Email: <u>brian@theusconstitution.org</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
CONSTITUTIONAL
ACCOUNTABILITY CENTER
1200 18th Street, NW
Suite 501
Washington, DC 20036
(202) 296−6889 ext. 304
Email: <u>brianne@theusconstitution.org</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
CONSTITUTIONAL
ACCOUNTABILITY CENTER
1200 18th Street, NW
Suite 501
Washington, DC 20036
(202) 296−6889
Email: <u>elizabeth@theusconstitution.org</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JOHN CONYERS, JR.**
*TERMINATED: 06/26/2019*

represented by **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**RICHARD J. DURBIN**                  represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**PATTY MURRAY**                  represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ELIZABETH WARREN**                  represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AMY KLOBUCHAR**                    represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BERNARD SANDERS**                  represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**PATRICK LEAHY**                    represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SHELDON WHITEHOUSE**                 represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AL FRANKEN**                         represented by   **Brian Rene Frazelle**
*TERMINATED: 06/26/2019*               (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHRISTOPHER A. COONS**               represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MAZIE K. HIRONO**                 represented by   **Brian Rene Frazelle**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Brianne Jenna Gorod**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Elizabeth Bonnie Wydra**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**MICHAEL F. BENNET**               represented by   **Brian Rene Frazelle**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Brianne Jenna Gorod**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Elizabeth Bonnie Wydra**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**CORY A. BOOKER**                  represented by   **Brian Rene Frazelle**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Brianne Jenna Gorod**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Elizabeth Bonnie Wydra**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**MARIA CANTWELL**                  represented by

**Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BENJAMIN L. CARDIN**                 represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**TOM CARPER**                 represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CATHERINE CORTEZ MASTO**                 represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*

6

*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**TAMMY DUCKWORTH**                    represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**KIRSTEN E. GILLIBRAND**              represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**KAMALA D. HARRIS**                   represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MARTIN HEINRICH**                  represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**TIM KAINE**                  represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**EDWARD J. MARKEY**                  represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Elizabeth Bonnie Wydra
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JEFF MERKLEY**                    represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHRIS MURPHY**                    represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JACK REED**                    represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BRIAN SCHATZ**                    represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**TOM UDALL**                    represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHRIS VAN HOLLEN**                    represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**RON WYDEN**                            represented by   **Brian Rene Frazelle**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Brianne Jenna Gorod**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Elizabeth Bonnie Wydra**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**NANCY PELOSI**                         represented by   **Brian Rene Frazelle**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Brianne Jenna Gorod**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Elizabeth Bonnie Wydra**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**STENY H. HOYER**                       represented by   **Brian Rene Frazelle**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Brianne Jenna Gorod**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Elizabeth Bonnie Wydra**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**JAMES E. CLYBURN**                     represented by

**Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JOSEPH CROWLEY**
*TERMINATED: 06/26/2019*

represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LINDA T. SANCHEZ**

represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JERROLD NADLER**

represented by   **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**ZOE LOFGREN**                    represented by    **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**SHEILA JACKSON LEE**             represented by    **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**STEVE COHEN**                    represented by    **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HENRY C. HANK JOHNSON, JR.**    represented by    **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**TED DEUTCH**    represented by    **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LUIS V. GUTIERREZ**
*TERMINATED: 06/26/2019*    represented by    **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<div style="text-align: right;">

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

</div>

**Plaintiff**

**KAREN BASS**                          represented by    **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CEDRIC L. RICHMOND**                   represented by    **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HAKEEM JEFFRIES**                      represented by    **Brian Rene Frazelle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Bonnie Wydra**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

DAVID N. CICILLINE                          represented by   **Brian Rene Frazelle**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Brianne Jenna Gorod**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Elizabeth Bonnie Wydra**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

ERIC SWALWELL                               represented by   **Brian Rene Frazelle**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Brianne Jenna Gorod**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Elizabeth Bonnie Wydra**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

TED W. LIEU                                 represented by   **Brian Rene Frazelle**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Brianne Jenna Gorod**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Elizabeth Bonnie Wydra**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**JAMIE RASKIN**                    represented by   **Brian Rene Frazelle**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Brianne Jenna Gorod**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Elizabeth Bonnie Wydra**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**ALL PLAINTIFFS**                  represented by   **Brianne Jenna Gorod**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DONALD J. TRUMP**                 represented by   **Jean Lin**
*in his official capacity as President of the*       U.S. DEPARTMENT OF JUSTICE,
*United States of America*                           CIVIL DIVISION
                                                     FEDERAL PROGRAMS BRANCH
                                                     1100 L Street, N.W.
                                                     Room 11532
                                                     Washington, DC 20005
                                                     (202) 514−3716
                                                     Fax: (202) 616−8470
                                                     Email: jean.lin@usdoj.gov
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Bradley P. Humphreys**
                                                     U.S. DEPARTMENT OF JUSTICE
                                                     Civil Division, Federal Programs Branch
                                                     1100 L Street, NW
                                                     Washington, DC 20530
                                                     (202) 305−0878
                                                     Fax: (202) 639−6066
                                                     Email: bradley.humphreys@usdoj.gov
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Brett A. Shumate**
                                                     JONES DAY

51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879−3855
Email: bshumate@jonesday.com
*TERMINATED: 04/11/2019*

**James R. Powers**
U.S. DEPARTMENT OF JUSTICE
Federal Programs Branch, Civil Division
1100 L Street NW
Room 11218
Washington, DC 20005
(202) 353−0543
Fax: (202) 616−8470
Email: james.r.powers@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Movant**

**JEFFREY CUTLER**                    represented by    **JEFFREY CUTLER**
P.O. Box 2806
York, PA 17405
215−872−5715
PRO SE

**Amicus**

**JUDICIAL EDUCATION PROJECT**        represented by    **Robert William Ray**
THOMPSON & KNIGHT, LLP
900 Third Avenue
20th Floor
New York, NY 10022−4728
(212) 751−3347
Email: robert.ray@tklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**SETH BARRETT TILLMAN**              represented by    **Robert William Ray**
*Scholar*                                              (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Michael Blackman**
JOSH BLACKMAN LLC
1303 San Jacinto Street
Houston, TX 77063
202−294−9003
Email: Josh@JoshBlackman.com
*PRO HAC VICE*

**Amicus**

**MICHAEL BARNES**                     represented by   **Sean Hoe Donahue**
                                                        DONAHUE & GOLDBERG, LLP
                                                        1111 14 Street, NW
                                                        Suite 510A
                                                        Washington, DC 20005
                                                        (202) 277−7085
                                                        Fax: (202) 315−3582
                                                        Email: sean@donahuegoldberg.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**LEONARD BOSWELL**                    represented by   **Sean Hoe Donahue**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**BARBARA BOXER**                      represented by   **Sean Hoe Donahue**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**BOB CARR**                           represented by   **Sean Hoe Donahue**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**TOM COLEMAN**                        represented by   **Sean Hoe Donahue**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**MICKEY EDWARDS**                     represented by   **Sean Hoe Donahue**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**LEE HAMILTON**                       represented by   **Sean Hoe Donahue**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**TOM HARKIN**                         represented by

**Sean Hoe Donahue**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**GARY HART**                            represented by   **Sean Hoe Donahue**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**BOB INGLIS**                           represented by   **Sean Hoe Donahue**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**CARL LEVIN**                           represented by   **Sean Hoe Donahue**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**BRAD MILLER**                          represented by   **Sean Hoe Donahue**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**GEORGE MILLER**                        represented by   **Sean Hoe Donahue**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**PHILIP SHARP**                         represented by   **Sean Hoe Donahue**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**CHRIS SHAYS**                          represented by   **Sean Hoe Donahue**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**PETER SMITH**                     represented by   **Sean Hoe Donahue**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

Amicus

**MARK UDALL**                      represented by   **Sean Hoe Donahue**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

Amicus

**HENRY WAXMAN**                    represented by   **Sean Hoe Donahue**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

Amicus

**DICK ZIMMER**                     represented by   **Sean Hoe Donahue**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

Amicus

**DON FOX**                         represented by   **Thomas C. Goldstein**
                                                     GOLDSTEIN & RUSSELL P.C.
                                                     Partner/Owner
                                                     7475 Wisconsin Avenue
                                                     Suite 850
                                                     Bethesda, MD 20814
                                                     (202) 362−0636
                                                     Email: tgoldstein@goldsteinrussell.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

Amicus

**FORMER NATIONAL SECURITY**        represented by   **Phillip Michael Spector**
**OFFICIALS**                                        MESSING & SPECTOR LLP
                                                     Office of the President
                                                     1200 Steuart Street
                                                     Suite 2112
                                                     Baltimore, MD 21230
                                                     (202) 277−8173
                                                     Email: ps@messingspector.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

Amicus

**FEDERAL JURISDICTION AND**        represented by   **Corey William Roush**

| | | |
|---|---|---|
| **CONSTITUTIONAL LAW SCHOLARS** | | AKIN GUMP STRAUSS HAUER & FELD LLP<br>Robert S. Strauss Tower<br>2001 K Street, NW<br>Washington, DC 20006<br>(202) 887−4000<br>Email: croush@akingump.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **REBECCA L. BROWN** | represented by | **Katharine M. Mapes**<br>SPIEGEL & MCDIARMID LLP<br>1875 Eye Street, N.W.<br>Suite 700<br>Washington, DC 20006<br>(202) 879−4000<br>Email: katharine.mapes@spiegelmcd.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **HAROLD H. BRUFF** | represented by | **Katharine M. Mapes**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **NEIL KINKOPF** | represented by | **Katharine M. Mapes**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **CHRISTOPHER H. SCHROEDER** | represented by | **Katharine M. Mapes**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **PETER M. SHANE** | represented by | **Katharine M. Mapes**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **KEVIN M. STACK** | represented by | **Katharine M. Mapes**<br>(See above for address)<br>*LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*

**Amicus**

**PETER L. STRAUSS**
represented by **Katharine M. Mapes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**JED H. SHUGERMAN**
represented by **Melissa H. Maxman**
COHEN & GRESSER, LLP
2001 Pennsylvania Ave, NW
Suite 300
Washington, DC 20006
(202) 851−2071
Fax: (202) 851−8820
Email: mmaxman@cohengresser.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**MARILYN GLYNN**
represented by **Thomas C. Goldstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**KAREN KUCIK**
represented by **Thomas C. Goldstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**LAWRENCE R. REYNOLDS**
represented by **Thomas C. Goldstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**AMY COMSTOCK RICK**
represented by **Thomas C. Goldstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**WALTER SHAUB**
represented by **Thomas C. Goldstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

TRIP ROTHSCHILD                          represented by  **Thomas C. Goldstein**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

RICHARD M. THOMAS                        represented by  **Thomas C. Goldstein**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

KATHLEEN WHALEN                          represented by  **Thomas C. Goldstein**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

HARVEY WILCOX                            represented by  **Thomas C. Goldstein**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

LESLIE WILCOX                            represented by  **Thomas C. Goldstein**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

JOHN MIKHAIL                             represented by  **Melissa H. Maxman**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

JACK RAKOVE                              represented by  **Melissa H. Maxman**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

GAUTHAM RAO                              represented by  **Melissa H. Maxman**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**SIMON STERN**                            represented by  **Melissa H. Maxman**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/14/2017 | 1 | | COMPLAINT against DONALD J. TRUMP ( Filing fee $ 400 receipt number 0090−4989810) filed by NANCY PELOSI, STENY H. HOYER, KAMALA D. HARRIS, BERNARD SANDERS, CHRIS MURPHY, JOHN CONYERS, JR, TOM CARPER, RICHARD BLUMENTHAL, CATHERINE CORTEZ MASTO, CHRIS VAN HOLLEN, BENJAMIN L. CARDIN, KAREN BASS, JACK REED, JEFF MERKLEY, BRIAN SCHATZ, STEVE COHEN, KIRSTEN E. GILLIBRAND, CORY A. BOOKER, TED W. LIEU, EDWARD J. MARKEY, AL FRANKEN, RON WYDEN, JOSEPH CROWLEY, CHRISTOPHER A. COONS, ERIC SWALWELL, TED DEUTCH, MARTIN HEINRICH, HAKEEM JEFFRIES, MICHAEL F. BENNET, TOM KAINE, TOM UDALL, AMY KLOBUCHAR, JAMIE RASKIN, SHEILA JACKSON LEE, LINDA T. SANCHEZ, RICHARD J. DURBIN, SHELDON WHITEHOUSE, MAZIE K. HIRONO, HENRY C. HANK JOHNSON, JR, DAVID N. CICILLINE, MARIA CANTWELL, PATRICK LEAHY, ZOE LOFGREN, PATTY MURRAY, JAMES E. CLYBURN, CEDRIC L. RICHMOND, JERROLD NADLER, TAMMY DUCKWORTH, LUIS V. GUTIERREZ, ELIZABETH WARREN. (Attachments: # 1 Civil Cover Sheet, # 2 Summons)(Gorod, Brianne) (Entered: 06/14/2017) |
| 06/14/2017 | 2 | | NOTICE of Appearance by Elizabeth Bonnie Wydra on behalf of All Plaintiffs (Wydra, Elizabeth) (Entered: 06/14/2017) |
| 06/14/2017 | 3 | | NOTICE of Appearance by Brian Rene Frazelle on behalf of All Plaintiffs (Frazelle, Brian) (Entered: 06/14/2017) |
| 06/14/2017 | 4 | | NOTICE of Appearance by Brianne Jenna Gorod on behalf of All Plaintiffs (Gorod, Brianne) (Entered: 06/14/2017) |
| 06/14/2017 | | | Case Assigned to Judge Emmet G. Sullivan. (jd) (Entered: 06/14/2017) |
| 06/14/2017 | 5 | | SUMMONS (1) Issued Electronically as to DONALD J. TRUMP. (Attachment: # 1 Consent Forms)(jd) (Entered: 06/14/2017) |
| 06/14/2017 | | | SUMMONS Not Issued as to U.S. Attorney General, and U.S. Attorney for the District of Columbia (jd) (Entered: 06/14/2017) |
| 06/14/2017 | 6 | | REQUEST FOR SUMMONS TO ISSUE *as to U.S. Attorney General* filed by NANCY PELOSI, STENY H. HOYER, KAMALA D. HARRIS, BERNARD SANDERS, CHRIS MURPHY, JOHN CONYERS, JR, TOM CARPER, RICHARD BLUMENTHAL, CATHERINE CORTEZ MASTO, CHRIS VAN HOLLEN, BENJAMIN L. CARDIN, KAREN BASS, JACK REED, JEFF MERKLEY, BRIAN SCHATZ, STEVE COHEN, KIRSTEN E. GILLIBRAND, CORY A. BOOKER, TED W. LIEU, EDWARD J. MARKEY, AL FRANKEN, RON WYDEN, JOSEPH CROWLEY, CHRISTOPHER A. COONS, ERIC SWALWELL, TED DEUTCH, MARTIN HEINRICH, |

| | | |
|---|---|---|
| | | HAKEEM JEFFRIES, MICHAEL F. BENNET, TIM KAINE, TOM UDALL, AMY KLOBUCHAR, JAMIE RASKIN, SHEILA JACKSON LEE, LINDA T. SANCHEZ, RICHARD J. DURBIN, SHELDON WHITEHOUSE, MAZIE K. HIRONO, HENRY C. HANK JOHNSON, JR, DAVID N. CICILLINE, MARIA CANTWELL, PATRICK LEAHY, ZOE LOFGREN, PATTY MURRAY, JAMES E. CLYBURN, CEDRIC L. RICHMOND, JERROLD NADLER, TAMMY DUCKWORTH, LUIS V. GUTIERREZ, ELIZABETH WARREN.(Frazelle, Brian) (Entered: 06/14/2017) |
| 06/14/2017 | 7 | REQUEST FOR SUMMONS TO ISSUE *as to U.S. Attorney for the District of Columbia* filed by NANCY PELOSI, STENY H. HOYER, KAMALA D. HARRIS, BERNARD SANDERS, CHRIS MURPHY, JOHN CONYERS, JR, TOM CARPER, RICHARD BLUMENTHAL, CATHERINE CORTEZ MASTO, CHRIS VAN HOLLEN, BENJAMIN L. CARDIN, KAREN BASS, JACK REED, JEFF MERKLEY, BRIAN SCHATZ, STEVE COHEN, KIRSTEN E. GILLIBRAND, CORY A. BOOKER, TED W. LIEU, EDWARD J. MARKEY, AL FRANKEN, RON WYDEN, JOSEPH CROWLEY, CHRISTOPHER A. COONS, ERIC SWALWELL, TED DEUTCH, MARTIN HEINRICH, HAKEEM JEFFRIES, MICHAEL F. BENNET, TIM KAINE, TOM UDALL, AMY KLOBUCHAR, JAMIE RASKIN, SHEILA JACKSON LEE, LINDA T. SANCHEZ, RICHARD J. DURBIN, SHELDON WHITEHOUSE, MAZIE K. HIRONO, HENRY C. HANK JOHNSON, JR, DAVID N. CICILLINE, MARIA CANTWELL, PATRICK LEAHY, ZOE LOFGREN, PATTY MURRAY, JAMES E. CLYBURN, CEDRIC L. RICHMOND, JERROLD NADLER, TAMMY DUCKWORTH, LUIS V. GUTIERREZ, ELIZABETH WARREN.(Frazelle, Brian) (Entered: 06/14/2017) |
| 06/14/2017 | 8 | SUMMONS (2) Issued Electronically as to U.S. Attorney and U.S. Attorney General (Attachment: # 1 Consent Forms)(jd) (Entered: 06/14/2017) |
| 07/10/2017 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DONALD J. TRUMP served on 6/19/2017, RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 06/19/2017., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/19/2017. ( Answer due for ALL FEDERAL DEFENDANTS by 8/18/2017.) (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Frazelle, Brian) (Entered: 07/10/2017) |
| 07/12/2017 | 10 | NOTICE of Appearance by Jean Lin on behalf of DONALD J. TRUMP (Lin, Jean) (Entered: 07/12/2017) |
| 07/12/2017 | 11 | Joint MOTION for Extension of Time to *Respond to the Complaint and for Entry of Scheduling Order* by DONALD J. TRUMP (Attachments: # 1 Text of Proposed Order)(Lin, Jean). Added MOTION for Scheduling Order on 7/13/2017 (znmw). (Entered: 07/12/2017) |
| 07/14/2017 | 12 | STANDING ORDER: The parties are directed to read the attached Standing Order Governing Civil Cases Before Judge Emmet G. Sullivan in its entirety upon receipt. The parties are hereby ORDERED to comply with the directives in the attached Standing Order. Signed by Judge Emmet G. Sullivan on 7/14/2017.(Attachments: # 1 Appendix) (lcegs1) (Entered: 07/14/2017) |

| 07/14/2017 | | | MINUTE ORDER granting 11 Joint Motion for Extensions of Time and for Entry of Scheduling Order. The following schedule shall govern proceedings in this case: plaintiffs' first amended complaint shall be filed by no later than August 15, 2017; defendant's response to the complaint shall be filed by no later than September 15, 2017; any motion seeking leave to file an amicus curiae brief in support of defendant, with the brief attached as an exhibit, shall be filed by no later than September 22, 2017; plaintiffs' opposition to the motion to dismiss shall be filed by no later than October 26, 2017; any motion seeking leave to file an amicus curiae brief in support of plaintiffs, with the brief attached as an exhibit, shall be filed by no later than November 2, 2017; defendant's reply in support of the motion to dismiss shall be filed by no later than November 21, 2017. It is FURTHER ORDERED that the parties may file non−hyperlinked briefs in accordance with this schedule. By no later than November 28, 2017, the parties, including those seeking leave to file an amicus curiae brief, shall file E−Briefs containing hyperlinks to any cited exhibits and points and authorities. By no later than November 28, 2017, the parties, including those seeking leave to file an amicus curiae brief, shall submit to the Court two hard copies and one USB drive containing all submissions to the Court governed by this scheduling order, including points and authorities. All paper copy submissions to the Court shall include the headers added by the Case Management/Electronic Case Files (CM/ECF) System and shall be single−sided, double−spaced, use 12−point Times New Roman font, and use one inch page margins. Each set of hard copies shall be in three−ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the pleading therein. It is FURTHER ORDERED that by no later than November 28, 2017, the parties shall jointly submit one copy of each principal case or authority cited by any party. The points and authorities shall be in three−ring binders, with appropriate tables of contents and tabs, and the binders shall be clearly labeled to identify the contents therein. Plaintiffs' counsel is HEREBY REMINDED of Local Civil Rule 5.1(c)(1) requiring documents signed by an attorney to include the D.C. Bar identification number of the attorney, as appropriate. Signed by Judge Emmet G. Sullivan on 7/14/2017. (lcegs1) (Entered: 07/14/2017) |
| 07/14/2017 | 13 | | ORDER GOVERNING THE FILING OF AMICUS CURIAE BRIEFS. Signed by Judge Emmet G. Sullivan on 7/14/2017. (lcegs1) (Entered: 07/14/2017) |
| 07/16/2017 | | | Set/Reset Deadlines: Plaintiffs' First Amended Complaint due by 8/15/2017. Defendant's Response To The Complaint due by 09/15/2017. Motion Seeking Leave To File An Amicus Curiae Brief In Support Of Defendant, With The Brief Attached As An Exhibit due by 9/22/2017. Plaintiffs' Opposition To The Motion To Dismiss due by 10/26/2017. Motion Seeking Leave To File An Amicus Curiae Brief In Support Of Plaintiffs, With The Brief Attached As An Exhibit due by 11/02/2017. Defendant's Reply In Support Of The Motion To Dismiss due by 11/21/2017. Parties, Including Those Seeking Leave To File An Amicus Curiae Brief, Shall File E−Briefs, Containing Hyperlinks To Any cited Exhibits and Points And Authorities due by 11/28/2017. (mac) (Entered: 07/16/2017) |
| 08/15/2017 | 14 | | AMENDED COMPLAINT against DONALD J. TRUMP filed by NANCY PELOSI, STENY H. HOYER, KAMALA D. HARRIS, BERNARD SANDERS, CHRIS MURPHY, JOHN CONYERS, JR, TOM CARPER, RICHARD BLUMENTHAL, CATHERINE CORTEZ MASTO, CHRIS VAN |

| | | |
|---|---|---|
| | | HOLLEN, BENJAMIN L. CARDIN, KAREN BASS, JACK REED, JEFF MERKLEY, BRIAN SCHATZ, STEVE COHEN, KIRSTEN E. GILLIBRAND, CORY A. BOOKER, TED W. LIEU, EDWARD J. MARKEY, AL FRANKEN, RON WYDEN, JOSEPH CROWLEY, CHRISTOPHER A. COONS, ERIC SWALWELL, TED DEUTCH, MARTIN HEINRICH, HAKEEM JEFFRIES, MICHAEL F. BENNET, TIM KAINE, TOM UDALL, AMY KLOBUCHAR, JAMIE RASKIN, SHEILA JACKSON LEE, LINDA T. SANCHEZ, RICHARD J. DURBIN, SHELDON WHITEHOUSE, MAZIE K. HIRONO, HENRY C. HANK JOHNSON, JR, DAVID N. CICILLINE, MARIA CANTWELL, PATRICK LEAHY, ZOE LOFGREN, PATTY MURRAY, JAMES E. CLYBURN, CEDRIC L. RICHMOND, JERROLD NADLER, TAMMY DUCKWORTH, LUIS V. GUTIERREZ, ELIZABETH WARREN. (Attachments: # 1 Exhibit Redline — Amended Complaint)(Gorod, Brianne) (Entered: 08/15/2017) |
| 09/15/2017 | 15 | MOTION to Dismiss *for Failure to State a Claim* by DONALD J. TRUMP (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Lin, Jean) Modified event title on 9/18/2017 (znmw). (Entered: 09/15/2017) |
| 09/19/2017 | 16 | MOTION for Leave to File *Brief of Scholar Seth Barrett Tillman and Judical Education Project as Amici Curiae in Support of the Defendant* by SETH BARETT TILLAN, JUDICIAL EDUCATION PROJECT (Attachments: # 1 Exhibit A − Brief for Scholar Seth Barrett Tillman and the Judicial Education Project as Amici Curiae in Support of the Defendant, # 2 Text of Proposed Order)(Ray, Robert) Modified to correct filers on 9/20/2017 (znmw). (Entered: 09/19/2017) |
| 10/26/2017 | 17 | RESPONSE re 15 MOTION to Dismiss *for Failure to State a Claim* filed by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, JOHN CONYERS, JR, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, JOSEPH CROWLEY, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, AL FRANKEN, KIRSTEN E. GILLIBRAND, LUIS V. GUTIERREZ, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN. (Gorod, Brianne) (Entered: 10/26/2017) |
| 11/02/2017 | 18 | MOTION for Leave to File *Brief Amici Curiae* by MICHAEL BARNES, LEONARD BOSWELL, BARBARA BOXER, Bob Carr, TOM COLEMAN, Mickey Edwards, Lee Hamilton, Tom Harkin, GARY HART, Bob Inglis, CARL LEVIN, Brad Miller, GEORGE MILLER, PHILIP SHARP, CHRIS SHAYS, PETER SMITH, MARK UDALL, HENRY WAXMAN, DICK ZIMMER (Attachments: # 1 Text of Proposed Order)(Donahue, Sean) (Entered: 11/02/2017) |

| 11/02/2017 | 19 | NOTICE of Appearance by Sean Hoe Donahue on behalf of MICHAEL BARNES, et al. (Donahue, Sean) (Entered: 11/02/2017) |
|---|---|---|
| 11/02/2017 | 20 | NOTICE of Appearance by Thomas C. Goldstein on behalf of DON FOX, et al. (Goldstein, Thomas) (Entered: 11/02/2017) |
| 11/02/2017 | 21 | MOTION for Leave to File *Amici Curiae Brief* by DON FOX, et al. (Attachments: # 1 Exhibit Amici Curiae Brief of Former Government Ethics Officers, # 2 Text of Proposed Order)(Goldstein, Thomas) (Entered: 11/02/2017) |
| 11/02/2017 | 22 | MOTION for Leave to File *Amicus Curiae Brief* by FORMER NATIONAL SECURITY OFFICIALS (Attachments: # 1 Exhibit Amicus Curiae Brief, # 2 Text of Proposed Order)(Spector, Phillip) (Entered: 11/02/2017) |
| 11/02/2017 | 23 | NOTICE of Appearance by Corey William Roush on behalf of FEDERAL JURISDICTION AND CONSTITUTIONAL LAW SCHOLARS (Roush, Corey) (Entered: 11/02/2017) |
| 11/02/2017 | 24 | MOTION for Leave to File *Amici Brief In Support of Plaintiffs* by FEDERAL JURISDICTION AND CONSTITUTIONAL LAW SCHOLARS (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Roush, Corey) (Entered: 11/02/2017) |
| 11/02/2017 | 25 | MOTION for Leave to File *Brief of Separation of Powers Scholars as Amici Curiae in Support of Plaintiffs* by REBECCA L. BROWN, HAROLD H BRUFF, NEIL KINKOPF, CHRISTOPHER H. SCHROEDER, PETER M. SHANE, KEVIN M. STACK, PETER L. STRAUSS (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order)(Mapes, Katharine) (Entered: 11/02/2017) |
| 11/02/2017 | 26 | MOTION for Leave to File *Brief of Amici Curiae* by JED H. SHUGERMAN, JOHN MIKHAIL, JACK RAKOVE, GAUTHUM RAO, SIMON STERN (Attachments: # 1 Exhibit Amici Curiae Brief, # 2 Text of Proposed Order, # 3 Certificate of Service)(Maxman, Melissa) (Entered: 11/02/2017) |
| 11/03/2017 | 27 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Joshua M. Blackman, :Firm− Joshua M. Blackman, :Address− 1303 San Jacinto Street, Houston, Texas 77002. Phone No. − 202−294−9003. Filing fee $ 100, receipt number 0090−5190329. Fee Status: Fee Paid. by SETH BARRETT TILLMAN (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Ray, Robert) (Entered: 11/03/2017) |
| 11/21/2017 | 28 | REPLY to opposition to motion re 15 MOTION to Dismiss *for Failure to State a Claim and for Lack of Jurisdiction* filed by DONALD J. TRUMP. (Lin, Jean) (Entered: 11/21/2017) |
| 11/26/2017 | 29 | MOTION for Leave to File *Amicus Curiae E−Brief with Hyperlinks* by FORMER NATIONAL SECURITY OFFICIALS (Attachments: # 1 Exhibit Amicus Curiae E−Brief With Hyperlinks, # 2 Text of Proposed Order)(Spector, Phillip) (Entered: 11/26/2017) |
| 11/28/2017 | 30 | NOTICE *OF FILING HYPERLINKED E−BRIEF* by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, JOHN CONYERS, JR, |

| | | | |
|---|---|---|---|
| | | | CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, JOSEPH CROWLEY, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, AL FRANKEN, KIRSTEN E. GILLIBRAND, LUIS V. GUTIERREZ, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN (Gorod, Brianne) (Entered: 11/28/2017) |
| 11/28/2017 | 31 | | MOTION for Leave to File *Amicus Curiae Hyperlinked E−Brief* by DON FOX, MARILYN GLYNN, KAREN KUCIK, LAWRENCE R. REYNOLDS, AMY COMSTOCK RICK, TRIP ROTHSCHILD, WALTER SHAUB, RICHARD M. THOMAS, KATHLEEN WHALEN, HARVEY WILCOX, LESLIE WILCOX (Attachments: # 1 Exhibit Amicus Curiae Hyperlinked E−Brief, # 2 Text of Proposed Order)(Goldstein, Thomas) (Entered: 11/28/2017) |
| 11/28/2017 | 32 | | NOTICE *OF FILING HYPERLINKED BRIEF OF AMICI CURIAE* by JOHN MIKHAIL, JACK RAKOVE, GAUTHAM RAO, JED H. SHUGERMAN, SIMON STERN re 26 MOTION for Leave to File *Brief of Amicus Curiae* (Maxman, Melissa) (Main Document 32 replaced on 11/29/2017) (znmw). (Entered: 11/28/2017) |
| 11/28/2017 | 33 | | NOTICE by REBECCA L. BROWN, HAROLD H. BRUFF, NEIL KINKOPF, CHRISTOPHER H. SCHROEDER, PETER M. SHANE, KEVIN M. STACK, PETER L. STRAUSS (Mapes, Katharine) (Entered: 11/28/2017) |
| 11/28/2017 | 34 | | NOTICE *of Filing Hyperlinked E−Brief* by FEDERAL JURISDICTION AND CONSTITUTIONAL LAW SCHOLARS re 24 MOTION for Leave to File *Amici Brief In Support of Plaintiffs* (Roush, Corey) (Entered: 11/28/2017) |
| 11/28/2017 | 35 | | NOTICE *of Filing* by DONALD J. TRUMP (Lin, Jean) (Entered: 11/28/2017) |
| 11/28/2017 | 36 | | NOTICE *of Filing Hyperlinked E−Brief* by JUDICIAL EDUCATION PROJECT, SETH BARRETT TILLMAN (Ray, Robert) (Additional attachment(s) added on 11/29/2017: # 1 Hyperlinked Brief, # 2 Request Notice) (znmw). (Entered: 11/28/2017) |
| 11/28/2017 | 37 | | NOTICE by MICHAEL BARNES (Donahue, Sean) (Entered: 11/28/2017) |
| 12/22/2017 | 38 | | NOTICE OF SUPPLEMENTAL AUTHORITY by DONALD J. TRUMP (Attachments: # 1 Exhibit A)(Lin, Jean) (Entered: 12/22/2017) |
| 03/06/2018 | | | MINUTE ORDER granting 16 MOTION for Leave to File Brief of Scholar Seth Barrett Tillman and Judical Education Project as Amici Curiae in Support of the Defendant. Signed by Judge Emmet G. Sullivan on 3/6/2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | | | MINUTE ORDER granting 18 MOTION for Leave to File Brief Amici Curiae by MICHAEL BARNES, LEONARD BOSWELL, BARBARA BOXER, Bob Carr, TOM COLEMAN, Mickey Edwards, Lee Hamilton, Tom Harkin, GARY |

| | | | |
|---|---|---|---|
| | | | HART, Bob Inglis, CARL LEVIN, Brad Miller, GEORGE MILLER, PHILIP SHARP, CHRIS SHAYS, PETER SMITH, MARK UDALL, HENRY WAXMAN, DICK ZIMMER. Signed by Judge Emmet G. Sullivan on 3//2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | | | MINUTE ORDER granting 21 MOTION for Leave to File Amici Curiae Brief by DON FOX, et al. Signed by Judge Emmet G. Sullivan on 3/6/2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | | | MINUTE ORDER granting 22 MOTION for Leave to File Amicus Curiae Brief by FORMER NATIONAL SECURITY OFFICIALS. Signed by Judge Emmet G. Sullivan on 3/6/2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | | | MINUTE ORDER granting 24 MOTION for Leave to File Amici Brief In Support of Plaintiffs by FEDERAL JURISDICTION AND CONSTITUTIONAL LAW SCHOLARS. Signed by Judge Emmet G. Sullivan on 3/6/2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | | | MINUTE ORDER granting 25 MOTION for Leave to File Brief of Separation of Powers Scholars as Amici Curiae in Support of Plaintiffs by REBECCA L. BROWN, HAROLD H BRUFF, NEIL KINKOPF, CHRISTOPHER H. SCHROEDER, PETER M. SHANE, KEVIN M. STACK, PETER L. STRAUSS. Signed by Judge Emmet G. Sullivan on 3/6/2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | 39 | | MINUTE ORDER granting 26 MOTION for Leave to File Brief of Amici Curiae by JED H. SHUGERMAN, JOHN MIKHAIL, JACK RAKOVE, GAUTHUM RAO, SIMON STERN.Signed by Judge Emmet G. Sullivan on 3/6/2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | | | MINUTE ORDER granting 27 MOTION for Leave to Appear Pro Hac Vice. Joshua M. Blackman, Esq. is admitted pro hac vice in this proceeding. Signed by Judge Emmet G. Sullivan on 3/6/2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | | | MINUTE ORDER granting 29 MOTION for Leave to File Amicus Curiae E−Brief with Hyperlinks by FORMER NATIONAL SECURITY OFFICIALS. Signed by Judge Emmet G. Sullivan on 3/6/2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | | | MINUTE ORDER granting 31 MOTION for Leave to File Amicus Curiae Hyperlinked E−Brief by DON FOX, MARILYN GLYNN, KAREN KUCIK, LAWRENCE R. REYNOLDS, AMY COMSTOCK RICK, TRIP ROTHSCHILD, WALTER SHAUB, RICHARD M. THOMAS, KATHLEEN WHALEN, HARVEY WILCOX, LESLIE WILCOX. Signed by Judge Emmet G. Sullivan on 3/6/2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | | | MINUTE ORDER. The Court sua sponte schedules a motion hearing to hear oral argument on 15 motion to dismiss in this proceeding. The motion hearing shall take place on June 7, 2018 at 10:00 am in Courtroom 20. Signed by Judge Emmet G. Sullivan on 3/6/2018. (lcegs1) (Entered: 03/06/2018) |
| 03/06/2018 | | | Set/Reset Hearings: Motion Hearing set for 6/7/2018 at 10:00 AM in Ceremonial Courtroom before Judge Emmet G. Sullivan. (mac) (Entered: 03/06/2018) |
| 03/06/2018 | 40 | | |

| | | |
|---|---|---|
| | | AMICUS BRIEF by JUDICIAL EDUCATION PROJECT, SETH BARRETT TILLMAN. (jf) (Entered: 03/08/2018) |
| 03/06/2018 | 41 | AMICUS BRIEF by MICHAEL BARNES, LEONARD BOSWELL, BARBARA BOXER, BOB CARR, TOM COLEMAN, MICKEY EDWARDS, LEE HAMILTON, TOM HARKIN, GARY HART, BOB INGLIS, CARL LEVIN, BRAD MILLER, GEORGE MILLER, PHILIP SHARP, CHRIS SHAYS, PETER SMITH, MARK UDALL, HENRY WAXMAN, DICK ZIMMER. (jf) (Entered: 03/08/2018) |
| 03/06/2018 | 42 | AMICUS BRIEF by DON FOX, MARILYN GLYNN, KAREN KUCIK, LAWRENCE R. REYNOLDS, AMY COMSTOCK RICK, TRIP ROTHSCHILD, WALTER SHAUB, RICHARD M. THOMAS, KATHLEEN WHALEN, HARVEY WILCOX, LESLIE WILCOX . (jf) (Entered: 03/08/2018) |
| 03/06/2018 | 43 | AMICUS BRIEF by FORMER NATIONAL SECURITY OFFICIALS. (jf) (Entered: 03/08/2018) |
| 03/06/2018 | 44 | AMICUS BRIEF by FEDERAL JURISDICTION AND CONSTITUTIONAL LAW SCHOLARS. (jf) (Entered: 03/08/2018) |
| 03/06/2018 | 45 | AMICUS BRIEF by (Separation of Powers Scholars) REBECCA L. BROWN, HAROLD H. BRUFF, NEIL KINKOPF, CHRISTOPHER H. SCHROEDER, PETER M. SHANE, KEVIN M. STACK, PETER L. STRAUSS. (jf) (Entered: 03/08/2018) |
| 03/06/2018 | 46 | AMICUS BRIEF by JOHN MIKHAIL, JACK RAKOVE, GAUTHAM RAO, JED H. SHUGERMAN, SIMON STERN. (jf) (Entered: 03/08/2018) |
| 03/06/2018 | 84 | AMICUS BRIEF by JUDICIAL EDUCATION PROJECT, SETH BARRETT TILLMAN. (jf) (Entered: 07/02/2019) |
| 03/30/2018 | | MINUTE ORDER. The parties are directed to respond, by no later than April 30, 2018, to any arguments raised by amici that have not been addressed by the parties in their briefs. The response shall be a consolidated response to all amicus curiae briefs of no more than 45 pages. Signed by Judge Emmet G. Sullivan on 3/30/2018. (lcegs1) (Entered: 03/30/2018) |
| 03/30/2018 | | Set/Reset Deadlines: Response To All Amicus Curiae Briefs due by 4/30/2018 (mac) (Entered: 03/30/2018) |
| 04/05/2018 | 47 | NOTICE OF SUPPLEMENTAL AUTHORITY by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, JOSEPH CROWLEY, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, KIRSTEN E. GILLIBRAND, LUIS V. GUTIERREZ, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD |

| | | |
|---|---|---|
| | | SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN (Attachments: # 1 Exhibit A)(Gorod, Brianne) (Entered: 04/05/2018) |
| 04/13/2018 | 48 | MOTION to Clarify by JUDICIAL EDUCATION PROJECT, SETH BARRETT TILLMAN (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Ray, Robert) (Entered: 04/13/2018) |
| 04/13/2018 | 49 | CERTIFICATE OF SERVICE by JUDICIAL EDUCATION PROJECT, SETH BARRETT TILLMAN re 48 MOTION to Clarify . (Ray, Robert) (Entered: 04/13/2018) |
| 04/17/2018 | | MINUTE ORDER. In view of 48 motion to clarify, the Court clarifies that amici are not invited to respond to arguments raised by other amici. Signed by Judge Emmet G. Sullivan on 4/17/2018. (lcegs1) Modified event title on 4/19/2018 (znmw). (Entered: 04/17/2018) |
| 04/30/2018 | 50 | SUPPLEMENTAL MEMORANDUM to re Order, filed by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, JOSEPH CROWLEY, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, KIRSTEN E. GILLIBRAND, LUIS V. GUTIERREZ, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN. (Gorod, Brianne) (Entered: 04/30/2018) |
| 04/30/2018 | 51 | SUPPLEMENTAL MEMORANDUM to re 15 MOTION to Dismiss *for Failure to State a Claim and for Lack of Subject Matter Jurisidction (Pursuant to the Court's March 30 Order)* filed by DONALD J. TRUMP. (Lin, Jean) (Entered: 04/30/2018) |
| 05/21/2018 | 52 | MOTION For Leave to be Heard at Oral Argument by JUDICIAL EDUCATION PROJECT, SETH BARRETT TILLMAN (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Ray, Robert) (Entered: 05/21/2018) |
| 05/22/2018 | | MINUTE ORDER. The Court has determined that at the June 7, 2018 motion hearing in this case, it will hear argument only on the threshold question of plaintiffs' standing to bring their claims. The Court is appreciative of the amicus briefs submitted, but declines to invite any amicus to be heard orally. Signed by Judge Emmet G. Sullivan on 5/22/2018. (lcegs1) (Entered: 05/22/2018) |
| 05/22/2018 | | MINUTE ORDER denying 52 motion for leave to be heard at oral argument by amicus. Signed by Judge Emmet G. Sullivan on 5/22/2018. (lcegs1) (Entered: 05/22/2018) |
| 06/04/2018 | 53 | NOTICE of Appearance by Brett A. Shumate on behalf of DONALD J. TRUMP (Shumate, Brett) (Entered: 06/04/2018) |

| 06/07/2018 | | | Minute Entry for proceedings held before Judge Emmet G. Sullivan: Motion Hearing held on 6/7/2018 re 15 MOTION to Dismiss *for Failure to State a Claim. (Court Reporter SCOTT WALLACE.) (mac) (Entered: 06/07/2018)* |
|---|---|---|---|
| 07/27/2018 | 54 | | TRANSCRIPT OF PROCEEDINGS before Judge Emmet G. Sullivan held on 6−7−18; Page Numbers: 1−119. Date of Issuance:6−14−18. Court Reporter/Transcriber Scott Wallace, Telephone number 202−354−3196, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P></P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 8/17/2018. Redacted Transcript Deadline set for 8/27/2018. Release of Transcript Restriction set for 10/25/2018.(Wallace, Scott) (Main Document 54 replaced on 7/31/2018) (zjf). (Entered: 07/27/2018) |
| 07/27/2018 | 55 | | NOTICE OF SUPPLEMENTAL AUTHORITY by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, JOSEPH CROWLEY, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, KIRSTEN E. GILLIBRAND, LUIS V. GUTIERREZ, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN (Attachments: # 1 Exhibit A)(Gorod, Brianne) (Entered: 07/27/2018) |
| 08/15/2018 | 56 | | NOTICE OF SUPPLEMENTAL AUTHORITY by DONALD J. TRUMP (Attachments: # 1 Exhibit)(Lin, Jean) (Entered: 08/15/2018) |
| 08/20/2018 | 57 | | NOTICE OF SUPPLEMENTAL AUTHORITY by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, JOSEPH CROWLEY, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, KIRSTEN E. GILLIBRAND, LUIS V. GUTIERREZ, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, |

| | | | |
|---|---|---|---|
| | | | AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN (Frazelle, Brian) (Entered: 08/20/2018) |
| 08/20/2018 | | | NOTICE OF ERROR re 57 NOTICE OF SUPPLEMENTAL AUTHORITY; emailed to brian@theusconstitution.org, cc'd 20 associated attorneys — The PDF file you docketed contained errors: 1. Invalid attorney signature, 2. DO NOT REFILE−Signature on pleadings should match Login/Password (zjf, ) (Entered: 08/20/2018) |
| 09/28/2018 | 58 | 43 | ORDER denying in part and deferring in part 15 Motion to Dismiss. Signed by Judge Emmet G. Sullivan on 9/28/2018. (lcegs1) (Entered: 09/28/2018) |
| 09/28/2018 | 59 | 44 | MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 9/28/2018. (lcegs1) (Entered: 09/28/2018) |
| 10/22/2018 | 60 | | MOTION for Certification for interlocutory appeal *of the Court's September 28, 2018 Order* by DONALD J. TRUMP (Attachments: # 1 Memorandum in Support)(Lin, Jean) (Entered: 10/22/2018) |
| 11/02/2018 | 61 | | Memorandum in opposition to re 60 MOTION for Certification for interlocutory appeal *of the Court's September 28, 2018 Order* filed by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, JOSEPH CROWLEY, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, KIRSTEN E. GILLIBRAND, LUIS V. GUTIERREZ, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN. (Attachments: # 1 Exhibit)(Gorod, Brianne) (Entered: 11/02/2018) |
| 11/09/2018 | 62 | | REPLY to opposition to motion re 60 MOTION for Certification for interlocutory appeal *of the Court's September 28, 2018 Order* filed by DONALD J. TRUMP. (Lin, Jean) (Entered: 11/09/2018) |
| 01/30/2019 | 63 | | NOTICE OF SUPPLEMENTAL AUTHORITY by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, KIRSTEN E. GILLIBRAND, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY |

| | | | |
|---|---|---|---|
| | | | H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN (Attachments: # 1 Exhibit A)(Gorod, Brianne) (Entered: 01/30/2019) |
| 02/01/2019 | 64 | | NOTICE OF SUPPLEMENTAL AUTHORITY by DONALD J. TRUMP (Attachments: # 1 Exhibit A)(Lin, Jean) (Entered: 02/01/2019) |
| 04/11/2019 | 65 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to DONALD J. TRUMP. Attorney Brett A. Shumate terminated. (Shumate, Brett) (Entered: 04/11/2019) |
| 04/30/2019 | 66 | 102 | ORDER denying in part 15 Motion to Dismiss. Signed by Judge Emmet G. Sullivan on 4/30/2019. (lcegs1) (Entered: 04/30/2019) |
| 04/30/2019 | 67 | 103 | MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 4/30/2019. (lcegs1) (Entered: 04/30/2019) |
| 04/30/2019 | | | MINUTE ORDER. In view of 66 Order and 67 Memorandum Opinion, the Court HEREBY ORDERS supplemental briefing on 60 Motion for Certification for Interlocutory Appeal. The President shall file a supplemental brief by no later than May 14, 2019, plaintiffs shall file an opposition by no later than May 21, 2019, and the President shall file a reply by no later than May 28, 2019. Signed by Judge Emmet G. Sullivan on 4/30/2019. (lcegs1) (Entered: 04/30/2019) |
| 05/01/2019 | | | Set/Reset Deadlines: President Supplemental Brief due by 5/14/2019. Plaintiff Opposition due by 5/21/2019. President Reply due by 5/28/2019. (mac) (Entered: 05/01/2019) |
| 05/03/2019 | 68 | | Consent MOTION for Extension of Time to File Answer re 14 Amended Complaint,,, *and to File Rule 16.3 Report* by DONALD J. TRUMP (Attachments: # 1 Text of Proposed Order)(Lin, Jean) (Entered: 05/03/2019) |
| 05/03/2019 | 69 | | ENTERED IN ERROR.....Consent MOTION for Extension of Time to *File Rule 16.3 Report (same document as Docket No. 68)* by DONALD J. TRUMP (Attachments: # 1 Text of Proposed Order)(Lin, Jean) Modified on 5/7/2019 (jf). (Entered: 05/03/2019) |
| 05/07/2019 | | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 69 Consent MOTION for Extension of Time to *File Rule 16.3 Report (same document as Docket No. 68)* was entered in error as a duplicate filing.(jf) (Entered: 05/07/2019) |
| 05/07/2019 | | | MINUTE ORDER granting 68 consent motion for extension of time to answer and to file Local Civil Rule 16.3 Report. The defendant shall file his answer to the amended complaint, and the parties shall file their Local Civil Rule 16.3 Report by no later than May 28, 2019. Signed by Judge Emmet G. Sullivan on 5/7/2019. (lcegs1) (Entered: 05/07/2019) |
| 05/08/2019 | | | |

| | | | |
|---|---|---|---|
| | | | Set/Reset Deadlines: Answer To The Amended Complaint And Parties To File Their Local Civil Rule 16.3 Report due by 5/28/2019. (mac) (Entered: 05/08/2019) |
| 05/08/2019 | <u>70</u> | | NOTICE of Appearance by Bradley P. Humphreys on behalf of DONALD J. TRUMP (Humphreys, Bradley) (Entered: 05/08/2019) |
| 05/14/2019 | <u>71</u> | | MOTION for Certification for interlocutory appeal *of the Court's April 30, 2019 Order*, MOTION to Stay *Proceedings* by DONALD J. TRUMP (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Text of Proposed Order)(Lin, Jean) (Entered: 05/14/2019) |
| 05/15/2019 | <u>72</u> | | NOTICE of Appearance by James R. Powers on behalf of DONALD J. TRUMP (Powers, James) (Entered: 05/15/2019) |
| 05/21/2019 | <u>73</u> | | MOTION for Leave to File *TO FILE BRIEF OF SCHOLAR SETH BARRETT TILLMAN AND JUDICIAL EDUCATION PROJECT AS AMICI CURIAE IN SUPPORT OF THE DEFENDANTS SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION PURSUANT TO 28 U.S.C. § 1292(b) FOR CERTIFICATION OF THE COURTS DENIAL OF THE MOTION TO DISMISS AND DEFENDANTS MOTION TO STAY* by JUDICIAL EDUCATION PROJECT, SETH BARRETT TILLMAN (Attachments: # <u>1</u> Exhibit A −BRIEF OF SCHOLAR SETH BARRETT TILLMAN AND JUDICIAL EDUCATION PROJECT AS AMICI CURIAE IN SUPPORT OF THE DEFENDANTS SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION PURSUANT TO 28 U.S.C. § 1292(b) FOR CERTIFICATION OF THE COURTS DENIAL OF MOTION TO DISMISS AND DEFENDANTS MOTION TO STAY, # <u>2</u> Text of Proposed Order)(Ray, Robert) (Entered: 05/21/2019) |
| 05/21/2019 | <u>74</u> | | Memorandum in opposition to re <u>71</u> MOTION for Certification for interlocutory appeal *of the Court's April 30, 2019 Order* MOTION to Stay *Proceedings*, <u>60</u> MOTION for Certification for interlocutory appeal *of the Court's September 28, 2018 Order* filed by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, KIRSTEN E. GILLIBRAND, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN. (Gorod, Brianne) (Entered: 05/21/2019) |
| 05/28/2019 | <u>75</u> | | MEET AND CONFER STATEMENT. (Attachments: # <u>1</u> Exhibit Proposed Scheduling Order)(Gorod, Brianne) (Entered: 05/28/2019) |
| 05/28/2019 | <u>76</u> | | ANSWER to <u>14</u> Amended Complaint,,, by DONALD J. TRUMP.(Lin, Jean) (Entered: 05/28/2019) |

| 05/28/2019 | 77 | | REPLY to opposition to motion re 71 MOTION for Certification for interlocutory appeal *of the Court's April 30, 2019 Order* MOTION to Stay *Proceedings* filed by DONALD J. TRUMP. (Lin, Jean) (Entered: 05/28/2019) |
|---|---|---|---|
| 06/03/2019 | 78 | | MOTION for Leave to File *Surreply* by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, KIRSTEN E. GILLIBRAND, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN (Attachments: # 1 Surreply, # 2 Text of Proposed Order)(Gorod, Brianne) (Entered: 06/03/2019) |
| 06/12/2019 | 79 | | MOTION for Joinder, MOTION to Enforce by JEFFREY CUTLER (Attachments: # 1 Exhibits)(jf) (Entered: 06/17/2019) |
| 06/20/2019 | 80 | | Consent MOTION to Amend/Correct *Complaint* by KAREN BASS, MICHAEL F. BENNET, RICHARD BLUMENTHAL, CORY A. BOOKER, MARIA CANTWELL, BENJAMIN L. CARDIN, TOM CARPER, DAVID N. CICILLINE, JAMES E. CLYBURN, STEVE COHEN, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, TED DEUTCH, TAMMY DUCKWORTH, RICHARD J. DURBIN, KIRSTEN E. GILLIBRAND, KAMALA D. HARRIS, MARTIN HEINRICH, MAZIE K. HIRONO, STENY H. HOYER, SHEILA JACKSON LEE, HAKEEM JEFFRIES, HENRY C. HANK JOHNSON, JR, TIM KAINE, AMY KLOBUCHAR, PATRICK LEAHY, TED W. LIEU, ZOE LOFGREN, EDWARD J. MARKEY, JEFF MERKLEY, CHRIS MURPHY, PATTY MURRAY, JERROLD NADLER, NANCY PELOSI, JAMIE RASKIN, JACK REED, CEDRIC L. RICHMOND, LINDA T. SANCHEZ, BERNARD SANDERS, BRIAN SCHATZ, ERIC SWALWELL, TOM UDALL, CHRIS VAN HOLLEN, ELIZABETH WARREN, SHELDON WHITEHOUSE, RON WYDEN (Attachments: # 1 Index to Exhibits, # 2 Second Amended Complaint, # 3 Redline Comparison, # 4 Proposed Order)(Gorod, Brianne) (Entered: 06/20/2019) |
| 06/20/2019 | 81 | | NOTICE OF SUPPLEMENTAL AUTHORITY by DONALD J. TRUMP (Attachments: # 1 Exhibit A)(Powers, James) (Entered: 06/20/2019) |
| 06/25/2019 | | | MINUTE ORDER granting 73 MOTION for Leave to File TO FILE BRIEF OF SCHOLAR SETH BARRETT TILLMAN AND JUDICIAL EDUCATION PROJECT AS AMICI CURIAE IN SUPPORT OF THE DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION PURSUANT TO 28 U.S.C. § 1292(b) FOR CERTIFICATION OF THE COURTS DENIAL OF THE MOTION TO DISMISS AND DEFENDANT'S MOTION TO STAY by JUDICIAL EDUCATION PROJECT, SETH BARRETT TILLMAN. Signed by Judge Emmet G. Sullivan on 6/25/2019. (lcegs1) (Entered: 06/25/2019) |

| | | |
|---|---|---|
| 06/25/2019 | | MINUTE ORDER granting <u>78</u> motion for leave to file surreply. Signed by Judge Emmet G. Sullivan on 6/25/2019. (lcegs1) (Entered: 06/25/2019) |
| 06/25/2019 | 82 | VACATED PURSUANT TO COURT'S ORDER OF 8/21/2019.....ORDER denying <u>60</u> Motion for Certificate of Appealability; denying <u>71</u> Motion for Certificate of Appealability; finding as moot <u>71</u> Motion to Stay. Signed by Judge Emmet G. Sullivan on 6/25/2019. (lcegs1) Modified on 8/25/2019 (zcdw). (Entered: 06/25/2019) |
| 06/25/2019 | | MINUTE ORDER. In view of <u>75</u> Local Rule 16.3 Report, it is HEREBY ORDERED that other parties shall be joined and the pleadings amended by no later than June 26, 2019; and it is FURTHER ORDERED that fact discovery shall commence on June 28, 2019 and shall conclude on September 27, 2019; and it is FURTHER ORDERED that Plaintiffs shall file their motion for summary judgment by no later than 30 days after the close of discovery; Defendant shall file his opposition and cross−motion for summary judgment by no later than 30 days after Plaintiffs motion; Plaintiffs shall file their opposition and reply by no later than 21 days after Defendants motion; and Defendant shall file his reply by no later than 14 days after Plaintiffs opposition. Signed by Judge Emmet G. Sullivan on 6/25/2019. (lcegs1) (Entered: 06/25/2019) |
| 06/25/2019 | | MINUTE ORDER granting <u>80</u> Consent Motion to Amend/Correct. Signed by Judge Emmet G. Sullivan on 6/25/2019. (lcegs1) (Entered: 06/25/2019) |
| 06/25/2019 | 85 | AMICUS BRIEF IN SUPPORT OF THE DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION PURSUANT TO 28 U.S.C. § 1292(b) FOR CERTIFICATION OF THE COURTS DENIAL OF THE MOTION TO DISMISS AND DEFENDANT'S MOTION TO STAY by JUDICIAL EDUCATION PROJECT, SETH BARRETT TILLMAN. (jf) (Entered: 07/02/2019) |
| 06/25/2019 | 86 | SURREPLY re <u>71</u> MOTION for Certification for interlocutory appeal *of the Court's April 30, 2019 Order* MOTION to Stay *Proceedings* filed by ALL PLAINTIFFS. (jf) (Entered: 07/02/2019) |
| 06/25/2019 | 87 | SECOND AMENDED COMPLAINT against DONALD J. TRUMP filed by ALL PLAINTIFFS.(jf) (Entered: 07/02/2019) |
| 06/26/2019 | | Set/Reset Deadlines: Amended Pleadings due by 6/26/2019. Fact Discovery due by 9/27/2019. (mac) (Entered: 06/26/2019) |
| 06/26/2019 | 83 | AMENDED COMPLAINT against DONALD J. TRUMP filed by NANCY PELOSI, STENY H. HOYER, KAMALA D. HARRIS, BERNARD SANDERS, CHRIS MURPHY, CATHERINE CORTEZ MASTO, BENJAMIN L. CARDIN, KAREN BASS, JACK REED, KIRSTEN E. GILLIBRAND, RON WYDEN, CHRISTOPHER A. COONS, ERIC SWALWELL, TOM UDALL, JAMIE RASKIN, SHEILA JACKSON LEE, MAZIE K. HIRONO, HENRY C. HANK JOHNSON, JR, MARIA CANTWELL, CEDRIC L. RICHMOND, TAMMY DUCKWORTH, TOM CARPER, RICHARD BLUMENTHAL, CHRIS VAN HOLLEN, JEFF MERKLEY, BRIAN SCHATZ, STEVE COHEN, CORY A. BOOKER, TED W. LIEU, EDWARD J. MARKEY, MARTIN HEINRICH, TED DEUTCH, HAKEEM JEFFRIES, TIM KAINE, MICHAEL F. BENNET, AMY KLOBUCHAR, RICHARD J. DURBIN, LINDA T. SANCHEZ, SHELDON WHITEHOUSE, DAVID N. CICILLINE, ZOE LOFGREN, PATRICK LEAHY, PATTY MURRAY, |

| | | |
|---|---|---|
| | | JAMES E. CLYBURN, JERROLD NADLER, ELIZABETH WARREN.(Gorod, Brianne) (Entered: 06/26/2019) |
| 07/08/2019 | 88 | WITHDRAWN PURSUANT TO NOTICE FILED ON 7/8/2019.....NOTICE *of Petition for Writ of Mandamus* by DONALD J. TRUMP (Lin, Jean); Modified on 7/9/2019 (tth). (Entered: 07/08/2019) |
| 07/08/2019 | 89 | NOTICE *of Withdrawal of Docket No. 88* by DONALD J. TRUMP re 88 Notice (Other) (Lin, Jean) (Entered: 07/08/2019) |
| 07/08/2019 | 90 | NOTICE *of Petition for Writ of Mandamus* by DONALD J. TRUMP (Attachments: # 1 Exhibit Petition for Writ of Mandamus)(Lin, Jean) (Entered: 07/08/2019) |
| 07/19/2019 | | MINUTE ORDER. Upon consideration of the D.C. Circuit's Order in In re: Donald J. Trump, No. 19−5196 (D.C. Cir. July 19, 2019) (per curiam), the Court, sua sponte, temporarily stays discovery until further Order of this Court. Signed by Judge Emmet G. Sullivan on 7/19/2019. (lcegs3) (Entered: 07/19/2019) |
| 07/19/2019 | 92 | ORDER of USCA ; USCA Case Number 19−5196. (zrdj) (Entered: 07/25/2019) |
| 07/22/2019 | 91 | MINUTE ORDER. In view of the D.C. Circuit's Order in In re: Donald J. Trump, No. 19−5196 (D.C. Cir. July 19, 2019) (per curiam), the Court, sua sponte, ORDERS supplemental briefing limited to the issues raised in that Order. Defendant shall file his brief by no later than July 29, 2019; Plaintiffs shall file their response by no later than August 5, 2019; and Defendant shall file his reply by no later than August 12, 2019. Signed by Judge Emmet G. Sullivan on 7/22/2019. (lcegs1) (Entered: 07/22/2019) |
| 07/22/2019 | | Set/Reset Deadlines: Defendant Brief due by 7/29/2019. Plaintiff Response due by 8/5/2019. Defendant Reply due by 8/12/2019. (mac) (Entered: 07/22/2019) |
| 07/29/2019 | 93 | RESPONSE TO ORDER OF THE COURT re 91 Order, *and Supplemental Brief in Support of Defendant's Motion for Certification of the Court's September 28, 2018 and April 30, 2019 Orders Pursuant to 28 U.S.C. section 1292(b) and for a Stay Pending Appeal* filed by DONALD J. TRUMP. (Humphreys, Bradley) (Entered: 07/29/2019) |
| 08/05/2019 | 94 | RESPONSE TO ORDER OF THE COURT re 91 Order, *PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b) AND MOTION FOR A STAY PENDING APPEAL* filed by ALL PLAINTIFFS. (Gorod, Brianne) (Entered: 08/05/2019) |
| 08/12/2019 | 95 | RESPONSE TO ORDER OF THE COURT re 91 Order, *and Supplemental Reply Brief in Support of Defendant's Motion for Certification of the Court's September 28, 2018 and April 30, 2019 Orders Pursuant to 28 U.S.C. section 1292(b) and for a Stay Pending Appeal* filed by DONALD J. TRUMP. (Powers, James) (Entered: 08/12/2019) |
| 08/21/2019 | 96 | MEMORANDUM OPINION AND ORDER VACATING 82 Memorandum Opinion and Order, GRANTING 60 motion for certification for interlocutory appeal of the Court's September 28, 2018 Order, and GRANTING 71 motion for certification for interlocutory appeal of the Court's April 30, 2019 Order and |

| | | | |
|---|---|---|---|
| | | | for stay. Signed by Judge Emmet G. Sullivan on 8/21/2019. (lcegs1) (Entered: 08/21/2019) |
| 09/04/2019 | 97 | 42 | NOTICE OF INTERLOCUTORY APPEAL as to 67 Order, Memorandum Opinion, 66 Order, 59 Memorandum & Opinion, 58 Order on Motion to Dismiss by DONALD J. TRUMP. Fee Status: No Fee Paid. Parties have been notified. (zrdj) (Entered: 09/05/2019) |

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 19-8005**                                    **September Term, 2019**

**1:17-cv-01154-EGS**

**Filed On:**  September 4, 2019

In re: Donald J. Trump, in his official capacity
as President of the United States of America,

       Petitioner

**BEFORE:**     Millett, Pillard, and Wilkins, Circuit Judges

### O R D E R

Upon consideration of the petition for leave to file an interlocutory appeal and the response thereto, it is

**ORDERED** that the petition be granted.  <u>See</u> 28 U.S.C. § 1292(b).

The Clerk is directed to transmit a copy of this order to the district court.  The district court will file the order as a notice of appeal pursuant to Fed. R. App. P. 5.  The district court is requested to promptly certify and transmit the preliminary record to this court, after which the case will be assigned a general docket number.

The parties are directed to submit a proposed expedited briefing schedule within 3 days of the appeal being docketed in this court.

### <u>Per Curiam</u>

                                       **FOR THE COURT:**
                                       Mark J. Langer, Clerk

                    BY:     /s/
                                       Lynda M. Flippin
                                       Deputy Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
Senator RICHARD BLUMENTHAL,     )
et al.,                         )
                                )
            Plaintiffs,          )
                                )
       v.                       )Civil Action No. 17-1154 (EGS)
                                )
DONALD J. TRUMP, in his official)
capacity as President of the    )
United States,                  )
                                )
            Defendant.           )
_____)
```

**ORDER**

For the reasons stated in the accompanying Memorandum Opinion, the Court finds that plaintiffs have standing to sue the President for allegedly violating the Foreign Emoluments Clause of the United States Constitution. It is hereby

**ORDERED** that the motion to dismiss is **DENIED IN PART** and **DEFERRED IN PART.** The Court will schedule a motion hearing should it determine one to be necessary to resolve the remaining issues.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **September 28,2018**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
Senator RICHARD BLUMENTHAL,    )
et al.,                        )
                               )
            Plaintiffs,        )
                               )
        v.                     )Civil Action No. 17-1154 (EGS)
                               )
DONALD J. TRUMP, in his official )
capacity as President of the   )
United States,                 )
                               )
            Defendant.         )
_____)
```

**MEMORANDUM OPINION**

## I.   Introduction

When Members of Congress sue the President in federal court over official action, a court must first determine whether the dispute is a "Case" or "Controversy" under Article III of the United States Constitution, rather than a political dispute between the elected branches of government. A critical part of this inquiry is whether the plaintiffs have legal standing to bring the action. Whether legislators have standing to sue often turns on whether they can obtain the remedy they seek from the court from fellow legislators. When a legislative remedy is available, courts generally dismiss the case on jurisdictional grounds. The Supreme Court, however, has not foreclosed federal courts from appropriately exercising jurisdiction over certain types of disputes between the political branches. This case is

one of those disputes. And when a case is properly before a court because it presents an Article III "Case" or "Controversy," it is the role of the Judiciary "to say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177 (1803).

Plaintiffs, approximately 201 minority Members of the 535 Members of the United States Senate and House of Representatives, allege that Donald J. Trump in his official capacity as President of the United States ("the President") is violating the Foreign Emoluments Clause ("Clause"). Under this Clause, certain federal officials, including the President, may not "accept" an "emolument" from "any King, Prince or foreign State" without "the Consent of Congress." U.S Const. art. I, § 9, cl. 8. In Count I, plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201 in the form of a declaratory judgment stating that the President is violating the Clause when he accepts emoluments from foreign states without first seeking the consent of Congress. Am. Compl., ECF No. 14 ¶¶ 85-86. In Count II, plaintiffs seek injunctive relief pursuant to the Court's inherent authority to grant equitable relief and pursuant to 18 U.S.C. § 1331 in the form of a Court order enjoining the President from accepting "any present, Emolument, Office, or Title, of any kind whatever" from a foreign state without obtaining "the Consent of Congress." *Id.* ¶ 92.

2

Pending before the Court is the President's motion to dismiss. The President argues that this case should be dismissed on four independent grounds,[1] but the threshold question is whether plaintiffs have standing to bring their claims. This opinion addresses only this threshold question. With respect to the grounds for dismissal that turn on the merits, the parties dispute whether the profits that the President's business interests earn from foreign governments are covered "emoluments." However, for the purpose of determining whether plaintiffs have standing to sue, the Court must accept as true the allegations that the President has accepted prohibited foreign emoluments without seeking the consent of Congress.

As is explained more fully below, the central question for standing purposes is how to characterize the injury that occurs when the President fails to seek the consent of Congress, as required by the Clause. Plaintiffs argue that each Member of Congress suffers a particularized and concrete injury when his or her vote is nullified by the President's denial of the opportunity to vote on the record about whether to approve his

---

[1] The President seeks dismissal on these grounds: (1) lack of subject matter jurisdiction because plaintiffs do not have standing to bring their claims; (2) lack of a cause of action to seek the relief requested; (3) failure to state a claim upon which relief can be granted; and (4) the injunctive relief sought is unconstitutional. Def.'s Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 15-1 at 17-18.

3

acceptance of a prohibited foreign emolument. The President argues that this is an intra-branch dispute which does not belong in federal court because the plaintiffs' remedy is to convince a majority of their colleagues in both Houses to pass legislation addressing the President's ability to accept prohibited foreign emoluments.

Upon careful consideration of the President's motion to dismiss, the opposition and reply thereto, the relevant arguments of *amici*,[2] the parties' arguments at the June 7, 2018 motion hearing, and for the reasons explained below, the Court finds that the plaintiffs have standing to sue the President for allegedly violating the Foreign Emoluments Clause. The Court therefore **DENIES IN PART** the motion to dismiss and **DEFERS** ruling on the remaining arguments in the motion to dismiss.

## II.  Factual Background

Relevant to whether they have standing to bring their claims, plaintiffs allege that the President "has a financial interest in vast business holdings around the world that engage in dealings with foreign governments and receive benefits from those governments." Am. Compl., ECF No. 14 ¶ 2. Plaintiffs also allege that the President owns "'more than 500 separate entities–hotels, golf courses, media properties, books,

---

[2] The Court appreciates the illuminating analysis provided by the *amici*.

4

management companies, residential and commercial buildings . . .
airplanes and a profusion of shell companies set up to
capitalize on licensing deals.'" *Id.* ¶ 34 (citation omitted).

As a result of his financial interests, plaintiffs allege
the President has accepted, and will accept in the future,
emoluments from foreign states. *Id.* Indeed, the President has
acknowledged "that his businesses receive funds and make a
profit from payments by foreign governments, and that they will
continue to do so while he is President." *Id.* ¶ 37. Public
reporting has also confirmed this to be the case. *Id.* The
President, through his personal attorney, has likewise asserted
that the Constitution does not require "him to seek or obtain
Congress' consent before accepting benefits arising out of
exchanges between foreign states and his businesses." *Id.* ¶ 40.
The President has therefore not provided any information to
Congress about any foreign emoluments he has received. *Id.* ¶ 41.
Plaintiffs allege that because the President has denied them the
opportunity to give or withhold their consent, he has injured
them in their roles as Members of Congress, *id.* ¶ 5, and that
they cannot force the President to comply with the Constitution
absent a judicial order, *id.* ¶ 83.

**III. Standard of Review**

A motion to dismiss for lack of standing is properly
considered a challenge to the Court's subject matter

jurisdiction and should be reviewed under Federal Rule of Civil Procedure 12(b)(1). *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)("[T]he defect of standing is a defect in subject matter jurisdiction."). The Court must therefore consider the defendant's motion to dismiss pursuant to Rule 12(b)(1) before reaching a merits challenge pursuant to Rule 12(b)(6). *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). To survive a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). In so doing, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of plaintiffs, but the court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 63 (D.D.C. 2001).

6

# IV.  Analysis

## A.    Standing

"Article III of the Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting U.S. Const. art. III, § 2). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). The standing requirement "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* The standing inquiry "often turns on the nature and source of the claim asserted" and the specific facts alleged. *Warth v. Seldin*, 422 U.S. 490, 500 (1975). "[T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers." *Allen v. Wright*, 468 U.S. 737, 752 (1984).

To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Lujan*, 504 U.S. at 560-61 (1992)); *see also Hollingsworth v. Perry*, 570 U.S. 700, 705 (2013) ("To have standing, a litigant

7

must seek relief for an injury that affects him in a personal
and individual way."). These requirements help to "assure that
the legal questions presented to the court will be resolved, not
in the rarified atmosphere of a debating society, but in a
concrete factual context conducive to a realistic appreciation
of the consequences of judicial action." *Valley Forge Christian
Coll. v. Ams. United for Separation of Church & State, Inc.*, 454
U.S. 464, 472 (1982). "The [effect of the] exercise of judicial
power [is] most vivid when a federal court declares
unconstitutional an act of the Legislative or Executive Branch."
*Id.* at 473. Therefore, to ensure the "continued effectiveness of
the federal courts in performing that role . . . it has been
recognized as a tool of last resort." *Id.* at 473-74.

    "The party invoking federal jurisdiction bears the burden
of establishing these elements." *Lujan*, 504 U.S. at 561
(citations omitted). "Since they are not mere pleading
requirements but rather an indispensable part of the plaintiff's
case, each element must be supported in the same way as any
other matter on which the plaintiff bears the burden of proof,
*i.e.,* with the manner and degree of evidence required at the
successive stages of the litigation." *Id.*

    When considering whether a legislator has standing, the
Court "must carefully inquire as to whether [plaintiffs] have
met their burden of establishing that their claimed injury is

personal, particularized, concrete, and otherwise judicially cognizable." *Raines*, 521 U.S. at 820. The "standing inquiry [is] especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Id.* at 819-20.

## B.   Foreign Emoluments Clause

The Foreign Emoluments Clause provides:

> No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State.

U.S Const. art. I, § 9, cl. 8. "[T]he language of the Emoluments Clause is both sweeping and unqualified." 17 Op. O.L.C. 114, 121 (1993). The acceptance of an emolument barred by the Clause is prohibited unless Congress chooses to permit an exception. *Id.*; *see also* Letter from James Madison to David Humphreys (Jan. 5, 1803), https://founders.archives.gov/documents/Madison/02-04-02-0275# ("the Constitution of the United States has left with Congress the exclusive authority to permit the acceptance of presents from foreign Governments by persons holding Offices under the United States"). And the President may not accept any emolument until Congress votes to give its consent.

9

The Clause was intended by the Framers to guard against
"corruption and foreign influence." 3 M. Farrand, *Records of the
Federal Convention of 1787,* 327 (1966). Historically, Presidents
have complied with the Clause by either seeking and obtaining
congressional consent prior to accepting foreign presents or
emoluments, or by requesting an opinion from the Executive or
Legislative Branch's advisory office as to whether the Clause
applies.[3] *See* Br. of Federal Jurisdiction and Constitutional Law
Scholars as *Amici Curiae* in Support of Pls., ECF No. 44 at 24.[4]
One such example occurred in 1830 when President Jackson placed
"'at the disposal of Congress'" a gold medal presented to him by
the Republic of Colombia, noting that accepting presents from a
foreign government is prohibited by the Constitution. *Id.*
(quoting Message of President Andrew Jackson to the Senate and
House of Representatives, dated January 19, 1830, 3 *Compilation
of the Messages and Papers of the Presidents* 1029, 1030 (James
D. Richardson ed., 1897)). Similarly, when the King of Siam
presented President Lincoln with various gifts, he informed
Congress, which directed that the gifts "'be deposited in the

---

[3] In deciding a motion to dismiss, "a Court may take judicial
notice of historical, political, or statistical facts, or any
other facts that are verifiable with certainty." *Youkelsone v.
FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012) (citing *Mintz v.
FDIC*, 729 F. Supp. 2d 276, 278 n.2 (D.D.C. 2010)).
[4] When citing electronic filings throughout this opinion, the
Court cites to the ECF header page number, not the original page
number of the filed document.

collection of curiosities at the Department of Interior.'" *Id.*
at 25 (quoting Joint Resolution No. 20, A Resolution providing
for the Custody of the Letter and Gifts from the King of Siam,
Res. 20, 37th Cong., 12 Stat. 616 (1862)).

Modern Presidents, except for President Trump, have sought
advice from the Department of Justice Office of Legal Counsel
("OLC") prior to accepting potentially covered emoluments. *Id.*
For example, President Kennedy requested an opinion on whether
the offer of an "honorary Irish citizenship" would fall within
the scope of the Clause. *Id.* (citing 1 Op. O.L.C. Supp. at 278).
And prior to his acceptance of the Nobel Peace Prize in 2009,
President Obama requested an opinion from OLC as to whether
accepting the prize would conflict with the Clause. *Id.*

Since the Clause prohibits the President from accepting a
prohibited foreign emolument unless Congress votes to consent,
the Constitution gives each individual Member of Congress a
right to vote before the President accepts. Under the
Constitution, Congress expresses its consent through the
combined votes of its individual members. U.S. Const. art. I, §
9, cl. 8. Congress "consist[s] of a Senate and House of
Representatives." *Id.* art. I, § 1. The "Consent of Congress" is
obtained when a majority of the individual members of each House
vote to consent. *Id.* art. I, § 3, cl. 1 ("each Senator shall
have one Vote"); *id.* art. I, § 5, cl. 3 (requiring, at the

11

request of one-fifth of those present, that "the Yeas and Nays of the Members of either House on any question" to be recorded). That Congress acts as "the body as a whole"[5] in providing or denying consent does not alter each Member's constitutional right to vote before the President accepts a prohibited foreign emolument because the body can give its consent only through a majority vote of its individual members.

### C.   Plaintiffs Have Standing to Bring their Claims

The President argues that the Court lacks jurisdiction over plaintiffs' claims because plaintiffs have not met their burden to establish a judicially cognizable injury as is required by Article III. Def.'s Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 15 at 21-28; Def.'s Reply ("Reply"), ECF No. 28 at 10-19. The President also disputes that the alleged injury is fairly traceable to him. Mot. to Dismiss, ECF No. 15-1 at 24; Reply, ECF No. 28 at 8.

Plaintiffs contend that they have standing: (1) the injury-in-fact they have suffered is that the President has denied them a voting opportunity to which the Constitution entitles them; (2) the injury is fairly traceable to the President's conduct

---

[5] *United States v. Ballin*, 144 U.S. 1, 7 (1892) ("The two houses of congress are legislative bodies representing larger constituencies. Power is not vested in any one individual, but in the aggregate of the members who compose the body, and its action is not the action of any separate member or number of members, but the action of the body as a whole.").

because he has neither asked for their consent nor provided them with any information about the prohibited foreign emoluments he has already allegedly accepted; and (3) the injury can be redressed by a favorable judicial decision if the Court requires the President to obtain congressional consent before accepting prohibited foreign emoluments. Pls.' Opp'n, ECF No. 17 at 13.

As discussed below, the President's arguments rely on a repeated misstatement of the injury alleged and on proffers of plainly inadequate legislative remedies. The Court is persuaded that plaintiffs have sustained their burden to show that they have standing to bring their claims: (1) they have adequately alleged a judicially cognizable injury that is fairly traceable to the President and can be redressed by a favorable judicial decision; and (2) although plaintiffs' claims raise separation-of-powers concerns, plaintiffs have no adequate legislative remedy and this dispute is capable of resolution through the judicial process.

### 1. Supreme Court and D.C. Circuit Precedent

#### a. *Raines v. Byrd*

The parties rely heavily on the Supreme Court's decision in *Raines v. Byrd*. *See generally* Mot. to Dismiss, ECF No. 15-1; Pls.' Opp'n, ECF No. 17; Reply, ECF No. 28 (discussing *Raines,* 521 U.S. 811 (1997)). The President argues that plaintiffs lack standing pursuant to *Raines*; plaintiffs respond that *Raines* does

13

not foreclose their standing to bring their claims and indeed provides support for it. The Court will therefore discuss the case in detail.

In *Raines*, six members of Congress who had voted against the Line Item Veto Act ("Act") sued the Secretary of the Treasury and the Director of the Office of Management and Budget, challenging the constitutionality of the Act. *Raines,* 521 U.S. at 814. The Act authorized the President to "'cancel' certain spending and tax benefit measures after he ha[d] signed them into law." *Id*. The plaintiffs claimed that the Act injured them in their official capacities by: (1) "'alter[ing] the legal and practical effect of all votes they may cast on bills'" subject to the Act; (2) "'divest[ing] [them] of their constitutional role in the repeal of legislation'"; and (3) "'alter[ing] the constitutional balance of powers between the Legislative and Executive Branches . . . .'" *Id*. at 816 (quoting Compl.).

At issue was whether the plaintiffs had standing to bring their claims. The Court began its inquiry by focusing on the requirement in standing analysis that the injury be a personal one: "We have consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Id*. at 819 (quoting *Lujan*, 504 U.S. at 560-61 and

14

n.1). Next, the Court noted "[w]e have also stressed that the alleged injury must be legally and judicially cognizable. This requires, among other things, that the plaintiff have suffered 'an invasion of a legally protected interest which is . . . concrete and particularized,' *Lujan*, 504 U.S. at 560, and that the dispute is 'traditionally thought to be capable of resolution through the judicial process.'" *Id.* (quoting *Flast v. Cohen*, 392 U.S. 83, 97 (1968)). Finally, the Court noted that the jurisdictional standing requirement must be strictly complied with: "our standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Id.* at 819-20 (citations omitted). "'[T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers.'" *Id.* at 820 (quoting *Allen,* 468 U.S. at 751). In view of these observations, the Court concluded that it "must carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable." *Id.*

The Court distinguished *Powell v. McCormack*, in which it held that a Congressman's "constitutional challenge to his exclusion from the House of Representatives (and his consequent

15

loss of salary) presented an Article III case or controversy," *id.* at 820-21 (citing *Powell,* 395 U.S. 486, 496, 512-14 (1969)), on two grounds. First, the *Raines* plaintiffs had not been singled out for unfavorable treatment from the other members of their respective bodies as occurred in *Powell*; rather, "[t]heir claim is that the Act causes a type of institutional injury (the diminution of legislative power), which necessarily damages all Members of Congress and both Houses of Congress equally." *Id.* at 821. Second, the *Raines* plaintiffs "[did] not claim that they have been deprived of something to which they are *personally* entitled . . ." *id.*; rather, their

> claim of standing is based on a loss of political power, not loss of any private right, which would make the injury more concrete. . . . [T]he injury claimed by the Members of Congress here is not claimed in any private capacity but solely because they are Members of Congress. If one of the Members were to retire tomorrow, he would no longer have a claim; the claim would be possessed by his successor instead. The claimed injury thus runs (in a sense) with the Member's seat, a seat which the Member holds (it may quite arguably be said) as trustee for his constituents, not as a prerogative of personal power.

*Id.* (internal citation omitted). Thus, according to the Court, the *Raines* plaintiffs' injury was an institutional one and not sufficiently concrete and personal.

The Court then distinguished *Coleman v. Miller*, "[t]he one case in which we have upheld standing for legislators (albeit

16

*state* legislators) claiming an institutional injury." *Id.*
(discussing *Coleman v. Miller*, 307 U.S. 433 (1939)). In *Coleman*,
the vote on whether to ratify a proposed federal constitutional
amendment was tied at twenty to twenty, which meant the
amendment would not have been ratified. *Id.* at 822 (citing
*Coleman*, 307 U.S. at 436). The Lieutenant Governor, as the
presiding officer of the State Senate, cast a vote in favor of
the amendment and it was deemed ratified. *Id.* The twenty state
senators who had voted against the amendment sued, and
eventually the Court held that the members of the legislature
had standing because "if these legislators (who were suing as a
bloc) were correct on the merits, then their votes not to ratify
the amendment were deprived of all validity." *Id.* In *Raines*, the
Court clarified that "our holding in *Coleman* stands . . . for
the proposition that legislators whose votes would have been
sufficient to defeat (or enact) a specific legislative Act have
standing to sue if that legislative action goes into effect (or
does not go into effect), on the ground that their votes have
been completely nullified." *Id.* at 823. Noting that this is what
the *Coleman* holding stands for "at most," the Court declined to
distinguish *Coleman* on, *inter alia*, the ground that "*Coleman* has
no applicability to a similar suit brought by federal
legislators, since the separation-of-powers concerns present in
such a suit were not present in *Coleman* . . . ." *Id.* at 824 n.8.

17

The Court then distinguished the claims in *Raines* from those in *Coleman*:

> [Here], [plaintiffs] have not alleged that they voted for a specific bill, that there were sufficient votes to pass the bill, and that the bill was nonetheless deemed defeated. In the vote on the Act, their votes were given full effect. They simply lost that vote. Nor can they allege that the Act will nullify their votes in the future in the same way that the votes of the *Coleman* legislators had been nullified. In the future, a majority of Senators and Congressmen can pass or reject appropriations bills; the Act has no effect on this process. In addition, a majority of Senators and Congressmen can vote to repeal the Act, or to exempt a given appropriations bill (or a given provision in an appropriations bill) from the Act; again, the Act has no effect on this process.

*Id.* at 824 (footnote omitted). Thus, according to the Court, the *Raines* plaintiffs could not allege that their votes had been nullified in the past; rather, they had lost the vote on the Act. *See id.* And the *Raines* plaintiffs could not allege that their votes would be nullified in the future because they had a variety of legislative remedies at their disposal. *See id.*

The Court then considered the lack of a historical practice of lawsuits being filed "on the basis of claimed injury to official authority or power" as a result of analogous confrontations between the Legislative and Executive Branches of the federal government. *Id.* at 826; *see also infra* Section IV.3.b. The Court concluded that, under the Constitution, it is

not the role of the Article III courts to have "'some amorphous
general supervision of the operations of government . . . .'"
*Raines,* 521 U.S. at 829 (quoting *United States v. Richardson*,
418 U.S. 166, 192 (1974) (Powell, J., concurring)).

The Court rejected the *Raines* plaintiffs' basis for
standing, ultimately holding that "these individual members of
Congress do not have a sufficient 'personal stake' in this
dispute and have not alleged a sufficiently concrete injury to
have established Article III standing." *Id.* at 830 (no citation
for internal quotation in original). In so holding, the Court
noted that "appellees have alleged no injury to themselves as
individuals (*contra*, *Powell*), the institutional injury they
allege is wholly abstract and widely dispersed *(contra*,
*Coleman*), and their attempt to litigate this dispute at this
time and in this form is contrary to historical experience." *Id.*
at 829. The Court stated that it "attach[ed] some importance to
the fact that appellees have not been authorized to represent
their respective Houses of Congress in this action, and indeed
both Houses actively oppose their suit." *Id.* (footnote omitted).
The Court also thought it important to note that "our conclusion
[does not] deprive[] Members of Congress of an adequate remedy
(since they may repeal the Act or exempt appropriations bills
from its reach) nor forecloses the Act from constitutional

19

challenge (by someone who suffers judicially cognizable injury
as a result of the Act)." *Id*.

### b. *Arizona State Legislature v. Arizona Independent Redistricting Commission*

Relying on *Coleman*, the Supreme Court recently reaffirmed
that legislators, albeit state legislators as an institutional
plaintiff, have standing to sue based on a vote nullification
claim. In *Arizona State Legislature v. Arizona Independent
Redistricting Commission,* the state legislature plaintiff
challenged a ballot measure that would have denied it the
authority to draw congressional districts. 135 S. Ct. 2652, 2659
(2015). The legislature's alleged injury was that the ballot
initiative deprived it of its legislative prerogative to
initiate redistricting. *Id.* at 2663. Relying on *Coleman,* as
clarified in *Raines,* the Court held that the plaintiff had
standing because "their votes have been completely nullified."
*Id*. at 2665 (quoting *Raines*, 521 U.S. at 823). As the Court
explained, "[o]ur conclusion that the Arizona Legislature has
standing fits [within *Coleman*]" because the ballot initiative
"together with the Arizona Constitution's ban on efforts to
undermine the purposes of an initiative" would "'completely
nullif[y]' any vote by the Legislature, now or 'in the future,'
purporting to adopt a redistricting plan." *Id.* at 2667 (quoting
*Raines*, 521 U.S. at 823-24). The Court distinguished *Raines* on

20

the grounds that *Raines* had not been brought by an institutional plaintiff: "The Arizona Legislature, in contrast, is an institutional plaintiff asserting an institutional injury, and it commenced this action after authorizing votes in both of its chambers. That 'different . . . circumstanc[e],' was not *sub judice* in *Raines*." *Id.* at 2664 (citation omitted). The Court also noted that the case before it "does not touch or concern the question whether Congress has standing to bring a suit against the President . . . which would raise separation of powers concerns absent here." *Id.* at 2665 n.12.

<p style="text-align:center">*   *   *   *   *</p>

In sum*, Raines* teaches that when a suit is brought by an individual Member of Congress, the member can allege either a personal injury or an institutional injury. If the injury is personal, standing is present when the injury arises out of something to which the member is personally entitled, such as the salary associated with his or her seat. As to an institutional injury, the Court has recognized standing when a legislator's vote has been completely nullified. The Supreme Court has upheld legislator standing based on a vote nullification claim in two instances. In *Coleman*, a bloc of individual state "legislators whose votes would have been

<p style="text-align:center">21</p>

sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Raines*, 521 U.S. at 823 (footnote omitted). In *Arizona State Legislature*, the legislature, as an institutional plaintiff authorizing the lawsuit, had standing to sue based on the alleged nullification of their votes "now" or "in the future" as a result of a ballot initiative. 135 S. Ct. at 2667. Although neither of these cases implicated federal separation-of-powers concerns, the *Raines* Court specifically declined to hold that *Coleman* would be inapplicable "to a similar suit brought by federal legislators." *Raines*, 521 U.S. at 824 n.8.

*Raines* also teaches that it is not necessary for an institutional claim to be brought by or on behalf of the institution. *Id.* at 829 ("We attach some importance to the fact that appellees have not been authorized to represent their respective Houses of Congress in this action, and indeed both Houses actively oppose their suit."). Indeed, in *Coleman*, the claim was not brought on behalf of the state senate as an institutional plaintiff, but rather by a bloc of individual legislators who had voted not to ratify the constitutional amendment. 307 U.S. at 436. Finally, by not overruling *Coleman,* the *Raines* Court suggests that vote nullification is an

institutional injury that is personal, although not in the sense
that the injury in *Powell* was personal, to the legislators
entitled to cast the vote that has been nullified.

Regarding the separation-of-powers concerns implicated by
an inter-branch suit, *Raines* instructs the Court to consider
whether there is a lack of a historical practice of lawsuits
being filed "on the basis of claimed injury to official
authority or power" as a result of analogous confrontations
between the Legislative and Executive Branches of the federal
government. *Raines,* 521 U.S. at 826. *Raines* also instructs the
Court to consider whether there is an adequate legislative
remedy and whether another plaintiff could bring the case. *Id.*

### c. D.C. Circuit Precedent

The Court of Appeals for the District of Columbia Circuit
("D.C. Circuit") has applied *Raines* twice, each time finding
legislator standing to be foreclosed.[6] In *Chenoweth v. Clinton*,
four members of Congress sued the President and another

---

[6] Because the Court has determined that plaintiffs have standing
to bring their claims pursuant to *Raines* and subsequent D.C.
Circuit precedent, it need not address the parties' arguments
regarding pre-*Raines* D.C. Circuit authority. At oral argument,
the Court questioned plaintiffs about their reliance on pre-
*Raines* D.C. Circuit authority, given that *Raines* called into
question portions of that authority. *See Chenoweth*, 181 F.3d
112, 115 (D.C. Cir. 1999). In response, plaintiffs clarified
their reliance on *Raines* and post-*Raines* D.C. Circuit precedent
for the proposition that they have standing based on their vote
nullification claim. Hr'g Tr., ECF No. 54 at 20:22-24.

23

66

Executive Branch official to enjoin the implementation of the American Heritage Rivers Initiative ("AHRI"), a program President Clinton created by Executive Order. 181 F.3d 112, 112 (D.C. Cir. 1999). After President Clinton announced his intention to create the AHRI, three of the four plaintiffs introduced a bill to end the program, but it never came to a vote. *Id.* at 113. Plaintiffs then sued, alleging that the President's creation of the program by Executive Order "deprived [the plaintiffs] of their constitutionally guaranteed responsibility of open debate and vote on issues and legislation involving interstate commerce, federal lands, the expenditure of federal monies, and implementation of the [National Environmental Policy Act]." *Id.* (citing Compl.). Applying *Raines*, the Court held that the plaintiffs lacked standing because the injury they alleged was "a dilution of their authority as legislators," which was "identical to the injury the Court in *Raines* deprecated as 'widely dispersed' and 'abstract.'" *Id.* at 115 (no citation for internal quotation in original). The Court reasoned that "[i]f, as the Court held in *Raines*, a statute that allegedly 'divests [congressmen] of their constitutional role' in the legislative process does not give them standing to sue, then neither does an Executive Order that allegedly deprives congressmen of their 'right[] to participate and vote on legislation in a manner defined by the

24

Constitution.'" *Id.* (citation omitted). A central element of the Court's reasoning was that "[i]t [was] uncontested that the Congress could terminate the AHRI were a sufficient number in each House so inclined." *Id.* at 116.

In view of the Supreme Court's decision in *Raines*, the Court considered whether its earlier ruling in *Kennedy v. Sampson* survived. *Id.* at 116-17 (discussing *Kennedy v. Sampson*, 511 F.2d 430 (D.C. Cir. 1974)). In *Kennedy*, the Court held, partially relying on the pre-*Raines* understanding of *Coleman*, that an individual Senator had standing to challenge a Presidential pocket veto. *Kennedy*, 511 F.2d at 433-35. Noting that *Raines* narrowed the *Coleman* holding, the Court stated that *Kennedy* may nonetheless remain good law:

> Even under this narrow interpretation, one could argue that the plaintiff in *Kennedy* had standing. The pocket veto challenged in that case had made ineffective a bill that both houses of the Congress had approved. Because it was the President's veto—not a lack of legislative support—that prevented the bill from becoming law (either directly or by the Congress voting to override the President's veto), those in the majority could plausibly describe the President's action as a ***complete nullification*** of their votes.

*Chenoweth*, 181 F.3d. at 116-17 (emphasis added). The Court distinguished the claims before it from *Coleman* on the ground that plaintiffs "do not allege that the necessary majorities in Congress voted to block the AHRI. Unlike the plaintiffs in

25

*Kennedy* and *Coleman*, therefore, they cannot claim their votes were effectively nullified by the machinations of the Executive." *Id*. at 117.

In the second post-*Raines* case considered, *Campbell v. Clinton*, thirty-one Members of Congress sued President Clinton, alleging that he violated the War Powers Resolution and the War Powers Clause of the Constitution by directing the participation of U.S. forces in Yugoslavia. 203 F.3d 19, 19 (D.C. Cir. 2010). A month after President Clinton announced that participation, Congress voted on four resolutions related to the conflict: (1) a declaration of war was defeated 427 to 2; (2) an "authorization" of the air strikes was defeated 213 to 213; (3) a resolution that would have required the President to end U.S. participation in the operation was defeated; and (4) funding for involvement in the operation was approved. *Id*. at 20. Plaintiffs claimed that they fit within the "*Coleman* exception to the *Raines* rule" by filing suit after having "defeat[ed] the War Powers Resolution authorization by a tie vote." *Id*. at 22. The Court found neither of their claims to be analogous to the nullification that occurred in *Coleman*, which the Court understood "to mean treating a vote that did not pass as if it had, or vice versa." *Id*. at 22. In *Coleman*, "state officials endorsed a defeated ratification, treating it as approved, while the President here did not claim to be acting

26

pursuant to the defeated declaration of war or a statutory authorization, but instead 'pursuant to [his] constitutional authority to conduct U.S. foreign relations and as Commander-in-Chief and Chief Executive.'" *Id.* at 22 (discussing *Coleman v. Miller*, 307 U.S. 433 (1939) and quoting Letter to Congressional Leaders Reporting on Airstrikes Against Serbian Targets in the Federal Republic of Yugoslavia (Serbia and Montenegro), 35 Weekly Comp. Pres. Doc. 528 (Mar. 26, 1999)). The Court reasoned that plaintiffs' argument based on the War Powers Resolution, "although cast in terms of the nullification of a recent vote, essentially is that the President violated the . . . War Powers Resolution" and their argument based on the War Powers Clause "is that the President has acted illegally-in excess of his authority-because he waged war in a constitutional sense without a congressional delegation." *Id.* Regarding the *Raines* Court's use of the word "nullification," the Court stated:

> We think the key to understanding the Court's treatment of *Coleman* and its use of the word nullification is its implicit recognition that a ratification vote on a constitutional amendment is an unusual situation. It is not at all clear whether once the amendment was "deemed ratified," *see Raines,* 521 U.S. at 822, the Kansas Senate could have done anything to reverse that position. We think that must be what the Supreme Court implied when it said the *Raines* plaintiffs could not allege that the "[Line Item Veto Act] would nullify their votes *in the future,"* and that, after all, a majority of senators and congressmen could always repeal the Line Item

27

> Veto Act. *Id.* at 824 (emphasis added). The
> *Coleman* senators, by contrast, may well have
> been powerless to rescind a ratification of a
> constitutional amendment that they claimed had
> been defeated. In other words, they had no
> legislative remedy.

*Id.* at 22-23 (quoting *Raines*, 521 U.S. at 824) (footnote
omitted). Applying *Raines*, the Court held that the plaintiffs
lacked standing under "the *Coleman* exception" because they had
"ample legislative power to have stopped prosecution of the
'war'" despite having lost the vote on the War Powers Resolution
authorization. *Id.* at 23 (no citation for internal quotation in
original). Therefore, despite the tie vote, the *Campbell*
plaintiffs had legislative remedies at their disposal, unlike
the situation in *Coleman*.

<div align="center">*     *     *     *     *</div>

In sum, D.C. Circuit precedent teaches that individual
Members of Congress do not have standing to sue the Executive
Branch when their institutional injury is such that they can
obtain their remedy in Congress. In *Campbell*, the Court
understood vote nullification "to mean treating a vote that did
not pass as if it had, or vice versa." *Campbell*, 203 F.3d at 22.
In *Chenoweth*, the Court suggested that notwithstanding *Raines*, a
single Member of Congress could have standing to sue based on a

<div align="center">28</div>

vote nullification claim when it was the President's action, rather than "a lack of legislative support," that nullified the Member's vote. *Chenoweth,* 181 F.3d at 117. Such a situation is therefore a third instance of a type of vote nullification for which a legislator could have standing.[7]

### 2. **Plaintiffs Adequately Allege a Judicially Cognizable Injury**

#### a. Injury-in-Fact

To establish that they have an injury-in-fact, plaintiffs must allege that their injury is "personal, particularized, concrete, and otherwise judicially cognizable." *Raines*, 521 U.S. at 820. Regarding the requirement that the injury be "legally and judicially cognizable," "the plaintiff [must allege to] have suffered 'an invasion of a legally protected interest which is .

---

[7] The closest constitutional analogy to plaintiffs' claims here is that in *Kucinich v. Bush.* 236 F. Supp. 2d 1 (D.D.C. 2002). In that case, thirty-two Members of the House of Representatives "challenged President Bush's unilateral withdrawal from the 1972 Anti-Ballistic Missile Treaty . . . without the approval of Congress," contending that President Bush was required to obtain their consent before terminating a treaty. *Id*. at 1. Applying *Raines*, *Chenoweth*, and *Campbell*, the Court held plaintiffs did not have standing because their "claim of a 'grievous institutional injury' where they are 'deprived of their constitutional right . . . to participate in treaty termination' was no different from the institutional injuries alleged in *Chenoweth*, *Campbell,* and *Raines." Id*. at 9. The Court did not discuss whether the plaintiffs' votes had been nullified. In any event, the Court also concluded that the plaintiffs' raised a nonjusticiable political question. *Id*. The President has not argued that the claims here involve nonjusticiable political questions. Therefore, this persuasive authority is inapposite.

. . concrete and particularized' *Lujan*, 504 U.S. at 560, and that the dispute is 'traditionally thought to be capable of resolution through the judicial process.'" *Id.* at 819 (quoting *Flast*, 392 U.S. at 97).

### b. Plaintiffs Adequately Allege an Institutional Injury

In the context of legislator standing, the Supreme Court has recognized at least one type of institutional injury for which legislators may have standing to sue: complete vote nullification. *Coleman*, 307 U.S. at 438; *Raines*, 521 U.S. at 821-23; *Ariz. State Legislature,* 135 S. Ct. at 2667; *Cummings v. Murphy*, No. 17-2308, slip op. at 18 (D.D.C. Aug. 14, 2018) ("[c]omplete vote nullification is clearly a type of institutional injury sufficient to support legislator standing"). Since an institutional injury will "necessarily damage all Members of Congress and both Houses of Congress equally," *Raines,* 521 U.S. at 821, it will not be a personal injury in the sense that the injury in *Powell* was personal. If institutional injuries were incapable of also being personal to individual members of the institution, however, the Court in *Raines* would have overruled *Coleman*. *Id.* at 819 ("We have consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to

30

him."). Instead, the Supreme Court reaffirmed *Coleman* in both *Raines, id*. at 821, and *Arizona State Legislature*, 135 S. Ct. at 2665, necessarily holding that the institutional injury alleged –vote nullification–was sufficiently personal to each of the individual plaintiffs to satisfy the standing requirement under Article III.

The Clause requires the President to ask Congress before accepting a prohibited foreign emolument. Accepting the allegations in the Complaint as true, which the Court must at this juncture, the President is accepting prohibited foreign emoluments without asking *and* without receiving a favorable reply from Congress. The "nature and source of the claim," *Warth,* 422 U.S. at 500, is an unusual[8] constitutional provision which unambiguously prohibits the President from accepting any emolument from "any King, Prince or foreign State" unless Congress chooses to permit an exception. U.S. Const. art. I, § 9, cl. 8; 17 Op. O.L.C. 114, 121 (1993). The specific facts alleged are that the President has accepted, and intends to continue accepting, prohibited foreign emoluments without seeking congressional consent. Am. Compl., ECF No. 14 ¶¶ 4, 37, 39, 40, 77, 78, 79. Furthermore, the President has not provided

---

[8] The only similar provision is the Article II requirement that the President obtain the advice and consent of Congress prior to taking covered executive branch action. U.S. Const. art. II, § 2, cl. 2.

31

any information to Congress about any foreign emoluments he has received. *Id*. ¶¶ 41, 80. The President is depriving plaintiffs of the opportunity to give or withhold their consent, thereby injuring them "in their roles as members of Congress." *Id*. ¶ 5. Specifically, the President has neither sought plaintiffs' consent prior to accepting prohibited foreign emoluments, nor provided any information to Congress about them, thereby preventing plaintiffs from "exercis[ing] their constitutional prerogative to authorize or reject the specific emoluments he is accepting." *Id*. ¶ 41. Plaintiffs adequately allege that the President has completely nullified their votes in the past because he has accepted prohibited foreign emoluments as though Congress had provided its consent. And he will completely nullify their votes in the future for the same reason, as plaintiffs allege that he intends to continue this practice. The President's alleged acceptance of prohibited foreign emoluments as though Congress provided consent is indistinguishable from "treating a vote that did not pass as if it had, or vice versa." *Campbell,* 203 F.3d at 22. And, as soon as the President accepts a prohibited foreign emolument without obtaining congressional consent, his acceptance is irreversible. *Id*. at 22-23. Accordingly, plaintiffs adequately allege that the President has completely nullified their votes.

<div align="center">32</div>

Although plaintiffs do not sue on behalf of Congress, but rather in their individual official capacities as Members of Congress, their ability to bring this suit is not foreclosed by Supreme Court and D.C. Circuit precedent. The *Raines* Court did not hold that it would be necessary for an institutional claim to be brought by or on behalf of the institution. *Raines*, 521 U.S. at 829. Rather, the fact that the case had not been authorized by the institution was a relevant consideration, but not dispositive, in determining that the *Raines* plaintiffs lacked standing. *Id*. Moreover, the claim in *Coleman* was not brought on behalf of the state senate as an institutional plaintiff, but rather by a bloc of individual members who had voted not to ratify the constitutional amendment. *Coleman*, 307 U.S. at 438. The Supreme Court distinguished *Raines* from *Arizona State Legislature* because the latter *was* brought by the legislature as an institution, *Ariz. State Legislature*, 135 S. Ct. at 2664, but in finding the legislature to have standing, the Supreme Court did not hold that an institutional claim may be brought *only* by the institution. *See generally id*. Furthermore, notwithstanding *Raines*, a single Member of Congress could have standing to sue based on a vote nullification claim when it was the President's action, rather than "a lack of legislative support," that nullified the Member's vote. *Chenoweth,* 181 F.3d at 117.

33

### i. The President Misstates the Injury

The President acknowledges that "when a legislative vote is deemed defeated by executive action," the legislator has standing to sue unless there is a legislative remedy. Mot. to Dismiss, ECF No. 15-1 at 17. Although he disputes that plaintiffs' votes have been "defeated by executive action," his argument relies on a misstatement of the alleged injury. The President contends that plaintiffs cannot plausibly allege that he has prevented votes from being taken on the emoluments bills pending before Congress,[9] or that he has prevented Congress from otherwise voting on the emoluments issue. *Id.* at 24, 26. He also emphasizes that Congress may still choose to vote on the pending bills or on bills introduced in the future. *Id.* at 26. However, the votes contemplated by the President are not votes to consent, or not, in response to the President's request for consent prior to his acceptance of a prohibited foreign emolument. Rather, these are votes on the issue of emoluments. Injury to their power to **legislate on the issue of emoluments** is not the injury plaintiffs allege. *See generally* Am. Compl., ECF No. 14. To be clear, plaintiffs' alleged injury is caused by the

---

[9] *See* S. Con. Res. 8, 115th Cong. (2017) (among other things, declaring the President's dealings through his companies with foreign governments to be potential violations of the emoluments clause); H.R.J. Res. 16, 115th Cong. (2017) (denying congressional consent for the President to accept any foreign emolument during his Presidency).

President's alleged refusal to give them the opportunity to exercise their constitutional right to vote on whether to consent prior to his acceptance of prohibited foreign emoluments. It is irrelevant that Congress can express its consent through legislation on the issue of emoluments or that it has done so in the past on limited occasions.[10] In the absence of such legislation, the President deprives plaintiffs of the opportunity to vote every time he accepts an emolument from "any King, Prince, or foreign State" without the consent of Congress. U.S. Const. art. I, § 9, cl. 8.[11]

### ii. The President Reads the Precedent too Narrowly

According to the President, a Court may conclude that plaintiffs have standing for a vote nullification claim only when they can "allege that 'the necessary majorities in the Congress voted' to withhold consent to the President's alleged

---

[10] *See* Foreign Gifts and Decorations Act of 1966, 5 U.S.C. § 7342.

[11] Similarly, the President argues that unlike the situation in *Coleman*, there is nothing that is "unusual" or "irreversible" here because Congress may choose to vote on "the emoluments issue" in the future. Mot. to Dismiss, ECF No. 15-1 at 26; Reply, ECF No. 28 at 14. Again, the President's argument relies on the same misstatement of the alleged injury. Moreover, each time the President accepts prohibited foreign emoluments without the consent of Congress, that acceptance without consent is irreversible. Finally, although not "unusual" in the sense that word was used in *Coleman*, the President's failure to comply with the Clause is highly unusual given that prior Presidents have ensured that their actions were consistent with the Clause. *See supra* Section IV.B.

acceptance of prohibited foreign emoluments." Mot. to Dismiss, ECF No. 15-1 at 25 (quoting *Chenoweth*, 181 F.3d at 117). As an initial matter, again the President has misstated the injury. Moreover, the Court disagrees with this narrow reading of *Coleman*. Although the *Raines* Court narrowed the *Coleman* holding, the Court neither held nor implied that the only type of vote nullification claim for which a legislator would have standing would be "legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act . . . if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Raines,* 521 U.S. at 823. Indeed, following *Raines*, the Supreme Court recognized that the Arizona State Legislature as an institutional plaintiff had standing to bring a vote nullification claim. *See Ariz. State Legislature*, 135 S. Ct. at 2667. The legislature there did not allege that it had the "necessary majorities" to take action; rather the claimed injury was that the ballot initiative deprived the plaintiff of a legislative "prerogative." *Id.* at 2663. The D.C. Circuit has emphasized that the *Coleman* exception is a "narrow rule," *Chenoweth*, 181 F.3d at 116; *see Campbell*, 203 F.3d at 22-23, and has interpreted the *Coleman* exception "to mean treating a vote that did not pass as if it had, or vice versa," *Campbell*, 203 F.3d at 22. As the Court has explained, *supra* Section IV.C.2.b,

36

here the President has allegedly accepted prohibited foreign emoluments as though Congress has provided its consent, which is indistinguishable from "treating a vote that did not pass as if it had, or vice versa."[12] *Id.*

The President insists that upholding standing here would require a "drastic extension of *Coleman*," which the Supreme Court in *Raines* rejected. Mot. to Dismiss, ECF No. 15-1 at 25. The Court disagrees. *Raines* would have required a drastic extension of *Coleman* because the nature of the vote nullification in *Coleman* was different from the "abstract dilution of legislative power" alleged in *Raines*. *Raines*, 521 U.S. at 826. And critically, the *Raines* plaintiffs had adequate legislative remedies at their disposal. *Id.* at 824. Here, by contrast, the President's complete nullification of plaintiffs' votes is entirely different from the "abstract dilution of legislative power" alleged in *Raines. Id.* at 826. And as will be explained in detail, plaintiffs have no adequate legislative remedies. *See infra* Section IV.C.4.

---

[12] For the same reason, the Court rejects the President's argument that plaintiffs' reliance on the vote nullification theory articulated in *Coleman* is misplaced to the extent they claim their injury encompasses being deprived of the option of not voting because none of the precedent recognizes such an injury. Reply, ECF No. 28 at 17.

37

### c. Plaintiffs' Alleged Injury is Personal, Particularized and Concrete

Plaintiffs allege that the President has accepted, and intends to continue accepting, prohibited foreign emoluments without seeking congressional consent, thereby depriving them of the opportunity to vote on whether to consent to his acceptance of emoluments before he accepts them. Am. Compl., ECF No. 14 ¶¶ 3-4. Plaintiffs' injury is to a "legally protected interest" because the Clause prohibits the President from accepting "any" emolument from "any King, Prince, or foreign State" without the consent of Congress. U.S Const. art. I, § 9, cl. 8. Consent is obtained through the aggregate of the specific votes that each individual Member of Congress is entitled to take. *Id.* art. I, § 1; art. I, § 3, cl. 1; art. I, § 5, cl. 3. Although this injury is dispersed among all Members of Congress, as will necessarily be the case when an institutional injury is alleged, this does not render the injury less concrete or particularized. *See Raines,* 521 U.S. at 821 (stating an institutional injury will "necessarily damage all Members of Congress and both Houses of Congress equally"); *Ariz. State Legislature*, 135 S. Ct. at 2664 (Plaintiff "is an institutional plaintiff asserting an institutional injury"). Rather, each time the President allegedly accepts a foreign emolument without seeking congressional consent, plaintiffs suffer a concrete and

38

particularized injury—the deprivation of the right to vote on whether to consent to the President's acceptance of the prohibited foreign emolument—before he accepts it. And although the injury is an institutional one, the injury is personal to legislators entitled to cast the vote that was nullified. *See Raines,* 521 U.S. at 823 (narrowing but not overruling the holding in *Coleman*); *Ariz. State Legislature*, 135 S. Ct. at 2664-65 (holding that the legislature has standing to sue); *supra* Section IV.C.2.b. Accordingly, plaintiffs adequately allege that they "have suffered 'an invasion of a legally protected interest which is . . . [personal,] concrete and particularized.'" *Raines,* 521 U.S. at 819 (quoting *Lujan*, 504 U.S. at 560).

The President argues that the injury alleged here is insufficiently concrete to give the plaintiffs a "personal stake in the dispute" because the injury "damages all Members of Congress and both Houses of Congress equally." Reply, ECF No. 28 at 10 (quoting *Raines*, 521 U.S. at 821, 830). Furthermore, according to the President, the alleged injury cannot support Article III standing because it is felt equally by all Members of Congress "solely because they are Members of Congress," as distinct from the personal injury alleged in *Powell*. Reply, ECF No. 28 at 11 (quoting *Raines,* 521 U.S. at 821). The Court disagrees. The *Raines* Court recognized two types of injuries

39

that could support legislator standing: (1) a personal injury such as that typified in *Powell;* and (2) an institutional injury—vote nullification—such as that in *Coleman*. *Raines*, 521 U.S. at 829-30. An institutional injury will "necessarily damage all Members of Congress and both Houses of Congress equally" and will be felt equally by Members of Congress "solely because they are Members of Congress." *Id.* at 821. And as explained, *supra* at 30-31, by reaffirming *Coleman* in *Raines* and *Arizona State Legislature*, the Supreme Court necessarily held that the institutional injury alleged was sufficiently personal to each of the plaintiffs to satisfy the standing requirement under Article III.

### i. Plaintiffs' Alleged Injury is Distinguishable from the Injuries Alleged in the Precedent

The President argues that plaintiffs' claims are squarely foreclosed by *Raines*. The Court disagrees. As an initial matter, the President reads *Raines* to establish "a foundational principle that the denial of institutional legislative prerogative is not a judicially cognizable injury." Mot. to Dismiss, ECF No. 15-1 at 16. This broad principle, however, is not supported by *Raines*. *Raines* establishes that legislators may have standing based on the nullification of their votes, which is an institutional, as opposed to a personal, injury. *Raines*, 521 U.S. at 821-23. To establish the broad principle asserted by

40

the President, the *Raines* Court would have needed to overrule
*Coleman*. Not only did the *Raines* Court not overrule *Coleman*, but
the Court also relied on *Coleman* to uphold standing in *Arizona
State Legislature*, in which the alleged injury was deprivation
of a legislative prerogative. *Ariz. State Legislature*, 135 S.
Ct. at 2663.

The President argues that the injury alleged here amounts
only to a "dilution of institutional legislative power." Mot. to
Dismiss, ECF No. 15-1 at 22 (quoting *Raines*, 521 U.S. at 820).
Moreover, according to the President, there is little difference
between the claim in *Raines* and the claim here because the
members in *Raines* argued that the challenged Act "deprived them
of 'their constitutional role in the repeal of legislation'"
which "does not differ materially from Plaintiffs' claim that
they have been denied their constitutional role in deciding
whether to consent to the President's acceptance of allegedly
prohibited foreign emoluments," Reply, ECF No. 28 at 10-11
(quoting *Raines*, 521 U.S. at 816). In so arguing, the President
insists that plaintiffs' claimed injury is indistinguishable
from the claimed injury in *Chenoweth*. Mot. to Dismiss, ECF No.
15-1 at 23-24. The Court disagrees. The injury alleged here is
distinguishable from those alleged in *Raines* and *Chenoweth*. In
*Raines*, plaintiffs sued after being on the losing side of the
vote that enacted the Line Item Veto Act, alleging that their

41

injury was the diminution of legislative power caused by the
Act. *Raines*, 521 U.S. at 814. In *Chenoweth*, plaintiffs sued
after their bill seeking to end a program created by the
President by Executive Order failed to be brought to a vote,
alleging that their injury was that Members of Congress had been
deprived of their right to vote on the Presidentially-created
program. *Chenoweth,* 181 F.3d at 112. In each case, plaintiffs
either lost the vote in Congress or did not have the political
influence to bring their bill to a vote, and then sought relief
in the courts. Here, by contrast, plaintiffs' alleged injury is
caused by the President's alleged acceptance of prohibited
foreign emoluments before seeking and obtaining congressional
consent, not by any action taken or not taken by their
congressional colleagues. *See Chenoweth,* 181 F.3d at 117 ("it
was the President's veto—not a lack of legislative support—that
prevented the bill from becoming a law"); *infra* Section
IV.C.3.a. The President's repeated misstatement of the injury
does not change the nature of plaintiffs' alleged injury.
Finally, the President's alleged acceptance of a prohibited
foreign emolument before obtaining congressional consent does
not "dilute" plaintiffs' legislative power because they do not
allege injury to their ability to legislate on the issue of
emoluments.

<center>42</center>

### 3. Separation-of-Powers Considerations

#### a. Plaintiffs Lack Adequate Legislative Remedies

The Court does agree with the President that, "when legislators possess 'political tools with which to remedy their purported injury,' they may not seek the aid of the Judiciary." Mot. to Dismiss, ECF No. 15-1 at 26 (quoting *Campbell*, 203 F.3d at 23-24). But here, plaintiffs lack such tools.

In addition to Congress bringing the bills currently pending to a vote, *see supra* Section IV.C.2.b.i, the President suggests that the following types of legislation would provide plaintiffs with a legislative remedy: (1) voting on whether what plaintiffs allege "constitute[s] violations of the Foreign Emoluments Clause by the President and whether Congress should provide its consent," Mot. to Dismiss, ECF No. 15-1 at 2; (2) "vot[ing] on a private bill[13] consenting to the receipt of what it construed to be emoluments received from foreign governments or a joint resolution expressing its disagreement with such receipt," *id.* at 24; and/or (3) "vot[ing] on a joint

---

[13] A private bill is legislation that addresses a matter of narrow interest, which after being passed in identical form by the House and Senate, is submitted to the President for signature. United States Senate, Bills and Resolutions, Legislation, Laws and Acts, available at https://www.senate.gov/pagelayout/legislative/d_three_sections_with_teasers/bills.htm.

43

resolution[14] that provides what Congress perceives to be the proper definition of an emolument and prohibits any and all emoluments, including ones unknown to Congress," Reply, ECF No. 28 at 18. According to this argument, plaintiffs have ample legislative remedies at their disposal; they just don't have the votes.

The President's purported legislative remedies are clearly inadequate within the meaning of *Raines*. *Raines*, 521 U.S. at 829 (legislative remedy must be an "adequate" remedy). In *Raines*, *Chenoweth*, and *Campbell*, adequate legislative remedies were available to redress the plaintiffs' grievances. In *Raines*, "a majority of Senators and Congressmen c[ould] pass or reject appropriations bills; the Act has no effect on this process. Moreover, a majority of Senators and Congressmen c[ould] vote to repeal the Act, or to exempt a given appropriations bill (or a given provision in an appropriations bill) from the Act; again, the Act has no effect on this process." *Id*. at 824. In *Chenoweth*, "[i]t [was] uncontested that the Congress could

---

14 A joint resolution, with one exception, is legislation that requires the approval of both the House and Senate and is submitted to the President for signature. The exception is when the joint resolution proposes a constitutional amendment. United States Senate, Bills and Resolutions, Legislation, Laws and Acts, available at https://www.senate.gov/pagelayout/legislative/d_three_sections_with_teasers/bills.htm.

terminate the AHRI were a sufficient number in each House so inclined." *Chenoweth*, 181 F.3d at 116. And in *Campbell*, "Congress certainly could have passed a law forbidding the use of U.S. forces in the Yugoslav campaign." *Campbell*, 203 F.3d at 23.[15]

Here, by contrast, legislation on the emoluments issue does not provide an adequate remedy. First, in asking this Court to accept the proposition that legislation on the emoluments issue would be an adequate remedy, the President asks this Court to ignore this constitutional Clause. The Court may not do so. *See Marbury*, 1 Cranch at 174 ("It cannot be presumed that any clause in the constitution is intended to be without effect . . . ."). The Clause is unambiguous: acceptance is prohibited without "Consent." U.S Const. art. I, § 9, cl. 8. The Clause therefore places the burden on the President to convince a majority of Members of Congress to consent. The legislation suggested by the President flips this burden, placing the burden on Members of Congress to convince a majority of their colleagues to enact the suggested legislation. This is not what the Clause requires.

---

[15] The President disputes that the precedent requires "political remedies [to] put the plaintiff members back in the same position as if the Executive had not caused the alleged injury in the first place." Reply, ECF No. 28 at 17. This is beside the point because in each case, there was an adequate legislative remedy, whereas here there is none.

45

Second, the President does not explain why such legislation, assuming he signed it, would prevent him from accepting prohibited foreign emoluments. His failure to explain is especially problematic given that the Constitution itself has not prevented him from allegedly accepting them. Third, the President does not explain how the proposed legislation would be adequate in view of the allegation that the President has not provided any information to Congress about the prohibited foreign emoluments he has received, and that he does not intend to change this practice. Am. Compl., ECF No. 14 ¶¶ 40, 41. Legislating after Congress happens to learn about his acceptance of a prohibited foreign emolument through news reports is clearly an inadequate remedy. Fourth, legislation disagreeing with the President's acceptance of prohibited foreign emoluments does not provide a remedy for him already having allegedly accepted them without seeking and obtaining consent. Finally, legislation would neither prevent the President from accepting future prohibited foreign emoluments, nor force him to return those he has already accepted.

Furthermore, and in contrast to the situation in *Chenoweth* and *Campbell*, Congress' appropriations power cannot be used to obtain a legislative remedy, such as refusing to appropriate funds for an Executive Branch program or for participation in a war, because there are no federal appropriations associated with

46

the President's receipt of prohibited foreign emoluments. This is another aspect of the Clause that makes it unusual. The President suggests that among plaintiffs' legislative remedies is the use of Congress' appropriations power to retaliate against him for his alleged acceptance of prohibited foreign emoluments by "tak[ing] action on matters not directly related to emoluments." Reply, ECF No. 28 at 18. Courts have treated Congress' use of its appropriations power as a legislative remedy in situations in which failing to provide funding could actually resolve the dispute. *See, e.g., Campbell*, 203 F.3d at 23 ("Congress always retains appropriations authority and could have cut off funds for the American role in the conflict."). Here, however, Congress lacks a "broad range of legislative authority it can use to stop" the President from failing to seek consent before accepting prohibited foreign emoluments. *Campbell*, 203 F.3d at 24 (noting that where "Congress has a broad range of legislative authority it can use to stop a President's" action, Congress cannot mount a challenge to that action pursuant to *Raines*).

Finally, the availability of the extreme measure of impeachment, see *Campbell*, 203 F.3d at 23 (noting that "there always remains the possibility of impeachment should a President act in disregard of Congress' authority"), to enforce the President's compliance with the Clause is not an adequate remedy

47

within the meaning of *Raines*. *Cf. Nat'l Treasury Emp. Union v.
Nixon*, 492 F.2d 587, 615 (D.C. Cir. 1974) ("the Constitution
should not be construed so as to paint this nation into a corner
which leaves available only the use of the impeachment process
to enforce the performance of a perfunctory duty by the
President").

### b. Capable of Resolution Through the Judicial Process

*Raines* also instructs the Court to consider whether "the
dispute is 'traditionally thought to be capable of resolution
through the judicial process.'" *Raines*, 521 U.S. at 819 (quoting
*Flast*, 392 U.S. at 97). The President argues that it is not
because "every[16] confrontation between one or both Houses of
Congress and the Executive Branch has been resolved through the
political process rather than through suits brought by
legislators." Reply, ECF No. 28 at 10 (citing *Raines*, 521 U.S.
at 826). Plaintiffs respond that the *Raines* Court discussed the
novelty of litigation between the legislative and executive

---

[16] Again, the President has overstated the proposition. What the
*Raines* Court said was "in *analogous* confrontations between one
or both Houses of Congress and the Executive Branch, no suit was
brought on the basis of claimed injury to official authority or
power." *Raines*, 521 U.S. at 826 (emphasis added). In *Kennedy v.
Sampson*, the D.C. Circuit held that Senator Kennedy had standing
to bring the suit and the Court issued a declaratory judgment
ruling that the President's failure to take action on the bill
at issue did not result in a pocket veto, but instead the bill
became law. 511 F.2d at 442. Such suits are therefore not
nonexistent.

48

branches, noting that it "appear[ed]" to argue against the plaintiffs, but did not elaborate further. Pls.' Opp'n, ECF No. 17 at 20.

The *Raines* Court's examples of analogous confrontations between Congress and the Executive Branch are distinguishable from the situation here. In *Raines,* the Court discussed at length the fact that no President sued to challenge the constitutionality of the Tenure of Office Act. *Raines*, 521 U.S. at 826. That Act, which required the consent of the Senate for the President to remove an official whose appointment to the Executive Branch required Senate confirmation, was passed in 1867 and repealed in 1887. *Id*. The *Raines* Court stated that if federal courts had become involved, "they would have been improperly and unnecessarily plunged into the bitter political battle being waged between the President and Congress" over the Act. *Id*. at 827. Here, there is no "bitter political battle" between the President and Congress over the constitutionality of an Act passed, and ultimately repealed, by Congress that impinged on the President's appointments authority. *Id.*

Two of the other three examples cited by the *Raines* Court involved constitutional challenges to legislation that impermissibly altered the power of the Legislative or Executive Branch, but where the claim was not brought by one branch against the other. *See INS v. Chadha,* 462 U.S. 919, 959

49

(1983)(holding the one House congressional veto provision in Section 244(1)(2) of the Immigration and Nationality Act to be unconstitutional); *Buckley v. Valeo*, 424 U.S. 1, 140 (1976) (holding the provisions of the then-existing Federal Election Campaign Act of 1971 that "vest[ed] in the [Federal Election] Commission primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights, violate[d] Art. II, § 2, cl., 2, of the Constitution."). These cases are distinguishable because here, plaintiffs do not allege that their injury has been caused by a similar type of legislation passed by Congress and signed into law by the President. Furthermore, there is no legislative remedy. In the final example, the Supreme Court held that a bill that was presented to the President less than ten days before a congressional session was adjourned did not become law when the President "neither signed the bill nor returned it to the Senate" in a challenge brought by certain Native American Tribes. *Okanogan, Methow, San Poelis (or San Poil), Nespelem, Colville, and Lake Indian Tribes or Bands of the State of Washington v. United States*, 279 U.S. 655, 673, 691-92 (1929). This case is distinguishable for the same reasons—at issue there was the legal status of a bill that had been passed by both Houses of Congress and presented to the President less than ten days before the adjournment of the congressional session. The

50

decision to do so had been made by Congress and could be remedied by Congress.

Similarly, this is not a situation in which plaintiffs disagree with the manner in which the President is administering or enforcing the law. *See United States v. Windsor*, 570 U.S. 744, 789 (2013) (Scalia, J. dissenting) (Ours is not a "system in which Congress and the Executive can pop immediately into court, in their institutional capacity, whenever the President . . . implements a law in a manner that is not to Congress' liking."). Neither is it the situation in *Raines* where the Court rejected the plaintiffs' ability to sue the President over the exercise of a statutory provision they believed to be unconstitutional. *Raines*, 521 U.S. at 830. Furthermore, although historical practice militates against Members of Congress turning to the Courts to resolve a dispute for which there is a legislative resolution, as explained *supra* Section IV.C.3.a, there is no adequate legislative remedy here.

This case does not raise the concern that the Court, in exercising jurisdiction over plaintiffs' claims, would be engaging in some kind of "amorphous general supervision of the operations of government." *Id.* at 826 (quoting *Richardson*, 418 U.S. at 194 (Powell, J., concurring)). Rather, this dispute raises concrete legal questions that are within the purview of the federal courts to adjudicate: (1) what is an emolument;

51

(2) what does it mean to accept an emolument; and (3) whether
the President has violated the Foreign Emoluments Clause. The
President contends that "Congress is far better equipped than
the courts to assess whether particular arrangements violate the
Foreign Emoluments Clause, and if so, how best to address the
violation." Reply, ECF No. 28 at 18. While Congress clearly has
the power to legislate on the issue of emoluments, "it is 'the
duty of the judicial department'—in a separation-of-powers case
as in any other—'to say what the law is.'" *N.L.R.B. v. Canning*,
134 S. Ct. 2550, 2560 (2014) (quoting *Marbury*, 1 Cranch at 177).
Therefore, it is the role of the Judiciary to "say what the law
is" regarding the meaning of the Foreign Emoluments Clause and
the President's compliance with it. *Cf. United States v. Nixon*,
418 U.S. 683, 705 (1974) ("We therefore reaffirm that it is the
province and duty of this Court 'to say what the law is' with
respect to the claim of privilege asserted in this case.")
(quoting *Marbury,* 1 Cranch at 177). The President does not
dispute the role of the courts in interpreting the Constitution,
but rejects the proposition that judicial review is appropriate
here because "Congress continues to possess effective tools that
would serve as checks on the Executive." Def.'s Suppl. Br. in
Support of his Mot. to Dismiss and in Response to the Brs. of
Amici Curiae ("Def.'s Suppl. Br."), ECF No. 51 at 26-27.
Nevertheless, as explained *supra* Section IV.C.3.a, there are no

52

adequate legislative remedies here.

Furthermore, unlike in *Raines*, the dispute here is neither an "interbranch dispute about calibrating the legislative and executive powers [nor] is it an intrabranch dispute between segments of Congress itself," either of which would counsel against judicial involvement based on separation-of-powers principles. *Raines*, 521 U.S. at 833 (Souter, J., concurring). Rather, this dispute is about the President's alleged refusal to seek consent prior to his alleged acceptance of prohibited foreign emoluments that he receives as a result of his personal financial interests. The President has strenuously attempted to frame the dispute as "an intrabranch dispute between segments of Congress itself," *see Raines*, 521 U.S. at 833 (Souter, J., concurring), but as the Court has thoroughly explained, *supra* Section IV.3.A, this characterization is incorrect.

Accordingly, although this case implicates separation-of-powers concerns, finding standing here "keep[s] the Judiciary's power within its proper constitutional sphere." *Raines*, 521 U.S. at 820. As the Court has explained, plaintiffs' claim of standing is not based on a "loss of political power," *see id*. at 821, as was the case in *Raines*, because the injury alleged is not an injury to their power to legislate on the issue of emoluments. And since plaintiffs have no adequate legislative remedy, they appropriately seek relief in federal court. *See*

*Valley Forge Christian Coll.,* 454 U.S. at 473-74 ("exercis[ing] . . . judicial power has been recognized as a tool of last resort").

### 4. The Ability of Another Plaintiff to Bring this Case

*Raines* instructs the Court to consider whether another plaintiff could bring the case. *Raines*, 521 U.S. at 829 (noting that the Court's holding did not foreclose a constitutional challenge by someone with standing). At oral argument, the Court asked counsel for the President a hypothetical question: Whether, if this case had been brought by Congress as an institutional plaintiff, counsel would agree that it would have standing. Hr'g Tr., ECF No. 54 at 71:2-6. The government refused to concede that it would. *Id.* at 71:7-25, 77:5-20. At the same time, counsel stated, "[j]ust because these plaintiffs don't have standing, it doesn't mean another plaintiff in a proper case might not have standing." *Id.* at 76:2-3. When pressed by the Court about who that plaintiff would be, counsel conceded: "I have a hard time thinking through which plaintiff would be a proper plaintiff to enforce the Emoluments Clause." *Id.* at 76:8-10. That no plaintiff would have standing to challenge the President's alleged violation of the Clause is certainly consistent with the President's argument that "when an official fails to first seek congressional consent before accepting emoluments prohibited by the Foreign Emoluments Clause, it only

means that the official has violated the Clause, not that each Member of Congress automatically acquires a judicially cognizable personal stake to challenge the violation." Def.'s Suppl. Br., ECF No. 51 at 11. The faulty premise underlying the President's argument, however, is that there is a legislative remedy for violating the Clause.  Hr'g Tr., ECF No. 54 at 79:12-80:18.

The Court is aware of one existing[17] challenge to the President's receipt of prohibited foreign emoluments. However, that challenge seeks to remedy entirely different injuries: The District of Columbia alleges injuries to its quasi-sovereign interest and its proprietary interest, and the State of Maryland alleges injuries to its sovereign interests, quasi-sovereign interest and its proprietary interest. *See District of Columbia v. Trump*, 291 F. Supp. 3d 725, 735 (D. Md. 2018).

Accordingly, if these plaintiffs do not have standing to bring their claims to address their alleged injury, it is unlikely that another plaintiff would, rendering the Clause unenforceable against the President except via impeachment. As explained, *supra* at 45, impeachment is an inadequate remedy within the meaning of *Raines*.

---

[17] Another challenge was dismissed for lack of standing. *See Citizens for Responsibility and Ethics in Washington v. Trump*, 276 F. Supp. 3d 174 (S.D.N.Y. 2017), *appeal docketed*, No. 18-474 (2d Cir. 2018).

### 5. Traceability and Redressability

"A plaintiff must allege a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751. The President contends that "[p]laintiffs' alleged injury is not traceable to the President: The President has not prevented Congress from voting on whether he may accept emoluments, and Plaintiffs remain free to convince their congressional colleagues to redress their alleged injury." Reply, ECF No. 28 at 8. The Court disagrees. Again, the President has misstated the alleged injury. Moreover, this matter is before the Court on a motion to dismiss and the Court must take as true the facts that are alleged in the complaint. Plaintiffs' well-pleaded complaint alleges that the President has accepted prohibited foreign emoluments without first seeking the consent of Congress. Am. Compl., ECF No. 14 ¶¶ 4-5. The alleged injury is therefore directly traceable to the President's alleged failure to seek Congressional consent.

Plaintiffs seek declaratory relief in the form of a declaratory judgment stating that the President is violating the Clause when he accepts emoluments from foreign states without first seeking the consent of Congress, and injunctive relief in the form of an order from the Court enjoining the President from accepting "any present, Emolument, Office, or Title, of any kind

56

whatever" from a foreign state without obtaining "the Consent of Congress." *Id.*, ECF No. 14 ¶¶ 84-92. The President contends that the injunctive relief sought by plaintiffs is unconstitutional, Mot. to Dismiss, ECF No. 15-1 at 56-58; Reply, ECF No. 28 at 31-34, but does not contest that injunctive relief, were it available, would redress plaintiffs' injury, *see generally* Mot. to Dismiss, ECF No. 15-1; Reply, ECF No. 28. Whether injunctive relief is available here is a merits determination that the Court need not reach at this juncture, and the Court cannot assume, for the purposes of determining whether plaintiffs have standing, that injunctive relief would be unconstitutional. Because the President's alleged violation of the Clause could be redressed by the declaratory and injunctive relief sought, plaintiffs have satisfied the redressability component of the standing inquiry.

## V.  Conclusion

Accordingly, the Court finds that plaintiffs have standing to sue the President for allegedly violating the Foreign Emoluments Clause. The Court therefore **DENIES IN PART** the motion

57

to dismiss and **DEFERS** ruling on the remaining arguments in the motion to dismiss. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
            **United States District Judge**
            **September 28, 2018**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
Senator RICHARD BLUMENTHAL,         )
*et al.*,                           )
                                    )
            Plaintiffs,             )
                                    )
        v.                          ) Civil Action No. 17-1154 (EGS)
                                    )
DONALD J. TRUMP, in his official    )
capacity as President of the        )
United States,                      )
                                    )
            Defendant.              )
_____)

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, the Court finds that: (1) plaintiffs have stated a claim against the President for allegedly violating the Foreign Emoluments Clause; (2) plaintiffs have a cause of action to seek injunctive relief against the President; and (3) the injunctive relief sought is constitutional. It is hereby

**ORDERED** that the motion to dismiss is **DENIED IN PART** as to the portions of the motion to dismiss that were deferred in the Court's September 28, 2018 Order.

**SO ORDERED.**

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **April 30, 2019**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
Senator RICHARD BLUMENTHAL,         )
*et al.*,                           )
                                    )
            Plaintiffs,             )
                                    )
        v.                          ) Civil Action No. 17-1154 (EGS)
                                    )
DONALD J. TRUMP, in his official    )
capacity as President of the        )
United States,                      )
                                    )
            Defendant.              )
_____)

<u>**MEMORANDUM OPINION**</u>

**I.    Introduction**

In its previous Opinion, the Court held that plaintiffs, approximately 201 Members of the 535 Members of the United States Senate and House of Representatives, had standing to sue defendant Donald J. Trump in his official capacity as President of the United States ("the President") for alleged violations of the Foreign Emoluments Clause ("the Clause"). *See Blumenthal v. Trump*, 335 F. Supp. 3d 45, 72 (D.D.C. 2018) ("*Blumenthal I*"). The President has moved to dismiss the Amended Complaint for failure to state a claim because, *inter alia*, he contends that "Emolument" should be narrowly construed to mean "profit arising from an official's services rendered pursuant to an office or employ." Def.'s Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 15-

1 at 38.[1] The President's definition, however, disregards the
ordinary meaning of the term as set forth in the vast majority
of Founding-era dictionaries; is inconsistent with the text,
structure, historical interpretation, adoption, and purpose of
the Clause; and is contrary to Executive Branch practice over
the course of many years.

Pursuant to the Clause, certain federal officials,
including the President, shall not "accept" an "Emolument" from
"any King, Prince, or foreign State" without "the Consent of the
Congress." U.S Const. art. I, § 9, cl. 8. In Count I, plaintiffs
seek declaratory relief pursuant to 28 U.S.C. § 2201 in the form
of a declaratory judgment stating that the President is
violating the Clause when he accepts Emoluments from foreign
states without first seeking the consent of Congress. Am.
Compl., ECF No. 14 ¶¶ 85-86. In Count II, plaintiffs seek
injunctive relief pursuant to the Court's inherent authority to
grant equitable relief and pursuant to 28 U.S.C. § 1331 in the
form of a Court order enjoining the President from accepting
"any present, Emolument, Office, or Title, of any kind whatever"
from a foreign state without obtaining "the Consent of the
Congress." *Id.* ¶ 92.

---

[1] When citing electronic filings throughout this Memorandum
Opinion, the Court cites to the ECF header page number, not the
original page number of the filed document.

2

In holding that plaintiffs had standing to sue the
President in *Blumenthal I*, the Court deferred ruling on the
remaining arguments in the President's motion to dismiss:
(1) failure to state a claim upon which relief can be granted;
(2) lack of a cause of action to seek the relief requested; and
(3) the injunctive relief sought is unconstitutional. Mot. to
Dismiss, ECF No. 15-1 at 17-18.

Upon careful consideration of the President's motion to
dismiss, the opposition and reply thereto, the relevant
arguments of *amici*,[2] and for the reasons explained below, the
Court finds that: (1) plaintiffs have stated a claim against the
President for allegedly violating the Foreign Emoluments Clause;
(2) plaintiffs have a cause of action to seek injunctive relief
against the President; and (3) the injunctive relief sought is
constitutional. The Court therefore **DENIES** the portions of the
motion to dismiss that were deferred in the Court's prior Order.

## II.  Factual Background

Plaintiffs allege that the President "has a financial
interest in vast business holdings around the world that engage
in dealings with foreign governments and receive benefits from
those governments." Am. Compl., ECF No. 14 ¶ 2. In particular,
the President owns "more than 500 separate entities–hotels, golf

---

[2] The Court appreciates the illuminating analysis provided by the
*amici*.

courses, media properties, books, management companies,
residential and commercial buildings, . . . airplanes and a
profusion of shell companies set up to capitalize on licensing
deals." *Id*. ¶ 34 (internal quotation mark omitted). Since being
elected President, he has "not divested or otherwise given up
his ownership interest in his worldwide business holdings." *Id*.
¶ 36.

   As a result of his financial interests, plaintiffs allege
the President has accepted, and will accept in the future,
Emoluments from foreign states. *Id*. ¶ 37. Indeed, the President
has acknowledged "that his businesses receive funds and make a
profit from payments by foreign governments, and that they will
continue to do so while he is President." *Id*. Public reporting
has also confirmed this to be the case. *Id*.

   Plaintiffs allege that "[t]hese various benefits from
foreign governments—payments, loans, permits, exemptions, policy
changes, and intellectual property rights—constitute prohibited
'Emolument[s]' and/or 'present[s]' under the Foreign Emoluments
Clause . . . ." *Id.* ¶ 38 (citation omitted). Specifically, the
President has allegedly accepted valuable intellectual property
rights from the Chinese government without seeking and obtaining
the consent of Congress. *Id*. ¶¶ 44-50. The President has also
allegedly accepted payments for hotel rooms and events from
foreign diplomats and from foreign lobbying groups paid for by

<center>4</center>

foreign governments without seeking and obtaining the consent of Congress. *Id.* ¶¶ 52-57. The President has allegedly accepted payments from foreign governments derived from real estate holdings, *id.* ¶¶ 58-62, as well as licensing fees paid by foreign governments for "The Apprentice," *id.* ¶¶ 63-65, all without seeking and obtaining the consent of Congress, *id.* ¶¶ 59, 62, 65. Finally, the President has allegedly accepted regulatory benefits from foreign governments without seeking and obtaining the consent of Congress. *Id.* ¶¶ 66-67.

## III. Standard of Review

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While detailed factual allegations are not necessary, a plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Id.*

When ruling on a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and

matters about which the Court may take judicial notice."
*Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).
The Court must construe the complaint liberally in plaintiffs'
favor and grant plaintiff the benefit of all reasonable
inferences deriving from the complaint. *Kowal v. MCI Commc'ns
Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Court need not
accept inferences that are "unsupported by the facts set out in
the complaint." *Id.* "Nor must the [C]ourt accept legal
conclusions cast in the form of factual allegations." *Id.*
"[O]nly a complaint that states a plausible claim for relief
survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662,
679 (2009).

## IV.  Analysis

### A.    Constitutional Interpretation

"When interpreting a constitutional provision, [the Court]
must look to the natural meaning of the text as it would have
been understood at the time of the ratification of the
Constitution." *Canning v. N.L.R.B.*, 705 F.3d 490, 500 (D.C. Cir.
2013) (citing *District of Columbia v. Heller*, 554 U.S. 570
(2008)). "In interpreting the text [the Court is] guided by the
principle that '[t]he Constitution was written to be understood
by the voters; its words and phrases were used in their normal
and ordinary as distinguished from technical meaning.'" *Heller*,
554 U.S. at 576 (quoting *United States v. Sprague*, 282 U.S. 716,

6

731 (1931)). "Normal meaning may of course include an idiomatic meaning, but it excludes secret or technical meanings that would not have been known to ordinary citizens in the founding generation." *Id.* at 576-77. In determining the normal and ordinary meaning, the Court is to consider founding-era dictionaries and other contemporaneous sources. *See*, *e.g.*, *N.L.R.B. v. Canning*, 573 U.S. 513, 527 (2014); *Heller*, 554 U.S. at 581-86. When the text is ambiguous, the Court is to consider the purpose of the clause and the historical interpretations and applications of the clause. *Canning*, 573 U.S. at 528-29; *see also Heller*, 554 U.S. at 592 ("This meaning is strongly confirmed by the historical background of the [provision]."). The Court is also to "treat[] [government] practice as an important interpretive factor even when the nature or longevity of that practice is subject to dispute, and even when that practice began after the founding era." *Canning*, 573 U.S. at 525, 530-32 (considering opinions of the Office of Legal Counsel ("OLC") and the Comptroller General in determining the meaning of the Recess Appointments Clause).

7

**B.   "Emolument" Is Broadly Defined as Any Profit, Gain, or Advantage[3]**

The Foreign Emoluments Clause provides:

> No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State.

U.S. Const. art. I, § 9, cl. 8.

> **1. The Ordinary Meaning, Text, Structure, Adoption, and Historical Interpretation of the Clause; Constitutional Purpose; and Consistent Executive Branch Practice Support a Broad Interpretation of "Emolument"**

> **a. Ordinary Meaning of "Emolument"**

The parties dispute whether the profits that the President's business interests earn from foreign governments are "Emoluments" covered by the Clause. The President contends that the Clause "is not a blanket prohibition on commercial transactions with foreign governments by businesses in which the

---

[3] The parties do not dispute that the Clause applies to the President. *See generally* Mot. to Dismiss, ECF No. 15-1; Pls.' Opp'n, ECF No. 17; Def.'s Reply ("Reply"), ECF No. 28. The Court therefore declines to reach the question despite the argument to the contrary of one a*micus* brief and based on Judge Peter J. Messitte's persuasive analysis of that argument and conclusion that the Clause does indeed apply to the President in the only other judicial opinion construing the Clause. *See District of Columbia v. Trump*, 315 F. Supp. 3d 875, 882-87 (D. Md. 2018) ("*Trump*"); *see also* Br. for Scholar Seth Barrett Tillman and Judicial Education Project as Amici Curiae in Supp. of the Def., ECF No. 16-1.

official has a financial interest," but rather "applies only to
the receipt of compensation for services rendered by an official
in an official capacity or in an employment (or equivalent)
relationship with a foreign government, and to the receipt of
honor and gifts by an office-holder from a foreign government."
Mot. to Dismiss, ECF No. 15-1 at 33-34. In support of his
position, the President explains that at the time of the
Nation's founding, an "'[E]molument' was a common characteristic
of a federal office . . . comprehensively describ[ing] 'every
species of compensation or pecuniary profit derived from a
*discharge of the duties of the office*.'" *Id.* at 34 (alteration
in original) (first citing *United States v. Hartwell*, 73 U.S.
385, 393 (1867); and then quoting *Hoyt v. United States*, 51 U.S.
109, 135 (1850).[4] According to the President, this was because
most federal officials did not receive salaries as is the case
today, but rather, were compensated by fees in exchange for
their services. *Id.* Therefore, he argues, this "common usage" of
the word at the time of the founding compels interpreting the
term to mean "profit arising from an office or employ." *Id.* at

---

[4] The President's added emphasis on the phrase and reliance on
this case are misleading given that the Court was not construing
the meaning of the term "Emolument" generally, but rather a
statutory provision concerning "the annual [E]moluments of any
[customs] collector." *Hoyt*, 51 U.S. at 135. Accordingly, the
Emolument would necessarily derive from the discharge of the
duties of the office.

35 (quoting James Barclay, *A Complete & Universal English Dictionary on a New Plan* (1774)("Barclay's Dictionary")).[5] To illustrate, the President provides two examples of what would constitute Emoluments under his definition: (1) "a federal official would receive an Emolument if he or she was paid by a foreign government to take certain official actions"; and (2) "an Emolument would [] be received if an official became an employee or entered an employment-like relationship with the foreign government, such as if a federal government lawyer provided legal advice and services to a paying foreign power." *Id*. According to the President, "[t]his interpretation is consistent with the nature of the other prohibited categories in the Foreign Emoluments Clause: present, office, and title, which are all things personally conferred or bestowed on a U.S. official holding an 'Office of Profit or Trust.'" *Id*.

Plaintiffs rely on contemporaneous dictionaries, general-purpose writings, contemporaneous state constitutions, and legal decisions to support their argument that at the time the Constitution was written, "'[E]molument' was a commonly used

---

[5] Plaintiffs point out that Barclay's dictionary defines "employ" not as "employment" but as "a person's trade, business" and "a public office" and therefore this source supports defining an Emolument to include "profit arising from . . . a person's trade, business." Pls.' Opp'n, ECF No. 17 at 42. Plaintiffs contend that this definition does not therefore support the President's position. *Id*. at 42-43.

10

term that often referred to profit or gain in general." Pls.'
Opp'n, ECF No. 17 at 39 (citing *The Oxford English Dictionary*
(2d ed. 1989) (referring to eighteenth century texts); Samuel
Johnson, *A Dictionary of the English Language* (1755); John
Mikhail, *The Definition of "Emolument" in English Language &
Legal Dictionaries*, 15-23-1806, at 8 (July 9, 2017) (working
paper),

https://papers.ssrn.com/so13/papers.cfm?abstract_id=2995693

(explaining that [E]molument was defined as "'profit,'
'advantage,' 'gain,' or 'benefit' . . . in every known English
language dictionary" published in the seventeenth and eighteenth
centuries, that this was the exclusive definition provided in
over 92% of these dictionaries, and that the President's
preferred definition appears in less than 8% of these
dictionaries, but that the broader definition also appears in
these latter dictionaries)). Plaintiffs also emphasize, again
relying on contemporaneous documents, that the term "was
frequently used to mean the profits accruing from private
financial transactions." *Id*. at 40.

Plaintiffs maintain that interpreting the term to
"requir[e] an employment-like relationship[] is based on a
flawed reading of Founding-era dictionaries . . . [and]
requiring the provision of specific services in an official
capacity" lacks legal support. *Id*. at 41. Moreover, they argue

11

that even if the Court were to adopt the narrow definition that
appears in the Oxford English Dictionary—"[p]rofit or gain
arising from station, office, or employment; dues, reward;
remuneration, salary"—"the gain arising from President Trump's
status as the head of a worldwide business empire" falls within
this definition. *Id.* Furthermore, according to plaintiffs,
"[t]he narrower definition the President cites also embraces
profit or gain 'arising from [his] office,' as when foreign
governments seek his favor by granting him lucrative trademarks
or selecting his hotels" because these "benefits 'arise from'
the office he holds, because (the Plaintiffs allege) they are
being given to him because he is the President." *Id.* (citing Am.
Compl., ECF No. 14 ¶¶ 48, 54).

The President contends that the number of sources citing
the two competing definitions is not relevant because the
meaning of the term in the Clause depends on the constitutional
context, the history of the Clause, and founding-era practices.
Reply, ECF No. 28 at 22. The President also asserts that
plaintiffs' reliance on Professor Mikhail's article is misplaced
because another law review article has criticized it for making
inaccurate assumptions. *Id.* at 22-23. The President argues that
Professor Mikhail's article and the sources it references
actually support his position because they "demonstrate that the
President's definition is closely related to the etymology of

12

[E]molument, which is profit derived from labor, or more
specifically, from grinding corn." *Id.* at 23. The President also
notes that the Oxford English Dictionary lists his definition of
"emolument" first, and before plaintiffs' broader definition,
indicating that the President's definition predates that of the
plaintiffs. *Id.* at 24.

   *Amici* Legal Historians soundly reject the President's
"narrow definition of 'Emolument' [as] inaccurate,
unrepresentative, and misleading":

> Little or no evidence indicates that the two
> obscure sources—Barclay (1774) and Trusler
> (1766)—on which [the President] relies for
> [his] "office- and employment-specific"
> definition of "[E]molument" were owned,
> possessed, or used by the founders, let alone
> had any impact on them, or on those who debated
> and ratified the Constitution. For example,
> neither of these sources is mentioned in the
> more than 178,000 searchable documents in the
> *Founders Online* database, which makes publicly
> available the papers of the six most prominent
> founders. Nor do these volumes appear in other
> pertinent databases, such as *Journals of the
> Continental Congress*, *Letters of Delegates to
> Congress*, *Farrand's Records*, *Elliot's
> Debates*, or the *Documentary History of the
> Ratification of the Constitution*. By contrast,
> all of the dictionaries that the founding
> generation did possess and use regularly
> define "[E]molument" in the broad manner
> favoring the plaintiffs: "profit,"
> "advantage," or "benefit."
>
> Second, a careful review of English language
> dictionaries from 1604 to 1806 shows that
> *every* definition of "[E]molument" published
> during this period relies on one or more of
> the elements of the broad definition [the

<center>13</center>

> President] rejects in [his] brief: "profit,"
> "advantage," "gain," or "benefit." . . .
> Finally, Trusler's volume is not a standard
> dictionary, but rather a thesaurus, which
> presumes that "gain," "profit," and
> "[E]molument" are synonyms; moreover, its
> explanation of "[E]molument" was copied
> directly from a French thesaurus, hence it is
> not even reliably grounded in English usage.
> The impression [the President] creates in
> [his] brief by contrasting four historical
> definitions of "[E]molument"—two broad and two
> narrow—is, therefore, highly misleading.

Br. of Amici Curiae by Certain Legal Historians on Behalf of

Pls. ("Br. of Legal Historians"), ECF No. 46 at 12-13 (footnotes

omitted).

The President does not dispute that the broader definition

existed at the time the Constitution was ratified, Mot. to

Dismiss, ECF No. 15-1 at 37, and plaintiffs acknowledge that a

narrower definition existed at the time, Pls.' Opp'n, ECF No. 17

at 41. Plaintiffs' main contention is that because the evidence

demonstrates that the broader definition was more pervasive, it

was what was intended in the Clause. The President responds that

the narrower definition is the "better one" to use given the

context and history of the Clause.

The Court is persuaded that the weight of the evidence in

"founding-era dictionaries and other contemporaneous sources"

supports the broad meaning of the term advocated by plaintiffs

and supported by the Legal Historians. *Trump*, 315 F. Supp. 3d at

882 (citing *Canning*, 573 U.S. at 527). The fact that there is

14

evidence from founding-era sources that both the broad
definition advocated by plaintiffs, as well as a narrower
definition associating "Emolument" with employment, existed at
the ratification of the Constitution, however, suggests some
ambiguity in the term. Accordingly, the Court considers the
surrounding text, structure, adoption, historical
interpretation, and purpose of the Clause, as well as Executive
Branch practice to determine the meaning of "Emolument." *See
Canning*, 573 U.S. at 528-29 (when the constitutional text is
ambiguous, the court is to consider the purpose of the clause
and the historical interpretations and applications of the
clause).

### b. Text and Structure of the Clause, and Other Uses in the Constitution

The President acknowledges that the broader definition of
"Emolument" advocated by plaintiffs "resembles a broader
definition that also existed at the time of the founding" but
points to the legal interpretive principle that a word with
different meanings should be interpreted by reference to the
context. Mot. to Dismiss, ECF No. 15-1 at 37-38. Accordingly,
"when read harmoniously with the rest of the Clause, [Emolument]
has the natural meaning of the narrower definition of profit
arising from an official's services rendered pursuant to an
office or employ." *Id*. at 38. The President also asserts that

15

plaintiffs' broad definition of "Emolument" would subsume the term "present" in the Clause and render it redundant, noting that plaintiffs use the terms "Emolument" and "present" interchangeably. *Id.* at 38-39 (citing *Holmes v. Jennison*, 39 U.S. 540, 570-71 (1840) ("In expounding the Constitution of the United States, every word must have its due force, and appropriate meaning; for it is evident from the whole instrument, that no word was unnecessarily used, or needlessly added.")).

The President contends that the other two instances in which "Emolument" is used in the Constitution provide further support for his narrow definition because "[e]ach is associated with an office and refers to compensation for services rendered in the capacity as the holder of that office." *Id.* at 36 (citing U.S. Const. art. II, § 1, cl. 7 ("The President, shall, at stated Times, receive for his services, a Compensation . . . and he shall not receive within that Period any other Emolument from the United States, or any of them."); U.S. Const. art. I, § 6, cl. 2 ("No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been increased during such time. . . .")).

Plaintiffs argue that even if the President's narrow definition of "Emolument" existed, the Clause does not use the word in such a narrow sense, because to do so would render the phrase "of any kind whatever" surplusage. Pls.' Opp'n, ECF No. 17 at 43. Plaintiffs assert that the purpose of this phrase "is to rule out interpretations [of 'Emoluments'] that would allow some 'kinds' of emolument to be accepted." *Id*. at 44. Plaintiffs point to the Incompatibility Clause to support their argument that the reach of the Clause is broad. *Id*. The Incompatibility Clause provides that no member of Congress "shall, during the Time for which he was elected, be appointed to any civil Office . . . the Emoluments whereof shall have been encreased during such time." U.S. Const. art. I, § 6, cl.2. Plaintiffs point out that this Clause applies only to Emoluments bestowed by the federal government upon civil office holders, whereas the Foreign Emoluments Clause contains no such prohibition. Pls.' Opp'n, ECF No. 17 at 44. Plaintiffs also argue that the reason the Clause permits exceptions—with the consent of Congress—is precisely because its reach is so broad. *Id.*

In response to plaintiffs' argument that the phrase "of any kind whatever" compels their preferred definition, the President argues that this phrase "emphasizes the Clause's reach—every kind of [E]molument, present, office, or title—and is not a basis to choose which definition" was intended in the Clause.

17

Reply, ECF No. 28 at 25. In response to plaintiffs' argument that the President's definition renders "of any kind whatever" to be surplusage because of the word "any," the President posits that there is no redundancy in his interpretation because "[t]he more plausible role of this first use of the word 'any' in the Clause is numeric—that *no* prohibited Emoluments may be received by a covered official without the consent of Congress, whereas the phrase 'of any kind whatever' operates to ensure that every *type* of the identified compensation is also prohibited." *Id*. at 26.

Finally, the President disputes that use of the term "Emoluments" in the Incompatibility Clause bolsters plaintiffs' interpretation of the term because "the fact that a reference to an office is not included in the Foreign Emoluments Clause is simply due to the fact that the Foreign Emoluments Clause has a broader reach—it regulates not only compensation or benefits arising from holding federal office but also any employment-like relationship between a foreign government and a covered official." *Id.* The President notes that the term "Emolument" is used only one other time in the Constitution—in the Domestic Emoluments Clause which provides that "[t]he President shall, at stated Times, receive for his Services, a Compensation . . . and he shall not receive within that Period any other Emolument from the United States, or any of them." *Id*. at 27 (quoting U.S.

18

Const. art. II, § 1, cl.7). The President concludes that it
would not make sense for the term to have different meanings in
the Constitution and that "all three clauses in which the term
appears are tied to holding office and regulat[ing] the conduct
of office-holders." *Id*.

The Court is persuaded that the text and structure of the
Clause, together with the other uses of the term in the
Constitution, support plaintiffs' definition of "Emolument"
rather than that of the President. The Clause bans, without
congressional approval, "*any* present, Emolument, Office, or
Title, *of any kind whatever*, from any King, Prince, or foreign
State." U.S Const. art. I, § 9, cl. 8 (emphasis added). The
President's argument that the phrase "of any kind whatever"
should be understood to modify "Emoluments" defined narrowly
rather than being "a basis to choose which definition" was meant
in the Clause, Reply, ECF No. 28 at 25, is unpersuasive and
inconsistent with his own argument. The President himself argues
that a word with different meanings should be interpreted by
reference to the context. Mot. to Dismiss, ECF No. 15-1 at 38.
"[T]he meaning of a term may be enlarged or restrained by
reference to the object of the whole clause in which it is
used." *Virginia v. Tennessee*, 148 U.S. 503, 519 (1893). Here, it
is uncontested that the broad meaning and a narrower meaning
tied to employment existed at the time the Constitution was

ratified, and this expansive modifier, which as plaintiffs point out is used nowhere else in the Constitution, logically serves to ensure that the acceptance of any foreign Emolument, however defined, is prohibited without congressional consent. *See also Trump*, 315 F. Supp. 3d at 888 ("If there were any doubt as to the limits of the Foreign Clause, the Framers used the word 'any' twice, ensuring a broad and expansive reach.").

The President's argument that the use of "Emolument" in the Incompatibility Clause and the Domestic Emoluments Clause supports his narrow definition is similarly unconvincing. In the former, "Emolument" specifically refers to an office, indicating that when the Founders intended for an Emolument to refer to an official's salary or payment associated with their office, they said so explicitly. *See* U.S. Const. art. I, § 6, cl. 2. In the latter, the Emoluments that are prohibited are those that would be received "from the United States or any of them." U.S. Const. art. II, § 1, cl. 7. Thus, rather than "Emolument" having different meanings the three times it is used in the Constitution, more logically, the broader meaning is modified in each Clause according to the purpose of the Clause. *See Virginia*, 148 U.S. at 519; *see also Trump*, 315 F. Supp. 3d at 888 ("If '[E]molument' were always to be read as a synonym for salary or payment for official services rendered, th[e] modifier in the Incompatibility Clause would have been unnecessary.").

20

Also unconvincing is the President's argument that adopting plaintiffs' definition of "Emolument" to mean "profit," "gain," or "advantage" would render the term "present" redundant. The President points out that a "present" was defined as it is today: "[s]omething bestowed upon another without price or exchange; the act of giving." Mot. to Dismiss, ECF No. 15-1 at 39 (quoting Barclay's Dictionary). As Judge Messitte observed, defining an "Emolument" as a "profit," "gain," or "advantage" "ensure[s] that the Clause covered all types of financial transactions—solicited or unsolicited, reciprocated or unreciprocated, official or private"—even if "Emolument" is sometimes used synonymously with "present." *Trump*, 315 F. Supp. 3d at 889.

Furthermore, Judge Messitte points out that the President's narrow definition "would seem to create its own concerning redundancies within the Constitution." *Id*. As the President explained, a practical example of his definition would be when "a federal official would receive an [E]molument if he or she was paid by a foreign government to take certain official actions." Mot. to Dismiss, ECF No. 15-1 at 35. Judge Messitte persuasively states that this example

> is tantamount to defining the transaction as nothing less than one of federal bribery, a crime which prohibits a federal public official from, directly or indirectly, receiving or accepting "anything of value" in

21

> return for "being influenced in the
> performance of any official act." 18 U.S.C. §
> 201(b)(2). Given that Article II, Section 4 of
> the Constitution already addresses the crime
> of bribery, making it an impeachable offense,
> there would have been little need to include
> two additional and distinct Emoluments Clauses
> prohibiting the acceptance of money from
> foreign or state governments for official
> services rendered. Moreover, it seems highly
> unlikely that the Framers would have intended
> bribery to be both an impeachable offense and,
> at the same time, an activity Congress could
> consent to when a foreign government donor is
> involved. The President makes no attempt to
> come to terms with this anomaly.

*Trump*, 315 F. Supp. 3d at 889 (footnote omitted). Finally, there

is no question that the receipt of Emoluments is tied to the

office of President and regulating his conduct as President, but

that does not compel defining "Emolument" as narrowly as the

President advocates.

### c. Adoption and Historical Interpretation of the Clause

The President argues that "[t]he adoption and historical

interpretation of the . . . Clause are consistent with the

office- and employment-specific construction of the term

'Emolument.'" Mot. to Dismiss, ECF No. 15-1 at 40. In support,

the President observes that "the history of the Clause's

adoption [is] devoid of any concern about an official's private

commercial businesses." *Id*. at 42. Plaintiffs describe this as

a "dog that didn't bark" argument, stating that even if this is

true, "it [] tells us nothing. Discussion of the Clause was not

22

extensive because the Clause was not controversial." Pls.'
Opp'n, ECF No. 17 at 44. Furthermore, according to plaintiffs,
"the agrarian economy of the eighteenth century, the
comparatively limited role of government, and the primitive
travel technology available would have made private commerce
with foreign states an unlikely conduit for foreign influence
at the time." *Id.* at 44-45.

Citing examples of early Presidents exporting agricultural
products to foreign countries, the President argues that
historical evidence supports his position that the Clause was
not intended "to reach commercial transactions that a President
(or other federal official) may engage in as an ordinary
citizen through his business enterprises." Mot. to Dismiss, ECF
No. 15-1 at 43-44. Plaintiffs point out that none of the
examples are of commercial transactions with a foreign
government, thus the President can "claim only that they *might*
have conducted such business." Pls.' Opp'n, ECF No. 17 at 45.
The President responds that while the records are limited and
inconclusive, because "there is no question that private
business pursuits by federal officials, including by early
Presidents, were common at the time of the Nation's founding[,]
[i]t is reasonable to infer that at least some of their
transactions may have been with foreign or domestic government
actors, including foreign state-chartered trading companies."

23

Reply, ECF No. 28 at 29. The President relies heavily on one historical incident—President George Washington's purchase of land from the federal government in the then-Territory of Columbia—to argue that if plaintiffs' definition of "Emoluments" applies, President Washington would have violated the Domestic Emoluments Clause, pointing out that the precedents President Washington set are considered authoritative. Mot. to Dismiss, ECF No. 15-1 at 45-46.

Finally, the President argues that a proposed constitutional amendment that would have applied the prohibitions in the Clause to all private citizens undermines the broad definition, asserting that it is "implausible that this amendment was intended or understood as providing for the revocation of the citizenship of anyone engaging in commerce with foreign governments or their instrumentalities . . . [and] . . . inconceivable that Congress and nearly three-fourths of the States intended to strip the citizenship of, for example, those hotel owners whose customers included visiting foreign diplomats using government funds." *Id*. at 47. *Amici* Legal Historians point out, however, that "[i]n 1810, Americans *conceived* precisely of this problem" given the historical context. Br. of Legal Historians, ECF No. 32 at 33. Plaintiffs also point out that the President's argument is self-defeating because, for example, "a household servant temporarily hired by

24

a visiting foreign diplomat . . . would be 'in an employment-like relationship' with the diplomat." Pls.' Opp'n, ECF No. 17 at 45 (citing Mot. to Dismiss, ECF No. 15-1 at 22). The Court is persuaded that the adoption of the Clause and its historical interpretation support plaintiffs' definition rather than that of the President. It is well-established that there was little discussion of the Clause by the Framers because it was noncontroversial. *See* Br. of Legal Historians, ECF No. 46 at 24. Furthermore, the Court declines to make the inference advocated by the President—that it is reasonable to infer that some of the early Presidents' private business pursuits would have been with foreign state-chartered trading companies— because the President has provided no evidence to justify making such an inference. *See generally* Mot. to Dismiss, ECF No. 15-1; Reply, ECF No. 28. On a motion to dismiss, it is the plaintiff, not the defendant, who receives the benefit of all reasonable inferences deriving from the complaint. *See Kowal*, 16 F.3d at 1276. Similarly, the Court declines to infer that the President's narrow definition should be adopted based on President Washington's purchase of public land, potentially in violation of the Domestic Emoluments Clause, given this was a single incident as compared with the great weight of the historical interpretation of the Clause. *See also Trump*, 315 F. Supp. 3d at 903-904 (noting that the facts regarding this

25

transaction are "seriously incomplete"). Finally, the Court is not persuaded that the President's reliance on a proposed constitutional amendment that never became law, and for which he is unable to cite any floor debates that would illuminate the intent of the amendment, should be accorded any weight in determining the meaning of "Emolument."

### d. Purpose of the Clause

The President pays little attention to interpreting the meaning of "Emolument" by reference to the purpose of the Clause, briefly acknowledging that "[a]lthough the Clause was intended to combat corruption and foreign influence, the text, original understanding, and historical practice provide no support for Plaintiffs' inferential leap from the Clause's purpose to a blanket prohibition on receiving 'any monetary or nonmonetary benefit' regardless of context." Mot. to Dismiss, ECF No. 15-1 at 53. The President also notes that the Framers "gave no indication that they intended to require officeholders to divest their private commercial businesses in order to assume federal office." *Id*. The President argues that plaintiffs' definition would result in "absurd consequences" because, among other things, royalties from foreign book sales, United States Treasury bonds, and stock holdings could be considered prohibited foreign Emoluments. *Id.* at 53-56.

26

Plaintiffs argue that even if the term is considered ambiguous, any ambiguity should be resolved against the President because his proposed definition "would defeat the Clause's purpose—throwing open the doors to the corruption of any officeholder wealthy enough to own businesses and reducing the Clause to a mere bribery law, not a prophylactic safeguard against the *possibility* of corruption." Pls.' Opp'n, ECF No. 17 at 45. Plaintiffs cite contemporaneous documents to support their argument that the purpose of the Clause was "to exclude corruption and foreign influence," *id.* at 46 (quoting 3 *Elliot's Debates* 465 (Randolph)), prompted by the need to guard against "the influence which foreign powers may attempt to exercise in our affairs," *id.* (quoting Tench Coxe, *An Examination of the Constitution for the United States of America,* No. 4 (Oct. 21, 1787), and to "lock up every door to foreign influence," *id.* (quoting 5 *Annals of Cong.* 1584 (1978) (Claiborne)). Plaintiffs also cite contemporary OLC memoranda which consistently give the Clause a broad scope. *Id.* at 46-47.

*Amici* Former Government Ethics Officers, former government officials tasked with interpreting the Clause, dispute that "absurd consequences" would result from adopting plaintiffs' broad definition of "Emolument" because "the government applies a totality-of-the-circumstances approach to Emoluments Clause questions, with a bias in favor of breadth, and a keen eye to

27

the anti-corruption purpose of the clause[].” Br. of Former
Gov't Ethics Officers as Amici Curiae Supporting Pls.’ Opp'n to
Def.’s Mot. to Dismiss (“Br. of Former Gov't Ethics Officers”),
ECF No. 42 at 10. So, for example, *amici* dispute that royalties
from foreign book sales would be subject to the Clause unless “a
foreign government attempts to influence a President by
purchasing copies of his book, or if a competent authority finds
a real potential for such influence.” *Id.* at 15. As to
restricting the ability to hold Treasury bonds or stock
holdings, *amici* state that “these payments are unlikely to raise
concerns because it is highly doubtful that holding publicly
traded securities would create the potential for others to
exercise undue influence over the holder.” *Id.* at 14.
In view of the overwhelming evidence pointing to over two
hundred years of understanding the scope of the Clause to be
broad to achieve its purpose of guarding against even the
possibility of “corruption and foreign influence,” 3 *Records of
the Federal Convention of 1787,* at 327 (Max Farrand ed., 1966),
the Court is persuaded that adopting plaintiffs’ broad
definition of “Emolument” ensures that the Clause fulfills this
purpose. *See also Canning*, 573 U.S. at 528 (“[W]e believe the
[Recess Appointments] Clause’s purpose demands the broader
interpretation” in light of the ambiguity of the constitutional
text.). In view of the arguments of *amici* to the contrary, the

28

Court is also not persuaded that "absurd consequences" would result from this broad definition in view of the consistent Executive Branch practice of applying a totality-of-the-circumstances approach to applying the Clause. For the same reason, it is clear that adopting the plaintiffs' definition would not result in a "blanket prohibition" that disregards context.

### e. Executive Branch Practice

As the Court explained in *Blumenthal I*, "[h]istorically, Presidents have complied with the Clause by either seeking and obtaining congressional consent prior to accepting foreign presents or Emoluments, or by requesting an opinion from the Executive or Legislative Branch's advisory office as to whether the Clause applies." *Blumenthal I*, 335 F. Supp. 3d at 53 (citing Br. of Federal Jurisdiction and Constitutional Law Scholars as Amicus Curiae in Supp. of Pls., ECF No. 44 at 24 ("Br. of Federal Jurisdiction and Constitutional Law Scholars")). "Modern Presidents, except for President Trump, have sought advice from OLC prior to accepting potentially covered Emoluments." *Id.* at 53-54 (citing Br. of Federal Jurisdiction and Constitutional Law Scholars, ECF No. 44 at 25). The Comptroller General of the United States is also charged with interpreting the application of the Clause. Mot. to Dismiss, ECF No. 15-1 at 49.

29

The President points to interpretations from these authorities as support for his preferred definition of "Emolument" because "[i]n every published OLC or Comptroller General opinion in which proposed conduct was determined to involve prohibited [E]moluments, the determination involved an employment relationship (or a relationship akin to an employment relationship) with the foreign government." *Id.* Plaintiffs respond that the reason for this is simple: "OLC and the Comptroller General render decisions in response to requests from federal officers. Most such officers are not real estate magnates, but rather people who earn money by providing their individual labor or expertise." Pls.' Opp'n, ECF No. 17 at 49.

*Amici* Former Government Ethics Officers explain that the OLC, Comptroller General, and Department of Defense apply the following principles when determining whether the Clause applies to the situation at issue. Br. of Former Gov't Ethics Officers, ECF No. 42 at 7-8. First, because the "'expansive language and underlying purpose . . . strongly suggest that [the Clause] be given broad scope' . . . analyses have therefore usually started from the presumption that the clause applies . . . [because] . . . . '[t]hose who hold offices under the United States must give the government their unclouded judgment and their uncompromised loyalty.'" *Id.* at 8-9 (internal citations and quotations omitted). Second, and as explained above, the government uses a

30

"totality-of-the-circumstances approach" in determining whether
the Clause applies to the situation and "has never come close to
adopting anything like the rigid, narrow rule advanced by the
[President]." *Id*. at 10-11. As an example, "the government has
reached varying conclusions as to whether particular payments
come from a 'foreign state' depending on how much control
foreign governments exercise over those payments." *Id*. at 10.
*Amici* also point out that "the government has never determined
that the clause permits a public officeholder to maintain an
interest in a business that stands to benefit by virtue of that
person holding public office." *Id*. at 11. *Amici* explain that
officials pay "close attention to whether the arrangement
creates even a potential for improper foreign government
influence over a person in an office of public trust. When such
a potential exists—even if the probability is quite low—the
government has found that such arrangements violate the Foreign
Emoluments Clause." *Id*.

Given that there is only one other judicial opinion
interpreting the Clause, the Court looks to OLC and Comptroller
General opinions as sources of authority for how "Emolument" is
defined and how the Clause is interpreted and applied. *Canning*,
573 U.S. at 525 (noting that "the longstanding 'practice of the
government' can inform our determination of 'what the law is'"
and that "this Court has treated practice as an important

31

interpretive factor even when the nature or longevity of that practice is subject to dispute, and even when that practice began after the founding era") (citations omitted). OLC opinions have consistently cited the broad purpose of the Clause and broad understanding of "Emolument" advocated by plaintiffs to guard against even the *potential* for improper foreign government influence. *E.g., Application of Emoluments Clause to Part-Time Consultant for the Nuclear Regulatory Commission*, 10 Op. O.L.C. 96, 98 (1986) (The Clause's "expansive language and underlying purpose . . . strongly suggest that it be given broad scope."); *Applicability of the Emoluments Clause to Non-Government Members of ACUS*, 17 Op. O.L.C. 114, 121 (1993) ("The language of the Emoluments Clause is both sweeping and unqualified."); Memorandum from Norbert A. Schlei, Assistant Att'y Gen., Office of Legal Counsel, to  Andrew F. Oehmann, Office of the Att'y Gen., *Re: Invitation by Italian Government to Officials of the Immigration and Naturalization Service & a Member of the White House Staff* 2 (Oct. 16, 1962), https://www.justice.gov/olc/page/file/935741/download (noting "the sweeping nature of the constitutional prohibition and the fact that in the past it has been strictly construed, being directed against every possible kind of influence by foreign governments over officers of the United States"). Accordingly, adopting the President's narrow definition of "Emolument" would

be entirely inconsistent with Executive Branch practice defining "Emolument" and determining whether the Clause applies.

Significantly, the President has not cited an OLC or Comptroller General opinion that supports his position. *See generally* Mot. to Dismiss, ECF No. 15-1; Reply, ECF No. 28. To the contrary, he can only assert that his position "is not inconsistent with the conclusions of any published OLC or Comptroller General opinions." Def.'s Suppl. Br. in Supp. of his Mot. to Dismiss and in Resp. to the Brs. of Amici Curiae, ECF No. 51 at 23-24. However, one opinion directly contradicts his narrow reading of the Clause, and another undermines his narrow definition of "Emolument."

In 1993, OLC issued an opinion stating that non-governmental lawyers who were members of the Administrative Conference of the United States ("ACUS") could not receive partnership distributions from their respective firms where the distribution would include fees from foreign government clients even though the lawyers "did not personally represent a foreign government, and indeed had no personal contact with that client of the firm." *Applicability of the Emoluments Clause to Non-Government Members of ACUS*, 17 Op. O.L.C. at 119. OLC reasoned that:

> Because the amount the Conference member would
> receive from the partnership's profits would
> be a function of the amount paid to the firm

> by the foreign government, the partnership
> would in effect be a conduit for that
> government. Thus, some portion of the member's
> income could fairly be attributed to a foreign
> government. We believe that acceptance of that
> portion of the member's partnership share
> would constitute a prohibited [E]molument.

*Id.*[6] Judge Messitte noted that "[t]his language directly contradicts the President's suggestion that there can be no violation of the Foreign [Emoluments] Clause if the federal official is receiving benefits in a private capacity." *Trump*, 315 F. Supp. 3d at 902. And as *amici* observe, this Opinion "devastates the [President's] primary argument for a narrow reading of the clause because it shows that even an attenuated economic interest in ordinary commercial transactions that generate value for both sides can violate the [Foreign] Emoluments Clause if that business nevertheless creates the potential for undue influence over public officials." Br. of Former Gov't Ethics Officers, ECF No. 42 at 21. The Court agrees.

Nor does the Comptroller General opinion concluding that President Ronald Reagan's receipt of California pension benefits did not violate the Domestic Emoluments Clause provide support

---

[6] OLC later determined that non-governmental members of ACUS were not subject to the Clause, but did not its modify determination that the distribution was an Emolument. *Applicability of the Emoluments Clause to Nongovernmental Members of ACUS*, 2010 WL 2516024 (June 3, 2010).

34

for the President's definition of "Emolument." The Comptroller
General determined that "the term '[E]molument' cannot be
considered to extend to benefits that have been earned or to
which entitlement arose before his occupancy of that office, and
that clearly have no connection, either direct or indirect, with
the Presidency . . . [because they]. . . cannot be construed as
being in any manner received in consequence of his possession of
the Presidency." Hon. George J. Mitchell, U.S. Senate, B-207467,
1983 WL 27823, at *3 (Comp. Gen. Jan. 18, 1983). Those
retirement benefits are entirely distinguishable from the
situation here, where it is alleged that, among other things,
foreign diplomats stay at the President's Washington D.C. hotel
"to curry favor with [him] because of his position as President
of the United States," Am. Compl., ECF No. 14 ¶ 54; and that
"his businesses receive funds and make a profit from payments by
foreign governments, and that they will continue to do so while
he is President," *id*. ¶ 37; *see also Trump*, 315 F. Supp. 3d at
903 (observing that "profits received from foreign or domestic
governments that patronize the Trump International Hotel for the
express purpose of potentially currying favor with a sitting
President present a stark contrast to the fully vested
retirement benefits that then-Governor Reagan earned from the
State of California which the State of California was not free
to withdraw.").

35

Finally, the President finds support for his preferred
definition in statutory provisions that exempt certain
employment relationships between government officials and
foreign officials from the scope of the Clause, asserting that
"[h]ad Congress understood the Clause to reach more broadly than
compensation arising from personal services rendered to a
foreign government, it surely would have exempted a wider range
of activities." Mot. to Dismiss, ECF no. 15-1 at 52. The Court
is not persuaded that the President's reliance on statutory
provisions that were never enacted should be accorded any weight
in determining the scope of the Clause.

Consistent Executive Branch practice, which "has never come
close to adopting anything like the rigid, narrow rule advanced
by the [President]," Br. of Former Gov't Ethics Officers, ECF
No. 42 at 10-11, clearly supports plaintiffs' broad definition
of "Emolument" rather than that of the President. Accordingly,
"Emolument" is broadly defined as any profit, gain, or
advantage. *See also Trum*p, 315 F. Supp. 3d at 905 (finding that
the term Emolument "extends to any profit, gain, or advantage,
of more than *de minimis* value, received by [the President],
directly or indirectly, from foreign . . . governments").

36

**C.    Plaintiffs Have Stated a Claim Under the Foreign Emoluments Clause**

With "Emolument" defined broadly as any profit, gain, or advantage, it is clear that the Amended Complaint states a plausible claim against the President for violations of the Clause. Plaintiffs have alleged that the President has accepted a variety of Emoluments from foreign governments—intellectual property rights, payments for hotel rooms and events, payments derived from real estate holdings, licensing fees for "The Apprentice," and regulatory benefits—without seeking and obtaining the consent of Congress. Am. Compl., ECF No. 14, ¶¶ 44-67. Accepting the allegations in the Amended Complaint as true, which the Court must at this juncture, plaintiffs' allegations state a plausible claim for relief, and survive the President's motion to dismiss. *Iqbal*, 556 U.S. at 679.

**D.    Plaintiffs Have a Cause of Action to Seek Injunctive Relief and the Injunctive Relief Sought Is Constitutional**

**1. Plaintiffs Have a Cause of Action to Seek Injunctive Relief**

The President, analogizing the Foreign Emoluments Clause to the Supremacy Clause, argues that the Clause "is not a source of federal rights such that the Court may imply a cause of action under the Clause." Mot. to Dismiss, ECF No. 15-1 at 29. As he must, however, the President acknowledges that equitable relief is available "to enjoin unconstitutional actions by public

officials," but emphasizes that such relief is only available in
"a proper case," *id.* (citing *Armstrong v. Exceptional Child
Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015)), as "an act of
equitable discretion by the district court," *id.* (citing *eBay,
Inc. v. MercExchange*, *LLC*, 547 U.S. 388, 391 (2006). The
President argues that this is not "a proper case" for the Court
to exercise its equitable discretion for three reasons. *Id.* at
30-32. First, "[p]laintiffs are not preemptively asserting a
defense to a potential enforcement action against them by the
Government, which is the paradigmatic situation where implied
equitable claims against the Government have been recognized."
*Id.* at 30. "Second, equity 'may not be used to create new
substantive rights' . . . and the . . . Clause does not create
any personal or judicially enforceable rights." *Id.* at 31. As
part of this point, the President argues that plaintiffs cannot
show that their injury falls within the zone of interests
protected by the Clause because only Congress as a whole, and
not its individual members, fall within the zone of interests
protected by the Clause. *Id.* Third, plaintiffs "can obtain
relief only by suing the President himself, which (if not
legally foreclosed) is at a minimum grounds for extreme
equitable restraint." *Id.* at 32 (citation omitted). The
President concludes by reiterating his argument that plaintiffs'
remedy lies with Congress rather than the Courts. *Id.*

Plaintiffs respond that they have an implied cause of action to seek injunctive relief based on long-standing Supreme Court precedent ensuring the "'ability to sue to enjoin unconstitutional actions' by government officials." Pls.' Opp'n, ECF No. 17 at 50-51 (quoting *Armstrong,* 135 S. Ct. at 1385-86). According to plaintiffs, an implied private right of action exists "when a plaintiff is injured by a constitutional violation, including a 'separation of powers' violation," unless there is a reason to treat the claim differently from any other constitutional claim. *Id.* (citing *Free Enter. Fund v. P.C.A.O.B.*, 561 U.S. 477, 491 n.2 (2010)). Plaintiffs argue that there is no reason to treat the claim here differently, and they reject the President's analogy to the Supremacy Clause. *Id.* at 51.

Plaintiffs reject the President's contention that the "zone-of-interests" test applies to constitutional claims in light of *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014), but state that even if it does, they easily satisfy it. Pls.' Opp'n, ECF No. 17 at 52. Plaintiffs argue that "[t]he interest they seek to vindicate is at the heart of the Clause, which employs separation of powers to combat foreign corruption." *Id.* Plaintiffs observe that the President concedes that Congress as a whole would satisfy any zone-of-interests test, but that he offers no reason why

39

individual Members of Congress have a different zone of interests. *Id.*

The Court is not persuaded that it should find no implied cause of action in the Foreign Emoluments Clause on the ground that the Supremacy Clause does not create a cause of action. In holding there is no implied cause of action in the Supremacy Clause, the Supreme Court stated that it "does not create a cause of action. It instructs courts what to do when state and federal law clash . . ." *Armstrong*, 135 S. Ct. at 1383. That "instruction" stands in sharp contrast to the Clause, which prohibits the acceptance of any foreign Emoluments of any kind whatever without the consent of Congress. Furthermore, the President points to no authority holding that the Appointments Clause, which arguably ***is*** analogous to the Foreign Emoluments Clause, does not create an implied right of action. *See generally* Mot. to Dismiss, ECF No. 15-1; Reply, ECF No. 28.

The Court is persuaded that this is a proper case in which to exercise its equitable discretion to enjoin allegedly unconstitutional action by the President. *See Armstrong*, 135 S. Ct. at 1384 ("[W]e have long held that federal courts may in some circumstances grant injunctive relief . . . with respect to violations of federal law by federal officials.") (citations omitted). As plaintiffs point out, there is no reason for the exercise of equitable discretion to be limited to defend a

40

potential enforcement action and the President has cited no
authority to the contrary. Pls.' Opp'n, ECF No. 17 at 54.
Rather, "it is established practice for this Court to sustain
the jurisdiction of federal courts to issue injunctions to
protect rights safeguarded by the Constitution" unless there is
a reason not to do so. *Free Enter. Fund*, 561 U.S. at 491 n.2
(citation omitted); *Nixon v. Fitzgerald*, 457 U.S. 731, 753-54
(1982) ("It is settled law that the separation-of-powers
doctrine does not bar every exercise of jurisdiction over the
President of the United States."). Here, accepting the
allegations in the Amended Complaint as true, which the Court
must at this juncture, the President is accepting prohibited
foreign emoluments without seeking congressional consent,
thereby defeating the purpose of the Clause to guard against
even the possibility of "corruption and foreign influence." 3
*Records of the Federal Convention of 1787,* at 327 (Max Farrand
ed., 1966). Exercising the Court's equitable discretion here is
therefore "not in derogation of the separation of powers, but to
maintain their proper balance." *Nixon*, 457 U.S. at 754.

"[T]he plaintiff's complaint [must] fall within 'the zone
of interests' to be protected or regulated by the statue or
constitutional guarantee in question." *Valley Forge Christian
Coll. v. Ams. United for Separation of Church & State*, *Inc.*, 454
U.S. 464, 475 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 499

(1975)). "We doubt, however, that it is possible to formulate a single [zone of interests] inquiry that governs all statutory and constitutional claims." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 400 n.16 (1987). Assuming the zone-of-interests test applies here, the Court is persuaded that individual Members of Congress satisfy that test. The President has conceded that Congress as a body would satisfy the zone-of-interests test, Mot. to Dismiss, ECF No. 15-1 at 31, but asserts in his reply that "[p]laintiffs' claim that they have been deprived of legislative prerogatives as Members of Congress is at most 'marginally related' to the Foreign Emoluments Clause's purpose of guarding against foreign influence," Reply, ECF No. 28 at 20 (citing *Clarke*, 479 U.S. at 394, 399). The Court disagrees. The only way the Clause can achieve its purpose is for the President to seek and obtain the consent of Congress before he accepts foreign Emoluments. The Amended Complaint alleges that plaintiffs' injury is that they have been deprived of the right to vote to consent to the President's receipt of foreign Emoluments before he accepts them. Am. Compl., ECF No. 14 ¶ 82. Plaintiffs' injury is therefore hardly "marginally related" to the purpose of the Clause, but is directly related to the only way the Clause can achieve its purpose. *See Riegle v. Fed. Open Mkt Comm.*, 656 F.2d 873, 879 (D.C. Cir. 1981) ("[T]he interest which Riegle claims was injured by defendants' action (his right

42

to advise and consent to the appointment of officers of the
executive branch) is within the zone of interests protected by
the Appointments Clause of the Constitution." (citation
omitted)).[7] And as the Court explained at length in its previous
Opinion, here there is no adequate legislative remedy.
*Blumenthal I*, 335 F. Supp. 3d at 66-68.

The Court rejects the President's suggestion that "extreme
equitable restraint" is appropriate here because plaintiffs can
only obtain relief from the President. Mot. to Dismiss, ECF No.
15-1 at 32. Rather, the fact that plaintiffs can only obtain
relief from the President is precisely the reason the Court
should exercise its equitable discretion here. *See District of
Columbia v. Trump*, 291 F. Supp. 3d 725, 752 (2018) (observing
that "it would be exalting form over substance if the
President's acts were held to be beyond the reach of judicial
scrutiny when he himself is the defendant, but held within
judicial control when he and/or the Congress has delegated the
performance of duties to federal officials subordinate to the
President and one or more of them can be named as a defendant"

---

[7] The Court of Appeals for the District of Columbia Circuit
("D.C. Circuit") expressly disapproved of "*Riegle's* intimation
in dicta that the standing of private plaintiffs to bring
particular action affects the propriety of our entertaining the
same challenge when brought by a legislator." *Melcher v. Fed.
Open Mkt Comm.*, 836 F.2d. 561, 565 (D.C. Cir. 1987). However,
the Court did not address the zone-of-interests analysis in
*Riegle*. *See generally id.*

43

(quoting *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 613 (D.C. Cir. 1974)); *see also* Br. of Separation of Powers Scholars as Amici Curiae in Supp. of Pls. ("Br. of Separation of Powers Scholars"), ECF No. 45 at 15-16 (explaining that the cases cited by the President do not require dismissal of this lawsuit because: (1) in *Mississippi v. Johnson*, 71 U.S. 475 (1866), the Supreme Court dismissed the case and Mississippi then brought suit against Secretary of War and two other defendants challenging the same Acts; and (2) in *Franklin v. Massachusetts*, 505 U.S. 788 (1992) (plurality opinion), the injury could be redressed by the Secretary of Commerce. Rather, when there is no other remedy, courts have allowed suits against the President to proceed).

The Court is mindful that "the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties." *Loving v. United States*, 517 U.S. 748, 757 (1996) (citing *Mistretta v. United States*, 488 U.S. 361, 397-408 (1989)). However, as *amici* Separation of Powers Scholars point out, there is no such risk here as the President has not identified what duties would be impaired, which is distinct from *Mississippi v. Johnson*, where "the relief sought by the plaintiff against the President would have interfered directly with the President's ability to take care that the Reconstruction Acts were faithfully executed." Br.

44

of Separation of Powers Scholars, ECF No. 45 at 17-18 (citing
*Johnson,* 71 U.S. at 499). *Amici* also note that "far from
distracting the President from his official duties, 'any
Presidential time spent dealing with, or action taken in
response to' a case clarifying the scope of the Foreign
Emoluments Clause is actually 'part of a President's official
duties.'" *Id.* at 19 (quoting *Clinton v. Jones*, 520 U.S. 681, 718
(1997) (Breyer, J., concurring in the judgment)). The Court
agrees. The parties dispute the meaning of "Emolument" but not
that the Clause applies to the President. Accordingly,
adjudicating this case ensures that the President fulfills his
duty to "take Care that the Laws be faithfully executed," U.S.
Const. art. II, § 3, and consistent with his oath of office to
"preserve, protect and defend the Constitution of the United
States," U.S. Const. art. II, § 1, cl. 8.

## 2. **The Injunctive Relief Sought Is Constitutional**

The President argues that the remedy plaintiffs seek is
unconstitutional because an injunction against him in his
official capacity would effectively "impose a condition on [his]
ability to serve as President and to perform the duties he is
duly elected to perform," Mot. to Dismiss, ECF No. 15-1 at 56,
thereby "implicating core 'executive and political' duties,"
Reply, ECF No. 28 at 32 (quoting *Johnson*, 71 U.S. at 499).
Plaintiffs respond that the relief sought is not barred because

45

complying with the Clause is akin to performing a ministerial duty rather than an official one, and there is no prohibition on injunctive relief for the performance of a ministerial duty by the President. Pls.' Opp'n, ECF No. 17 at 52-54. The President complains that if plaintiffs' interpretation of the Clause is correct, an injunction requiring his "compliance with the Clause would impose significant burdens" on him. Reply, ECF No. 28 at 32. The President also disputes that compliance with the Clause can be characterized as ministerial because of the "judgment" and "planning" needed to ensure compliance, but that even if it was so properly characterized, "this Court should still exercise utmost restraint in deciding whether to enjoin a sitting President." *Id*.

The Court agrees that restraint is appropriate. However, Supreme Court and D.C. Circuit precedent do not foreclose injunctive relief against the President under certain circumstances. A "grant of injunctive relief against the President himself is extraordinary, and should . . . raise [] judicial eyebrows." *Franklin*, 505 U.S. at 802. That said, the Supreme Court "left open the question whether the President might be subject to a judicial injunction requiring the performance of a purely 'ministerial' duty." *Id*. (citing *Johnson*, 71 U.S. at 498-99). "A ministerial duty is one that admits of no discretion, so that the official in question has no

46

authority to determine whether to perform the duty." *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996) (citing *Johnson*, 71 U.S. at 498 ("[A] ministerial duty . . . is one in respect to which nothing is left to discretion.")). "[A] ministerial duty can exist even 'where the interpretation of the controlling statute is in doubt,' provided that 'the statute, once interpreted, creates a peremptory obligation for the officer to act.'" *Id.* at 978 (quoting *13th Reg'l Corp. v. Dep't of the Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980)).

"The language of the Emoluments Clause is both sweeping and unqualified." 17 Op. O.L.C. at 121. The acceptance of an Emolument barred by the Clause is prohibited unless Congress chooses to permit an exception. *Id.* Given the "sweeping and unqualified" Constitutional mandate, the President has "no discretion . . . no authority to determine whether to perform the duty" to not accept any Emolument until Congress gives its consent. *Swan*, 100 F.3d at 977. Accordingly, seeking congressional consent prior to accepting prohibited foreign emoluments is a ministerial duty. *Id.* The President's argument regarding the "judgment" and "planning" needed to ensure compliance with the Clause is beside the point. It may take judgment and planning to comply with the Clause, but he has no discretion as to whether or not to comply with it in the first instance. *See id.* The President complains about the "significant

47

burdens" an injunction requiring him to comply with the Clause would impose. Reply, ECF No. 28 at 32. However, as discussed *supra* Section IV.D.1, the correct inquiry is not whether injunctive relief requiring the President to comply with the Constitution would burden him, but rather whether allowing this case to go forward would interfere with his ability to ensure that the laws be faithfully executed. *See Clinton*, 520 U.S. at 718 (Breyer, J., concurring in the judgment). Accordingly, the injunctive relief sought in this case is constitutional.

## V.  Conclusion

For the reasons discussed above, the Court finds that: (1) plaintiffs have stated a claim against the President for allegedly violating the Foreign Emoluments Clause; (2) plaintiffs have a cause of action to seek injunctive relief against the President; and (3) the injunctive relief sought is constitutional. The Court therefore **DENIES** the portions of the motion to dismiss that were deferred in the Court's prior Order. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **April 30, 2019**

48